Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Emily Jeffers (CA Bar No. 274222)
Email: ejeffers@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiffs Center for Biological
Diversity and Wishtoyo Foundation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Case No. 2:25-cv-02840-MWC-MAA |
| *Plaintiffs*, | **PLAINTIFFS' OPPOSITION TO SABLE OFFSHORE CORP.'S MOTION TO DISMISS** |
| v. | |
| DOUG BURGUM, et al., | |
| *Defendants*, | Hearing Date: September 12, 2025 |
| and | Hearing Time: 1:30 p.m. |
| SABLE OFFSHORE CORP., | Judge: Hon. Michelle Williams Court |
| *Intervenor-Defendant*. | Location: Courtroom 6A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ....................................................................................... 1

LEGAL AND FACTUAL BACKGROUND ............................................. 2

    I.    The Administrative Procedure Act ................................................ 2

    II.   The Outer Continental Shelf Lands Act ....................................... 3

    III.  Sable's Efforts to Resume Oil Production from the Santa Ynez Unit ......................................................................... 6

    IV.  The Present Suit ............................................................................ 7

STANDARD OF REVIEW ........................................................................ 8

ARGUMENT .............................................................................................. 9

    I.    Plaintiffs' first amended complaint states a claim under the APA that is not subject to the 60-day notice requirement of OCSLA ......................................................................................... 9

    II.   Alternatively, Plaintiffs' September 2024 notice of intent to sue was sufficient to satisfy OCSLA's notice requirements ............... 18

CONCLUSION .......................................................................................... 22

CERTIFICATE OF COMPLIANCE ......................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967)..................................................................2

*Alto v. Black,*
738 F.3d 1111 (9th Cir. 2013) ...............................................11

*Amerada Hess Corp. v. U.S. Dep't of Interior,*
170 F.3d 1032 (10th Cir. 1999) ................................... 6, 13, 14

*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (2006)................................................................19

*Bennett v. Spear,*
520 U.S. 154 (1997)........................................................ *passim*

*Bowen v. Massachusetts,*
487 U.S. 879 (1988)..................................................................2

*Brem-Air Disposal v. Cohen,*
156 F.3d 1002 (9th Cir. 1998) ...............................................16

*Brown v. Offshore Specialty Fabricators, Inc.,*
663 F.3d 759 (5th Cir. 2011) .................................................15

*California v. Norton,*
311 F.3d 1162 (9th Cir. 2002) ...............................................14

*Cascadia Wildlands v. Scott Timber Co.,*
105 F.4th 1144 (9th Cir. 2024) ................................... 19, 20, 21

*Cottonwood Env't L. Ctr. v. Edwards,*
86 F.4th 1255 (9th Cir. 2023) ................................................21

*Ctr. for Biological Diversity v. Haaland,*
No. 2:22-CV-06996-CAS-KSX,
2023 WL 3007920 (C.D. Cal. Apr. 17, 2023) ......................... 5, 16, 17

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*,
    566 F.3d 794 (9th Cir. 2009) ...........................................................22

*Cunningham v. Offshore Specialty Fabricators, Inc.*,
    No. 5:04-CV-282, 2010 WL 11627806 (E.D. Tex. Aug. 17, 2010)..............15, 16

*Duke Energy Field Servs. Assets, L.L.C. v. FERC*,
    150 F.Supp.2d 150 (D.D.C. 2001)...................................................14

*Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*,
    23 F.4th 1195 (9th Cir. 2022) .........................................................9

*Fisheries Survival Fund v. Haaland*,
    858 F. App'x 371 (D.C. Cir. 2021).................................................17

*Friends of Animals v. Ashe*,
    51 F.Supp.3d 77 (D.D.C. 2014) ....................................................21

*Friends of Animals v. Ashe*,
    808 F.3d 900 (D.C. Cir. 2015).......................................................22

*Friends of Yosemite Valley v. Norton*,
    348 F.3d 789 (9th Cir. 2003) ........................................................10

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ..........................................................9

*Green Oceans v. U.S. Dep't of Interior*,
    No. 1:24-cv-141-RCL, 2025 WL 973540 (D.D.C. Apr. 1, 2025)................ 17, 18

*Healthy Gulf v. Burgum*,
    775 F.Supp.3d 455 (D.D.C. 2025)..................................................14

*Hornbeck Offshore Servs., L.L.C. v. Salazar*,
    696 F.Supp.2d 627 (E.D. La. 2010)........................................ 13, 14, 17

*In re Nat'l Nurses United*,
    47 F.4th 746 (D.C. Cir. 2022)........................................................11

*Kern Cnty. Farm Bureau v. Badgley*,
    No. 025376-AWI-DLB, 2002 WL 34236869 (E.D. Cal. Oct. 10, 2002)............22

iii

*Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*,
  387 F.3d 989 (9th Cir. 2004) ............................................................................3, 15

*Lee Pharms. v. Kreps*,
  577 F.2d 610 (9th Cir. 1978) .................................................................................10

*McCrary v. Gutierrez*,
  528 F.Supp.2d 995 (N.D. Cal. 2007) ....................................................................16

*Moden v. U.S. Fish & Wildlife Serv.*,
  281 F.Supp.2d 1193 (D. Or. 2003) ........................................................................22

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
  236 F.3d 985 (9th Cir. 2000) ...................................................................... 19, 21

*Or. Nat. Res. Council v. Thomas*,
  92 F.3d 792 (9th Cir. 1996) ...................................................................................11

*Or. Nat. Res. Council v. U.S. Forest Serv.*,
  834 F.2d 842 (9th Cir. 1987) ...................................................................... 3, 10, 16

*Our Children's Earth Found. v. Ragan*,
  No. 24-3735, 2025 WL 1444414 (9th Cir. May 20, 2025)....................................22

*OXY USA v. Babbitt*,
  122 F.3d 251 (5th Cir. 1997) ...................................................... 6, 12, 13, 15

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .................................................................................9

*San Francisco v. U.S. Dep't of Transp.*,
  796 F.3d 993 (9th Cir. 2015) .................................................................................14

*Sec'y of the Interior v. California*,
  464 U.S. 312 (1984).................................................................................................3

*Shaughnessy v. Pedreiro*,
  349 U.S. 48 (1955).....................................................................................................2

*Tribal Vill. of Akutan v. Hodel*,
  869 F.2d 1185 (9th Cir. 1988) ...............................................................................14

*Wolfe v. Strankman,*
   392 F.3d 358 (9th Cir. 2004) ........................................................................9

**Statutes**

5 U.S.C. § 551(13) .............................................................................................2

5 U.S.C. § 704 ...............................................................................................2, 16

5 U.S.C. § 706(2) .............................................................................................11

5 U.S.C. § 706(2)(A) .................................................................................. 2, 8, 9

5 U.S.C. § 706(2)(D) ......................................................................................2, 8

28 U.S.C. § 1331 ................................................................................................2

28 U.S.C. § 1361 ..............................................................................................10

43 U.S.C. § 1332(3) ...........................................................................................5

43 U.S.C. § 1334(a)(1)(B) .................................................................................5

43 U.S.C. § 1349(a) .........................................................................................15

43 U.S.C. § 1349(a)(1) ...............................................................................5, 10

43 U.S.C. § 1349(a)(2) ....................................................................................10

43 U.S.C. § 1349(a)(2)(A) .................................................................................5

43 U.S.C. § 1349(a)(6) ..............................................................................10, 12

43 U.S.C. § 1350(b)(1) ....................................................................................12

43 U.S.C. § 1350(c) .........................................................................................12

43 U.S.C. § 1351(a) ...........................................................................................3

43 U.S.C. § 1351(c) ...........................................................................................3

43 U.S.C. § 1351(h)(1)(A) .................................................................................4

43 U.S.C. § 1351(h)(1)(D) ............................................................4

43 U.S.C. § 1351(h)(3) ..................................................... 4, 11, 16

43 U.S.C. § 1802(2)(B) ...............................................................5

**Regulations**

30 C.F.R. § 250.410 ....................................................................3

30 C.F.R. § 250.1618 ..................................................................3

30 C.F.R. §§ 550.241–.262 .........................................................4

30 C.F.R. §§ 550.248–.249 .........................................................4

30 C.F.R. § 550.254(b) ...............................................................4

30 C.F.R. § 550.281(a)(1) ...........................................................3

30 C.F.R. § 550.283(a)(3)–(5) .....................................................4

30 C.F.R. § 550.283(a)(7) ...........................................................4

30 C.F.R. § 550.283(b) ...............................................................5

30 C.F.R. § 550.284 ....................................................................4

**Other Authorities**

*Compel*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/compel#legalDictionary ...............................10

Memorandum from Chima Ojukwu, BOEM, to Necitas Sumait, BOEM (Apr. 30, 2025), https://www.boem.gov/sites/default/files/documents/regions/pacific-ocs-region/oil-gas/Completion%20Memo_SYU%20Periodic%20Review_Harmony_FINAL_SIGNED.pdf...........................................................21

**INTRODUCTION**

In this case, Plaintiffs Center for Biological Diversity and the Wishtoyo Foundation (collectively, Plaintiffs) challenge under the Administrative Procedure Act (APA) an arbitrary decision by Defendants Secretary of the Interior, the Bureau of Ocean Energy Management, and the Pacific Regional Director of the Bureau of Ocean Energy Management (collectively, BOEM) in managing the proposed restart of offshore oil and gas production from the Santa Ynez Unit in the Santa Barbara Channel. Specifically, Plaintiffs challenge BOEM's determination that Intervenor-Defendant Sable Offshore Corp. (Sable) need not revise the development and production plan (DPP or "development plan") for Platform Harmony despite the agency's own regulations requiring revisions when an operator proposes to change the type or volume of production or to increase pollution and waste.

These triggers are met here. Before it shut down in 2015 following a massive oil spill, the Santa Ynez Unit had already produced more oil and gas, and emitted significantly more air and water pollution, than was anticipated under its development plans. Now, Sable plans to restart production from the Unit's decades-old infrastructure, threatening California's coast with more spills, more toxic air pollution, and more oil and gas production than originally contemplated.

BOEM's decision means that Sable will operate Platform Harmony under a development plan first approved several decades ago that does not reflect current science or the true scope of activities and attendant harms. It also means that BOEM will not require Sable to meet further environmental safeguards to prevent or mitigate those harms.

Plaintiffs challenge BOEM's determination under section 706(2) of the APA, which is the classic statutory vehicle for challenging arbitrary and capricious agency action. Sable—but not BOEM—moves to dismiss Plaintiffs' case, incorrectly asserting that Plaintiffs should have provided BOEM a 60-day notice of

intent to sue under the citizen-suit provision of the Outer Continental Shelf Lands Act (OCSLA). Sable's position is contrary to Supreme Court precedent, other case law, and the agency's own position in other cases demonstrating that the APA, not OCSLA's citizen-suit provision, is the proper way to challenge BOEM's maladministration of OCSLA. As such, Plaintiffs were not required to provide BOEM notice of intent to sue prior to filing their first amended complaint (FAC). The Court should deny Sable's motion.

## LEGAL AND FACTUAL BACKGROUND

### I. The Administrative Procedure Act

"The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 154, 175 (1997) (quoting 5 U.S.C. § 704). Agency action is defined to include "the whole or a part of an agency rule, order, license, . . . or failure to act." 5 U.S.C. § 551(13). In reviewing the substance of an agency action, the APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or made "without observance of procedure required by law." *Id.* § 706(2)(A), (D).

The Supreme Court has long emphasized that the APA's judicial review provision is "generous" and its "purpose was to remove obstacles to judicial review of agency action under subsequently enacted statutes." *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955). As such, "judicial review of a final agency action . . . will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967).

The jurisdictional basis for federal courts to review agency action is 28 U.S.C. § 1331. *See Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court had jurisdiction under 28 U.S.C. § 1331."). The APA does not require litigants to

2

provide pre-suit notice. *See*, *e.g.*, *Or. Nat. Res. Council v. U.S. Forest Serv.*, 834
F.2d 842, 850–51 (9th Cir. 1987).

While a court's review of an agency's action under the APA requires
"careful judicial scrutiny, courts must also be mindful to defer to agency expertise,
particularly with respect to scientific matters within the purview of the agency."
*Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 993 (9th
Cir. 2004). Under this standard, a court cannot "substitute its judgment for that of
the agency." *Id.* (citation omitted).

## II.    The Outer Continental Shelf Lands Act

OCSLA governs oil and gas drilling in federal waters and establishes "four
distinct statutory stages to developing an offshore oil well: (1) formulation of a
five-year leasing plan . . . ; (2) lease sales; (3) exploration by the lessees; [and] (4)
development and production." *Sec'y of the Interior v. California*, 464 U.S. 312,
337 (1984). "Each stage involves separate regulatory review that may, but need
not, conclude in the transfer to lease purchasers of rights to conduct additional
activities on the [outer continental shelf]." *Id.*[1]

At the fourth stage, prior to developing a well, OCSLA requires lessees to
submit development plans to the Secretary. *Id.* at 340; 43 U.S.C. § 1351(a). The
statute requires each plan to include a description of:

> (1) the specific work to be performed; (2) . . . all facilities and
> operations located on the outer Continental Shelf . . . directly related to
> the proposed development . . . ; (3) the environmental safeguards to be
> implemented . . . and how such safeguards are to be implemented; (4)
> all safety standards to be met and how such standards are to be met; (5)
> an expected rate of development and production and a time schedule
> for performance; and (6) such other relevant information as the
> Secretary may by regulation require.

43 U.S.C. § 1351(c).

---

[1] An oil company must also obtain a permit prior to drilling a well or modifying an
existing well. 30 C.F.R. §§ 550.281(a)(1), 250.410, 250.1618.

BOEM's regulations implementing OCSLA contain additional requirements for development plans. 30 C.F.R. §§ 550.241–.262. The regulations require detailed descriptions of the types, quantity, and composition of water pollution to be generated; the frequency, duration, and amount of air pollution to be generated; and mitigation measures designed to avoid or minimize potential harm to protected species, among other details. *Id.* §§ 550.248–.249, .254(b).

OCSLA requires BOEM to reject a development plan if, *inter alia*,

the Secretary determines, because of . . . exceptional resource values in the marine or coastal environment, or other exceptional circumstances, that (i) implementation of the plan would probably cause serious harm or damage to life (including fish and other aquatic life), to property, . . . or to the marine, coastal or human environments, (ii) the threat of harm or damage will not disappear or decrease to an acceptable extent within a reasonable period of time, and (iii) the advantages of disapproving the plan outweigh the advantages of development and production.

43 U.S.C. § 1351(h)(1)(A), (D).

The statute further requires that BOEM "from time to time" review approved development plans "based upon changes in available information and other onshore or offshore conditions" that impact development and production. *Id.* § 1351(h)(3). "If the review indicates that the plan should be revised to meet the requirements of" OCSLA, BOEM must "require such revision." *Id.*; *and see* 30 C.F.R. § 550.284 (similar).

BOEM's regulations require an oil company to revise previously approved development plans when it proposes to "[c]hange the type of production or significantly increase the volume of production or storage capacity;" "[i]ncrease the emissions of [certain] air pollutant[s] . . . to an amount that exceeds the amount specified in [the] approved [plan];" "[s]ignificantly increase the amount of solid or liquid wastes to be handled or discharged;" or "[c]hange the location of [its] onshore support base either from one State to another or to a new base or a base requiring expansion," among other triggers. 30 C.F.R. § 550.283(a)(3)–(5), (7). The regulations also require a company to supplement a development plan when it

4

"propose[s] to conduct activities . . . that require approval of a license or permit which is not described in [the] approved [plan]." *Id.* § 550.283(b).

OCSLA allows BOEM to order a suspension of development activities "if there is a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life) . . . or to the marine, coastal, or human environment," among other reasons. 43 U.S.C. § 1334(a)(1)(B).

Each of these provisions helps ensure congressional objectives that offshore oil and gas development be "subject to environmental safeguards" and "balance[d] . . . with protection of the human, marine, and coastal environments." *Id.* §§ 1332(3), 1802(2)(B).

OCSLA contains a citizen-suit provision for certain types of civil actions. Specifically, it allows suits "to compel compliance with [OCSLA] against any person, including the United States, and any other government instrumentality or agency . . . for any alleged violation of any provision of [OCSLA,]" its implementing regulations "or of the terms of any permit or lease issued by the Secretary . . . ." *Id.* § 1349(a)(1). The statute states that, "no action may be commenced" to compel compliance with OCSLA "prior to sixty days after the plaintiff has given notice of the alleged violation, in writing under oath, to the Secretary and any other appropriate Federal official, to the State in which the violation allegedly occurred or is occurring, and to any alleged violator[.]" *Id.* § 1349(a)(2)(A).

Supreme Court precedent suggests that OCSLA's citizen-suit provision is not an appropriate vehicle for seeking judicial review of BOEM's implementation (or "maladministration") of the statute, *see Bennett*, 520 U.S. at 173–74, as BOEM has previously argued, *see Ctr. for Biological Diversity v. Haaland*, No. 2:22-CV-06996-CAS-KSX, 2023 WL 3007920, at *4–5 (C.D. Cal. Apr. 17, 2023). As the Fifth Circuit has explained, "[w]e do not think that Congress intended for [OCSLA's] citizen suit provision to operate . . . as a means of obtaining 'umbrella'

review for . . . agency decisions that were or will be otherwise subject to judicial review under the APA." *OXY USA v. Babbitt*, 122 F.3d 251, 258 (5th Cir. 1997). The Tenth Circuit has similarly held that OCSLA's citizen-suit provision "cannot support an action challenging a decision of [BOEM] rendered in fulfillment of [its] duties under [OCSLA]," because such decisions are subject to APA review. *Amerada Hess Corp. v. U.S. Dep't of Interior*, 170 F.3d 1032, 1034 (10th Cir. 1999).

### III.  Sable's Efforts to Resume Oil Production from the Santa Ynez Unit

The Santa Ynez Unit is located in the Santa Barbara Channel and consists of 16 oil and gas leases, three offshore production platforms (Platforms Harmony, Heritage, and Hondo), and associated infrastructure. FAC ¶¶ 49–50, 52, Dkt. No. 12. Platform Hondo was installed in June 1976, Platform Harmony in June 1989, and Platform Heritage in October 1989. *Id.* ¶ 50. Production began from these platforms between April 1981 and December 1993. *Id.* Sable is now the owner and operator of Platforms Harmony, Heritage, and Hondo and lessee on the 16 oil and gas leases in the Santa Ynez Unit. *Id.* ¶ 57. The change of ownership follows a May 20, 2015, oil spill from an onshore pipeline (now owned by Sable) that transported oil drilled at the Santa Ynez Unit. *Id.*

The pipeline ruptured and spilled at least 123,228 gallons of oil, and an expert report indicates that the spill could have been as high as 451,500 gallons. *Id.* ¶ 100. Official reports found that the spill killed hundreds of birds and marine mammals and harmed a variety of coastal habitats. *Id.* ¶ 79. The spill also shut down oil and gas drilling operations at the Santa Ynez Unit. BOEM Answer ¶ 2, Dkt. No. 30. Its platforms, pipelines, and wells were shut down for a decade, until Sable restarted Platform Harmony in May 2025. *Id.*

In 1974, BOEM's predecessor agency approved the initial Santa Ynez Unit development plan drilling from Platform Hondo. FAC ¶ 51. Since then, the development plan has been revised and supplemented several times to reflect the

installation of new infrastructure. *Id.* ¶¶ 51–52. The supplemental plan for the installation of Platform Harmony, submitted in 1982, estimated extraction of the oil and gas reserves in the Santa Ynez Unit (which began in 1981) to "take place over a period of approximately 25 to 35 years." *See id.* ¶ 92.

None of the revised or supplemental plans address the fact that (1) the Unit has outlived its expected production timeline; (2) more oil and gas has been and will be produced at the Unit than contemplated under the development plans; (3) oil and gas production at the Unit has and will emit more air pollution than specified in the development plans; (4) oil and gas production at the Unit will discharge significantly more water pollution than considered in the development plans; (5) the infrastructure has outlived its intended lifespan; and (6) the risk of another oil spill from production at the Unit is heightened. *Id.* ¶¶ 53, 109.

## IV.    The Present Suit

On September 26, 2024, Plaintiffs provided BOEM with their notice of intent to sue BOEM to compel compliance with its duty under OCSLA to review the development plans and require revisions to ensure the plans meet the requirements of the statute. Orig. Compl. ¶ 15, Dkt. No. 1.

On April 2, 2025, Plaintiffs filed this lawsuit, asserting that BOEM's "failure to require revisions of the DPPs for the Santa Ynez Unit violates OCSLA, 43 U.S.C. § 1351, its implementing regulations, 30 C.F.R. §§ 550.283, 550.284, and/or constitutes 'agency action unlawfully withheld or unreasonably delayed' within the meaning of the APA, 5 U.S.C. § 706(1)." *Id.* ¶ 109. In the alternative, the complaint asserted that BOEM's "determination that the DPPs for the Santa Ynez Unit need not be revised for any reason other than to include the terms and conditions in a 2024 biological opinion (regarding reporting vessel collisions with marine mammals and sea turtles) constitutes an agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;' and

made 'without observance of procedure required by law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A), (D)).

Later in April 2025, just weeks after Plaintiffs filed this lawsuit, BOEM issued a decision memorializing (1) its review of the development plan for Platform Harmony in the Santa Ynez Unit and (2) its determination that the plan need not be revised. FAC ¶ 55. In that decision, BOEM stated that it reviewed various documents, including several related to the 2015 oil spill; regulatory requirements for blowout prevention and financial responsibility for offshore facilities; the annual plan of operations for the Santa Ynez Unit from 2010 through 2015; the Clean Water Act permit for oil and gas platforms in federal waters off California; historical flaring and venting data for the Unit, a worst case oil spill discharge analysis from 2016; and others. *Id.* BOEM stated that its review resulted in a finding that "[n]o additional revisions of the DPP for Platform Harmony are needed at this time." *Id.* BOEM also noted that it would conduct a review of the development plans for Platforms Hondo and Heritage after BSEE completes pre-production inspections. *Id.* ¶ 56.

On May 12, after learning of BOEM's review and determination, Plaintiffs amended their complaint to narrow their claim for relief so that only their APA section 706(2) claim remains. *See id.* ¶ 111. Plaintiffs no longer seek mandamus-type relief to compel BOEM to comply with its non-discretionary duty to review and require revisions of the Santa Ynez Unit development plan because BOEM completed that review and arbitrarily determined that no revision was required. Rather, Plaintiffs challenge the adequacy of the agency's decision made pursuant to that review, which is properly reviewed under the APA. Accordingly, Plaintiffs did not provide BOEM with a new notice of intent to sue under OCSLA.

## STANDARD OF REVIEW

A jurisdictional challenge under Federal Rule of Civil Procedure 12(b)(1) "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

(9th Cir. 2004) (citation omitted). Where, as here, a party brings a facial Rule 12(b)(1) challenge because they do not dispute the truth of the allegations in the complaint, the Court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction. *Id.* In resolving a facial attack, the Court "assume[s Plaintiffs'] allegations to be true and draw[s] all reasonable inferences in [their] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted). In deciding such motions, courts must accept all factual allegations in the complaint as true "and constru[e] those facts in the light most favorable to the non-moving party." *Id.* (citation omitted). A court cannot dismiss a compliant under 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (citations omitted).

## ARGUMENT

**I.    Plaintiffs' first amended complaint states a claim under the APA that is not subject to the 60-day notice requirement of OCSLA.**

Plaintiffs' challenge to BOEM's decision that Sable need not revise its development plan for Platform Harmony is a challenge to the agency's errors in administering OCSLA. The APA, which requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A)—not OCSLA— provides the cause of action for Plaintiffs' challenge. Plaintiffs were therefore not required to provide pre-suit notice of their claim. Sable's contrary argument, Sable Mem. Supp. Mot. to Dismiss 11–17, Dkt. No. 31-1 (MTD), runs counter to the

plain language of OCSLA's citizen-suit provision and is inconsistent with Supreme Court precedent and other relevant caselaw.

Sable's argument that any and all claims challenging BOEM's actions under OCSLA must proceed under OCSLA's citizen-suit provision, Sable MTD 13 n.13, 15–16, flies in the face of the plain language of the statute in two key ways. First, the provision specifies that "[n]othing in this section shall restrict any right which any person or class of persons may have under any other Act or common law to seek appropriate relief," 43 U.S.C. § 1349(a)(6)—such as a right to relief under the APA. The Ninth Circuit has held that the Clean Water Act's similarly worded savings clause "preserves rights created by a separate statute such as the APA." *Friends of Yosemite Valley v. Norton,* 348 F.3d 789, 802 (9th Cir. 2003) (quoting *Or. Nat. Res. Council v. U.S. Forest Serv.*, 834 F.2d at 851 n.15).

Second, the statute's judicial review provision specifically limits the requirement to provide a 60-day notice letter to actions brought "under subsection (a)(1)." 43 U.S.C. § 1349(a)(2). Subsection (a)(1) applies to suits "to compel compliance" with OCSLA, its implementing regulations, or the terms of leases and permits and licenses issued under the statute. *Id*. § 1349(a)(1). "Compel" means "to cause to do or occur . . . especially by authority or law," *Compel*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/compel#legalDictionary, and "compel compliance," when used in reference to the federal government, is the precise language typically associated with mandamus actions, *see Lee Pharms. v. Kreps*, 577 F.2d 610, 618 (9th Cir. 1978) ("[M]andamus will lie to provide jurisdiction to define and to compel compliance . . . ."); 28 U.S.C. § 1361 (providing jurisdiction to district courts "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"). As such, when suing BOEM, the 60-day notice letter requirement only applies to actions "to compel" BOEM to comply with a non-discretionary obligation under OCSLA.

10

Here, Plaintiffs do not seek to compel BOEM to take a specific action mandated by OCSLA. While the statute contains a non-discretionary obligation that BOEM "shall, from time to time, review each [development] plan approved" under OCSLA based on new information and changed conditions, BOEM's mandatory obligation to require a revision is only triggered if BOEM's review of that information "indicates that the plan should be revised to meet [OCSLA's] requirements." 43 U.S.C. § 1351(h)(3). Because BOEM's review concluded with a determination that Sable need not revise its development plan, there is no mandatory duty for this Court to compel. *See In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022) (To issue a writ of mandamus, the agency's "duty must be incontrovertible and not a matter within the agency's discretion."). Instead, Plaintiffs seek a court order overturning BOEM's determination for failing to consider relevant factors and reaching a conclusion contrary to the evidence before the agency—a classic APA claim.

True, Plaintiffs' complaint references how BOEM's actions are inconsistent with OCSLA. *E.g.*, Sable MTD Br. 13–14, 19. But that is because there is no "'arbitrary and capricious' review under APA § 706(2)(A) independent of another statute." *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996). As such, OCSLA and its implementing regulations supply the "law to be applied" in evaluating whether BOEM's decision was arbitrary and capricious under 5 U.S.C. § 706(2). *See Alto v. Black*, 738 F.3d 1111, 1124 (9th Cir. 2013).

Moreover, courts have held Sable's interpretation to be erroneous. *Bennett v. Spear*—the seminal case delineating the boundary between citizen-suit provisions and the APA's judicial review provisions—is particularly instructive. There, the Supreme Court held that the Endangered Species Act's (ESA) citizen-suit provision, which authorizes civil suits to enjoin any person, including the Secretary of the Interior, "'alleged to be in violation' of the ESA or its implementing regulations," "is a means by which private parties may enforce the substantive

11

provisions of the [law] against regulated parties . . . but is not an alternative avenue for judicial review of the [agency's] implementation of the statute." 520 U.S. at 172–73 (citation omitted). The Court reached this conclusion by examining the statute as a whole, as well as fundamental principles of judicial review under the APA. *Id.* at 173–74. The Court also held that while litigants could not challenge the agency's "maladministration" of the statute using the citizen-suit provision, *id.*, they could nonetheless pursue judicial review of such claims under the APA, because nothing indicated "that the causes of action against [Interior] set forth in the ESA's citizen-suit provision are exclusive, supplanting those provided by the APA," and any contention otherwise "would not be maintainable," *id.* at 175.

While the citizen-suit provisions of the ESA and OCSLA are not identical, the result is the same here. As in *Bennett*, subsection (a)(6)'s reference to "all suits challenging . . . violations of" OCSLA, 43 U.S.C. § 1349(a)(6), when "[v]iewed in the context of the entire statute, . . . cannot be interpreted to include [BOEM]'s maladministration of [OCSLA]." *Bennett*, 520 U.S. at 174. This is because, for example, OCSLA "uses the term 'violation' elsewhere in contexts in which it is most unlikely to refer to failure by [BOEM] or other federal officers and employees to perform their duties in administering [OCSLA]," *id.* at 173, such as the authorization of civil penalties against a person "charged with a violation" of the statute, and the imposition of criminal penalties for knowing and willful violations of the statute, 43 U.S.C. § 1350(b)(1), (c); *contra* Sable MTD 13.

Courts have extended *Bennett*'s reasoning to hold that litigants challenging agency decisionmaking under OCSLA must proceed under the APA, not OCSLA's citizen-suit provision. In *OXY USA*, oil and gas companies challenged a Minerals Management Service (BOEM's predecessor agency) royalty payment determination under both OCSLA and the APA. 122 F.3d at 254–55. The agency argued that OCSLA's citizen-suit provision could "not be used" to bring the challenge because the agency's decision constituted "a necessary duty undertaken

in [its] administration of the OCSLA and cannot constitute a 'violation' as contemplated by the citizen suit provision." *Id.* at 256. The Fifth Circuit agreed, reasoning:

> We do not think that Congress intended for the citizen suit provision to operate either as a means of obtaining "umbrella" review for a series of agency decisions that were or will be otherwise subject to judicial review under the APA, or as an express avenue for appealing to the district court an initial agency decision that is subject to further review within the agency. To hold otherwise would be to interpret the citizen suit provision as implicitly repealing the APA with respect to such agency action.

*Id.* at 257–58. The court further reasoned that "neither the text nor legislative history of section [1349(a)] manifests congressional intent to repeal the APA," and found no "'clear and manifest' intent to provide, via section [1349(a)], a mechanism by which [litigants] could bypass well-established procedures for administrative and judicial review." *Id.* at 259.

Similarly, in *Amerada Hess*—also involving an oil company's challenge to an agency royalty payment determination—the Tenth Circuit adopted the reasoning in *OXY USA*, holding that OCSLA's citizen-suit provision "cannot support an action challenging a decision of [BOEM] rendered in fulfillment of [its] duties under the Act." 170 F.3d at 1034. And in *Hornbeck Offshore Servs., L.L.C. v. Salazar*, the Eastern District of Louisiana held that "the APA, and not the citizen suit provision under OCSLA, is the appropriate vehicle to challenge" a federal moratorium on deepwater offshore oil and gas activities following the Deepwater Horizon disaster. 696 F.Supp.2d 627, 630, 636 (E.D. La. 2010) (citing *Amerada Hess* and *Bennett*). The Ninth Circuit has cited *OXY USA* and *Amerada Hess* favorably in a case interpreting the "limited" private right of action under the

Pipeline Safety Act. *San Francisco v. U.S. Dep't of Transp.*, 796 F.3d 993, 1000–01 (9th Cir. 2015).[2]

The "seemingly contrary conclusion" of a judge in the District of Columbia "is not helpful." *Hornbeck*, 696 F.Supp.2d at 636 (citing *Duke Energy Field Servs. Assets, L.L.C. v. FERC*, 150 F.Supp.2d 150, 155–56 (D.D.C. 2001)). As *Hornbeck* points out: "[a] closer reading of § 1349(a) reveals that the [pre-suit] conditions apply only to actions brought under subsection § 1349(a)(1)." 696 F.Supp.2d at 636. Where "[t]he judicial review of a final agency action . . . must proceed under the APA," as is the case here, "the requirements of § 1349(a) [are] irrelevant." *Id.*

Moreover, the courts in *Bennett*, *OXY USA*, and *Amerada Hess* were particularly concerned about the practical implications of allowing a statute's citizen-suit provision to supplant judicial review under the APA. In *Bennett*, the Supreme Court noted that interpreting a citizen-suit provision's use of the word "violation" to include any errors on the part of the government in administering the statute "would effect a wholesale abrogation of the APA's 'final agency action' requirement," because "[a]ny procedural default, even one that had not yet resulted in a final disposition of the matter at issue, would form the basis for a lawsuit." 520 U.S. at 174; *see also Amerada Hess*, 170 F.3d at 1035 ("Although there is no dispute that 'final agency action' has occurred in this case, appellant's construal of 43 U.S.C. § 1349(a)(1) would abrogate the APA in precisely such fashion. Like the

---

[2] In line with these holdings, claims challenging BOEM's actions under OCSLA, such as its decision to hold an offshore oil and gas lease sale based on a faulty analysis under the National Environmental Policy Act, regularly proceed under the APA, not OCSLA's citizen-suit provision. *See, e.g., Healthy Gulf v. Burgum*, 775 F.Supp.3d 455, 465–68 (D.D.C. 2025); *Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1187, 1191 (9th Cir. 1988); *see also California v. Norton*, 311 F.3d 1162, 1164–65, 1170 (9th Cir. 2002) (reviewing agency decision to suspend oil and gas leases off California under the APA). And in *Tribal Village of Akutan*, the Ninth Circuit also reviewed under APA section 706(2) a claim that BOEM violated section 19 of OCSLA in issuing a lease sale. *See* 869 F.2d at 1189–90.

Supreme Court and the Fifth Circuit, we refuse to adopt such an implausible interpretation."). Likewise, the *OXY USA* court rejected litigants' attempt "to use [OCSLA's] citizen suit provision as an avenue of obtaining judicial review of OCSLA-related agency decisions that [was] wholly independent of the judicial review procedures set forth in the APA," and which would entitle them to a *de novo* standard of review "not limited to the administrative record and not subject to the 'arbitrary and capricious' standard of review as required by the APA." 122 F.3d at 258.

The same concerns are present here. Most relevant is the fact that proceeding under OCSLA rather than the APA would require the Court to substitute its own judgment for that of the agency—precisely what courts seek to avoid through APA review. *See Klamath-Siskiyou*, 387 F.3d at 993. Specifically, 43 U.S.C. § 1349(a) allows civil actions to "compel compliance" with OCSLA "for any alleged violation" of the statute. Review of BOEM's decision under this standard would upend the usual deference afforded to agency decisionmaking by requiring the Court to not only find that OCSLA compels BOEM to revise the Santa Ynez Unit development plan, but also to order specific revisions. In other words, it would require the Court to step into BOEM's shoes and determine whether Sable should revise its development plan, rather than merely determining whether the decision was reasonable. *See Klamath-Siskiyou*, 387 F.3d at 993.

The additional cases Sable cites do not undermine Plaintiffs' APA claim. *Brown v. Offshore Specialty Fabricators, Inc.*, involved "a putative class action brought against several oil and gas companies and several companies that provide labor for offshore oil and gas projects," alleging that the companies' hiring practices violated OCSLA and other laws. 663 F.3d 759, 763 (5th Cir. 2011). The case did not involve a claim against BOEM for its erroneous decisionmaking in implementing the statute. *See id.*; *Cunningham v. Offshore Specialty Fabricators,*

*Inc.*, is inapposite for the same reason. *See* No. 5:04-CV-282, 2010 WL 11627806, at *1 (E.D. Tex. Aug. 17, 2010).

In *Oregon Natural Resources Council v. U.S. Forest Service*, the Ninth Circuit held that where the Clean Water Act's citizen-suit provision did not provide a cause of action for reviewing an agency's compliance with certain water quality standards, review under the APA was "appropriate" and the Clean Water Act's pre-suit notice requirement was inapplicable. 834 F.2d at 848, 850–51. This case clearly supports Plaintiffs' position. In *Brem-Air Disposal v. Cohen*, the Ninth Circuit held that because the Resource Conservation and Recovery Act's "expansive" citizen-suit provision provided an "adequate remedy" within the meaning of APA section 704(c), a garbage collector challenging a contract award could not pursue a claim under the APA. 156 F.3d 1002, 1002–03, 1005 (9th Cir. 1998); *see also McCrary v. Gutierrez*, 528 F.Supp.2d 995, 999 (N.D. Cal. 2007) (applying *Brem-Air*). As discussed above, OCSLA does not provide an "adequate remedy" within the meaning of the APA, 5 U.S.C. § 704, because its citizen-suit provision "appears to contemplate mandamus-type actions," *Ctr. for Biological Diversity v. Haaland*, 2023 WL 3007920, at *5, and nothing suggests that it should be used as an "alternative avenue for judicial review of the [agency's] implementation of the statute," *see Bennett*, 520 U.S. at 173. Overwhelming case law indicates it cannot.

Finally, given the procedural history of this case and the governing case law, it is irrational to suggest that Plaintiffs "restyled" their lawsuit in an attempt to circumvent OCSLA's pre-suit notice requirement. *Contra* Sable MTD 2, 16–17. Plaintiffs' original complaint stated a claim under OCSLA and, alternatively, the APA. Specifically, Plaintiffs stated that BOEM had failed to perform its mandatory duty to review and require revision of Sable's development plan, as required by 43 U.S.C. § 1351(h)(3). Orig. Compl. ¶ 109. The Central District of California has previously indicated that those mandamus-type claims which seek to compel

BOEM's compliance with OCSLA are properly brought under OSCLA's citizen-suit provision rather than the APA. *Ctr. for Biological Diversity v. Haaland*, 2023 WL 3007920, at *5. Hence, Plaintiffs notified BOEM of their intent to file a citizen suit under OSCLA and filed suit more than six months later, giving BOEM abundant time to review and require revision of the development plan. When Plaintiffs learned that BOEM completed its review *after* Plaintiffs had filed suit and determined no revision was necessary, it was logical for Plaintiffs to amend their complaint. Because Plaintiffs no longer seek to compel the agency's compliance with OCSLA's duty to review and revise the development plan, they no longer assert a claim under section 1349(a); instead, they challenge the adequacy of the agency's decisionmaking—a classic APA claim that does not require pre-suit notice and "make[s] the requirements of § 1349(a) irrelevant." *Hornbeck*, 696 F.Supp.2d at 636.[3]

Sable's reliance on *Fisheries Survival Fund v. Haaland* is unavailing. *See* Sable MTD 15 (citing *Fisheries Survival*, 858 F. App'x 371, 373–74 (D.C. Cir. 2021). There, the court affirmed dismissal of the plaintiffs' OCSLA claim challenging an offshore wind lease because the plaintiffs invoked, but did not satisfy, the exception to the 60-day waiting period and the underlying lease did not authorize any activity. *Fisheries Survival*, 858 F. App'x at 374.

*Green Oceans v. U.S. Department of Interior* is also inapposite. No. 1:24-cv-141-RCL, 2025 WL 973540 (D.D.C. Apr. 1, 2025). There, the underlying complaint and notice letters at issue were "unambiguous" about their intent to

---

[3] This case is therefore different than the cause of action in *Center for Biological Diversity v. Haaland*, where one plaintiff here challenged BOEM's failure to review development plans for platforms in the Beta Unit following a 2021 oil spill from a pipeline connected to one of those platforms. 2023 WL 3007920, at *3. In holding Plaintiff had stated a cause of action under the OCSLA's citizen-suit provision, the court pointed to how "plaintiff's operative theory of the case is that *no* agency action has occurred at all, in light of defendants' failure to review the Beta Unit DPPs." *Id.* at *6.

proceed under OCSLA's citizen-suit provision, yet plaintiffs attempted to "change course to shoehorn their OCSLA citizen-suit claim into the APA" because their notice letters had failed "to comply with the statutory 'under oath' requirement." *Id.* at *13 (citation omitted); *see also id.* (noting that the plaintiffs' complaint "rel[ied] on the OCSLA citizen suit provision for jurisdiction"). Here, Plaintiffs have not attempted to "shoehorn" an OCSLA citizen-suit claim into the APA because of a flawed notice letter but instead amended their original complaint to challenge under the APA a specific action BOEM took after Plaintiffs filed this suit. Moreover, *Green Oceans* contains no analysis of whether OCSLA was actually the appropriate vehicle for the plaintiffs' claims and likely could not have done so, as the court's primary reason for dismissal was the complaint's "disorganized and convoluted" allegations, from which the court could not "actually discern what the alleged OCSLA procedural mistake is even supposed to be," despite "search[ing] in vain for the thread to establish standing, or a stated claim, for any of the[ ] plaintiffs." *Id.* at *12. Here, Plaintiffs' sole claim is abundantly clear.

## II. Alternatively, Plaintiffs' September 2024 notice of intent to sue was sufficient to satisfy OCSLA's notice requirements.

Plaintiffs' claim against BOEM arises under the APA, which does not require any pre-suit notice. As such, the Court need not reach the issue of whether Plaintiffs' September 26, 2024, notice was sufficient. However, to the extent that the Court believes Plaintiffs' claim arises under OCSLA's citizen-suit provision such that notice was required, this case still should not be dismissed because Plaintiffs provided BOEM a thoroughly detailed notice letter that fulfilled all the purposes for requiring such notice. Notably, Sable itself would not be entitled to notice under OCSLA's citizen-suit provision and would not be prejudiced by any

alleged deficiencies in the notice. BOEM, which would be entitled to notice if it were required, is not seeking dismissal on these grounds. Sable's motion must fail.[4]

There is no dispute that Plaintiffs provided BOEM with notice of their intent to sue in September 2024. Notice letters must "at a minimum provide sufficient information so that the notified parties could identify and attempt to abate the violation." *Cascadia Wildlands*, 105 F.4th at 1154 (citation omitted). "To be sufficient, the notice does not have 'to list every specific aspect or detail of every alleged violation.'" *Id.* (citation omitted). Rather, a court must examine "the 'overall sufficiency' of the notice by 'examin[ing] both the notice itself and the behavior of its recipients to determine whether they understood or reasonably should have understood the alleged violations.'" *Id.* at 1154–55 (alteration in original) (citation omitted). Although the Ninth Circuit has "adopt[ed] no bright-line rule on anticipatory notices," it has allowed for "citizen-suit notices that preceded violations so long as the notices were otherwise sufficient," including in cases seeking injunctive relief. *Id.* at 1156 (citing *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 997 (9th Cir. 2000) (additional citation omitted)).

---

[4] Sable asks this Court to dismiss Plaintiffs' claim because "notice has historically been 'a jurisdictional necessity.'" Sable MTD 15 (citation omitted). The key word in that statement is "historical." The Ninth Circuit recently overruled its longstanding precedent that the notice requirements of the ESA's citizen-suit provision are jurisdictional. *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1153 (9th Cir. 2024). Now, where a statute "imposes a precondition to filing [a] . . . citizen suit 'that is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision,' and has not been uniformly treated as jurisdictional," the notice requirement "is a mandatory claims-processing rule, not a jurisdictional predicate." *Id.* (citations omitted). Like the ESA, nothing in OCSLA's citizen-suit provision indicates a clear intent that it count as jurisdictional. *See id.* at 1151 (For courts "[t]o determine . . . a statutory condition has jurisdictional consequences, . . . Congress must 'clearly state[]' that a statutory requirement 'shall count as jurisdictional.'" (last alteration in original) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006)). As such, it should be considered a claims-processing rule.

19

*Cascadia Wildlands* is on point. There, the Ninth Circuit held that a notice letter sent two years before a company began implementing a logging plan satisfied the notice requirements of the ESA's citizen-suit provision because the "letter clearly 'provide[d] sufficient information so that the notified parties could identify and attempt to abate' the prospective violation." *Cascadia Wildlands*, 105 F.4th at 1155 (alteration in original) (citation omitted). The notice letter reminded the timber company of prior similar litigation that it had been involved in, detailed the requirements of the statute and the impacts of logging on endangered murrelets, alleged that the species occupied the tract at issue, and alleged that logging there would take the species. *Id.* This was sufficient to put the timber company on notice that logging would violate the ESA, "even if not specifically planned . . . when the notice was sent." *Id.* Moreover, the company's behavior after receiving the notice letter—which included conducting a survey to investigate the letter's allegations— demonstrated that the company "understood the alleged violations." *Id.* (citation omitted). Thus, "the 'anticipatory' aspect of the notice letter "[was] of no import." *Id.* at 1156.

There is even stronger reason to accept Plaintiffs' notice as sufficient here. To begin, BOEM is the agency tasked with implementing OCSLA and obviously understands its obligations under the statute. Plaintiffs' notice letter invoked the obligations to review and require revisions of the Santa Ynez Unit development plan under OCSLA and detailed the reasons why these obligations were triggered, including, *inter alia*, that restarting oil and gas drilling will "significantly increase the degree and composition of air emissions, significantly increase the amount and composition of wastewater, and significantly increase the volume of production." Monsell Decl. Ex. 1, at 3, 6 (filed herewith). BOEM could clearly identify and attempt to abate the violations Plaintiffs described in the notice. Indeed, its behavior following Plaintiffs' September 2024 notice demonstrates that the notice

actually compelled the agency to review the development plan in November 2024, though the agency failed to consider the relevant factors raised in the notice letter and reached a conclusion contrary to the evidence before it. FAC ¶ 55.[5]

BOEM's post-notice actions in response to Plaintiffs' notice letter do not render that letter defective or require Plaintiffs to send a new notice letter. *See Nat. Res. Def. Council.*, 236 F.3d at 997; *see also Cottonwood Env't L. Ctr. v. Edwards*, 86 F.4th 1255, 1263–64 (9th Cir. 2023) (a litigant that abandoned some of a notice letter's allegations but continued to press others did not offer materially distinct allegations rendering the notice insufficient). And if BOEM had wished to avoid the purported "race to the courthouse" that so troubles Sable, Sable MTD at 18 (citation omitted), BOEM could have informed Plaintiffs that it commenced this review in an effort to resolve Plaintiffs' concerns without litigation. It did not bother to do so. Given the specificity and detail in Plaintiffs' notice letter and BOEM's subsequent behavior, Sable's suggestion that notice was inadequate or "premature" must fail. *Contra id.* at 18; *Cascadia Wildlands*, 105 F.4th at 1155–56.

None of the cases Sable cites undermine Plaintiffs' position. The Ninth Circuit's holding in *Cascadia Wildlands* plainly allows for pre-violation notice in certain circumstances, regardless of the D.C. Circuit's contrary holding in *Friends of Animals v. Ashe*, 51 F.Supp.3d 77, 84–85 (D.D.C. 2014), *aff'd* 808 F.3d 900 (D.C. Cir. 2015); *see also Nat. Res. Def. Council.*, 236 F.3d at 997 (holding that there is no need to send a new notice letter when a defendant that receives proper notice takes action in response before the complaint is filed). Moreover, *Friends of Animals* dealt with "a very narrow and extraordinarily technical question regarding

---

[5] *See* Memorandum from Chima Ojukwu, BOEM, to Necitas Sumait, BOEM, at 2–3 (Apr. 30, 2025),
https://www.boem.gov/sites/default/files/documents/regions/pacific-ocs-region/oil-gas/Completion%20Memo_SYU%20Periodic%20Review_Harmony_FINAL_SIGNED.pdf.

the timing of notice" for lawsuits challenging an agency's failure to comply with its mandatory duty to respond to a listing petition given the various deadlines in the ESA, and it has little relevance outside that specific context. 808 F.3d at 904.

*Kern County Farm Bureau v. Badgley* is inapplicable because it involved a challenge to agency rulemaking—which is not at issue here—and held that notice cannot be sent prior to the adoption of a final rule. No. 025376-AWI-DLB, 2002 WL 34236869, at *11 (E.D. Cal. Oct. 10, 2002). The notice in *Our Children's Earth Foundation v. Ragan* was deficient because it lacked "reasonable specificity" and was not "sufficiently detailed"—concerns not raised here. No. 24-3735, 2025 WL 1444414, at *2 (9th Cir. May 20, 2025). The same is true of *Center for Biological Diversity v. Marina Point Development Co.*, where the notice letters alleged violations of one section of the Clean Water Act, but not another, and otherwise lacked specificity. 566 F.3d 794, 802–03 (9th Cir. 2009).

Finally, in *Moden v. U.S. Fish and Wildlife Service*, a district court allowed a claim challenging the denial of an ESA delisting petition to proceed under the APA—as Plaintiffs argue is appropriate here—but barred an identical claim brought under the statute's citizen-suit provision because the only notice provided was in the petition itself, prior to the agency's consideration of the petition. 281 F.Supp.2d 1193, 1196, 1205–06 (D. Or. 2003). Here, Plaintiffs' notice was timely, detailed, and put BOEM on notice of the OCSLA violations alleged.

## CONCLUSION

The Court should deny Sable's motion.


DATED: August 22, 2025                    Respectfully submitted,


                                          /s/ *Kristen Monsell*
                                          Kristen Monsell (CA Bar No. 304793)
                                          Email: kmonsell@biologicaldiversity.org

Emily Jeffers (CA Bar No. 274222)
Email: ejeffers@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation, certifies that this brief does not exceed 25 pages, in compliance with the page limit set by this Court's Standing Order, Section 6.c, dated April 15, 2025 (Dkt. No. 11).


DATED: August 22, 2025          /s/ *Kristen Monsell*
                                Kristen Monsell