1  LATHAM & WATKINS LLP
   Daniel P. Brunton (Bar No. 218615)
2  Email: daniel.brunton@lw.com
   12670 High Bluff Drive
3  San Diego, CA 92130
   Tel.: (858) 523-5400
4  Fax: (858) 523-5450

5  Michael G. Romey (Bar No. 137993)
   Email: michael.romey@lw.com
6  355 South Grand Avenue, Suite 100
   Los Angeles, CA 90071-1560
7  Tel.: (213) 485-1234
   Fax: (213) 891-8763

8
   Janice M. Schneider (*Pro Hac Vice*)
9  Email: janice.schneider@lw.com
   Devin M. O'Connor (*Pro Hac Vice*)
10 Email: devin.o'connor@lw.com
   555 Eleventh Street, NW, Suite 1000
11 Washington, D.C. 20004-1304
   Tel.: (202) 637-2200
12 Fax: (202) 637-2201

13 *Attorneys for Intervenor-Defendant*
   *Sable Offshore Corp.*

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                   **WESTERN DIVISION**

18 | CENTER FOR BIOLOGICAL | CASE NO. 2:25-cv-02840-MWC-MAA
   | DIVERSITY, et al., |
19 |                      | **SABLE OFFSHORE CORP.'S REPLY**
   |          *Plaintiffs*, | **IN SUPPORT OF MOTION TO**
20 |                      | **DISMISS**
   |       v. |
21 |                      | <u>Hearing</u>
   | DOUG BURGUM, et al., |
22 |                      | Date: September 12, 2025
   |        *Defendants*, | Time: 1:30 PM
23 |                      | Judge: Hon. Michelle Williams Court
   |       and | Courtroom: 6A
24 |
   | SABLE OFFSHORE CORP.,
25 |
   |   *Intervenor-Defendant.*
26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................1

II.   ARGUMENT ................................................................................2

    A.    Plaintiffs' Claims Cannot Proceed Solely Under the APA
        and OCSLA 60-Day Notice Was Required .......................................2

    B.    Plaintiffs' September 2024 Notice Is Inadequate .............................10

III.  CONCLUSION ............................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Amerada Hess Corp. v. U.S. Dep't of Interior*,
170 F.3d 1032 (10th Cir. 1999) ...........................................................................7

*Ardestani v. I.N.S.*,
502 U.S. 129 (1991)..............................................................................................2

*Bennett v. Spear*,
520 U.S. 154 (1997)..............................................................................................6

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)...........................................................................................2, 9

*Brem-Air Disposal v. Cohen*,
156 F.3d 1002 (9th Cir. 1998) ...........................................................................2, 9

*California v. Norton*,
311 F.3d 1162 (9th Cir. 2002) ..............................................................................8

*Cascadia Wildlands v. Scott Timber Co.*,
105 F.4th 1144 (9th Cir. 2024) ......................................................................10, 11

*Cottonwood Env't L. Ctr. v. Edwards*,
86 F.4th 1255 (9th Cir. 2023) .............................................................................11

*Ctr. for Biological Diversity v. Haaland*,
No. 2:22-cv-06996, 2023 WL 3007920 (C.D. Cal. Apr. 17, 2023) .............5, 8, 9

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*,
566 F.3d 794 (9th Cir. 2009) ..............................................................................12

*Duke Energy Field Servs. Assets, L.L.C. v. Fed. Energy Regul. Comm'n*,
150 F. Supp. 2d 150 (D.D.C. 2001)...................................................................6, 9

*Friends of Animals v. Ashe*,
51 F. Supp. 3d 77 (D.D.C. 2014), *aff'd*, 808 F.3d 900 (D.C. Cir. 2015) ..........................................................................................................11

*Friends of Yosemite Valley v. Norton*,
   348 F.3d 789 (9th Cir. 2003) ................................................................................. 3

*Green Oceans v. U.S. Dep't of the Interior*,
   No. 1:24-CV-141-RCL, 2025 WL 973540 (D.D.C. Apr. 1, 2025) ..................... 9

*Hallstrom v. Tillamook Cnty.*,
   493 U.S. 20 (1989) ............................................................................................ 12

*Hardt v. Reliance Standard Life Ins. Co.*,
   560 U.S. 242 (2010) ............................................................................................ 4

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
   599 U.S. 166 (2023) ............................................................................................ 6

*Healthy Gulf v. Burgum*,
   775 F.Supp.3d 455 (D.D.C. 2025) ...................................................................... 8

*McCrary v. Gutierrez*,
   528 F. Supp. 2d 995 (N.D. Cal. 2007) ................................................................ 9

*Moden v. U.S. Fish & Wildlife Serv.*,
   281 F. Supp. 2d 1193 (D. Or. 2003) ................................................................. 12

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
   236 F.3d 985 (9th Cir. 2000) ...................................................................... 11, 12

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   583 U.S. 109 (2018) ............................................................................................ 2

*Or. Nat. Res. Council v. U.S. Forest Serv.*,
   834 F.2d 842 (9th Cir. 1987) ............................................................................ 10

*Our Children's Earth Found. v. Regan*,
   No. 24-3735, 2025 WL 1444414 (9th Cir. May 20, 2025) ................................ 12

*OXY USA, Inc. v. Babbitt*,
   122 F.3d 251 (5th Cir. 1997) ........................................................................... 6, 7

*San Francisco v. U.S. Dep't of Transp.*,
   796 F.3d 993 (9th Cir. 2015) .............................................................................. 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPPORT OF
MOTION TO DISMISS

## STATUTES

5 U.S.C.
    § 704.........................................................................................................2, 6
    § 706(2) ...............................................................................................11, 12

33 U.S.C. § 1365(e) .................................................................................3

43 U.S.C.
    § 1349(a) ...............................................................................................6
    § 1349(a)(1), (6)....................................................................................4
    § 1349(a)(6) ...................................................................................2, 3, 6
    § 1351(h)(3) .......................................................................................3, 4

## RULES

Fed. R. Civ. P. 12 (b)(1)........................................................................12

Fed. R. Civ. P. 12 (b)(6).........................................................................12

## REGULATIONS

30 C.F.R. § 550.283(a)........................................................................3, 4

## OTHER AUTHORITIES

H.R. Rep. 95-590 .....................................................................................5

# I.    INTRODUCTION

Plaintiffs seek to circumvent their failure to provide 60 days' notice to the Federal Defendants of their intention to file suit challenging the Bureau of Ocean Energy Management's ("BOEM") April 30, 2025 decision by (1) characterizing their claim as an Administrative Procedure Act ("APA") claim, instead of a violation of the Outer Continental Shelf Lands Act ("OCSLA"), and (2) arguing that their September 2024 notice of intent to sue was sufficient to cover BOEM's April 2025 decision despite the notice predating the decision.  Both arguments fail.

*First*, Plaintiffs cannot bypass OCSLA's 60-day notice requirement by restyling their First Amended Complaint ("FAC"), Dkt. 12, to allege a challenge solely under the APA.  The APA only allows for judicial review of agency actions where no other adequate remedy exists.  Not only does an adequate remedy exist under OCSLA, but OCSLA mandates that "*all suits challenging actions or decisions allegedly in violation of* . . . the provisions of [OCSLA] . . . shall be undertaken in accordance with the procedures described in" OCSLA's citizen suit provision.  43 U.S.C. § 1349(a)(6) (emphasis added).  Contrary to Plaintiffs' claims in their Opposition to Sable's Motion to Dismiss, Dkt. 35 ("Opp."), the FAC clearly shows that Plaintiffs (i) allege violations of OCSLA, (ii) challenge BOEM's decision made pursuant to OCSLA and its implementing regulations, and (iii) seek to compel compliance with OCSLA and its regulations.  Plaintiffs must comply with OCSLA's 60-day citizen suit notice requirement.

*Second*, Plaintiffs have not demonstrated that their September 2024 Notice is sufficient to satisfy OCSLA's citizen suit requirements with regards to Plaintiffs' FAC.  Plaintiffs' September 2024 Notice says nothing about BOEM's April 2025 decision that Sable need not revise the Development and Production Plan ("DPP") for Platform Harmony in the Santa Ynez Unit—nor could it.  Plaintiffs thus failed to comply with OCSLA's 60-day notice requirement, and the FAC should be dismissed without leave to amend.

## II.    ARGUMENT

### A.    Plaintiffs' Claims Cannot Proceed Solely Under the APA and OCSLA 60-Day Notice Was Required

Plaintiffs failed to provide the required 60-day notice for their FAC under OCSLA. *See* Sable's Motion to Dismiss ("Mot."), Dkt. 31-1 at 11-15. The Federal Defendants agree. Federal Defendants' Response to Sable's Mot. to Dismiss, Dkt. 34 at 2-6. In response to this Motion, Plaintiffs assert that they have stated a claim under the APA and thus need not comply with OCSLA's 60-day notice requirement. *See* Opp. at 9-18. However, Plaintiffs' specific allegations in the FAC and request for relief, the plain language of the statute, and the case law make clear that notice was required under OCSLA.

Plaintiffs point to OCSLA's saving clause to argue that OCSLA's 60-day notice requirement does not apply to rights under the APA. Opp. at 10. But the plain language of the APA provides for judicial review of agency action only when "there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."); *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1005 (9th Cir. 1998) (where a "citizen-suit provision constitutes an 'adequate remedy,'" courts "lack jurisdiction to review [a] claim under the APA") (citation omitted). Furthermore, "*all suits challenging actions or decisions allegedly in violation of*, or seeking enforcement of, the provisions of [OCSLA], or any regulation promulgated under [OCSLA] . . ., shall be undertaken in accordance with the procedures described in" OCSLA's citizen suit provision. 43 U.S.C. § 1349(a)(6) (emphasis added). Where the "plain language" of a statute is "unambiguous," a court's "inquiry begins with the statutory text, and ends there as well." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018); *see also Ardestani v. I.N.S.*, 502 U.S. 129, 135-36 (1991) ("The strong presumption that the plain language of the statute expresses

1  congressional intent is rebutted only in rare and exceptional circumstances, when a

2  contrary legislative intent is clearly expressed.") (cleaned up).

3      While Plaintiffs now claim they are not alleging "violations" of OCSLA,

4  Opp. at 7-8, the FAC indicates otherwise, *see, e.g.*, FAC ¶¶ 1 ("Bureau unlawfully

5  determined that Sable Offshore Corp. (Sable) need not revise the Unit's

6  development and production plans (DPPs), *in violation* of OCSLA, 43 U.S.C.

7  § 1351(h)(3), [and] its implementing regulations, 30 C.F.R. § 550.283(a) . . . .")

8  (emphasis added), 13 ("Plaintiffs request an order from the Court declaring that the

9  Bureau *is violating* OCSLA, [and] its implementing regulations . . . .") (emphasis

10  added), 28 ("without complying with OCSLA").  Plaintiffs are therefore

11  challenging BOEM's "decision[]" that is "allegedly in violation of" OCSLA and

12  therefore must comply with the procedures set forth in OCSLA's citizen suit

13  provision.  43 U.S.C. § 1349(a)(6).

14      Plaintiffs' citation to *Friends of Yosemite Valley v. Norton*, 348 F.3d 789

15  (9th Cir. 2003), is misplaced because OCSLA's citizen suit provision applies more

16  broadly than the Clean Water Act's provision, to "*all suits challenging* actions or

17  *decisions allegedly in violation of*, or seeking enforcement of, the provisions of"

18  OCSLA.  43 U.S.C. § 1349(a)(6) (emphasis added); *see also* 33 U.S.C. § 1365(e)

19  (Clean Water Act citizen suit provision containing no similar clause).  OCSLA's

20  plain language makes clear that Plaintiffs' lawsuit must be brought in accordance

21  with OCSLA's citizen suit procedures.

22      Plaintiffs also argue that OCSLA's citizen suit provision "only applies to

23  actions 'to compel' BOEM to comply with a nondiscretionary obligation under

24  OCSLA," which Plaintiffs mistakenly characterize narrowly as limited to

25  mandamus actions.  Opp. at 10-11.  Plaintiffs' reading of the OCSLA citizen suit

26  provision stands in stark contrast to the plain language of OCSLA, the Central

27  District of California's holding cited by Plaintiffs in their Opposition, and Plaintiff

28  Center for Biological Diversity's ("CBD") prior arguments in this District.  As

discussed above, OCSLA mandates that its procedures be followed for "*all suits challenging* actions or *decisions allegedly in violation of*" of OCSLA, which allows a "person to commence a civil action . . . to compel compliance" with OCSLA (provided there is otherwise standing). 43 U.S.C. § 1349(a)(1), (6) (emphasis added). Plaintiffs attempt to create ambiguity where there is none. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (Courts "must enforce plain and unambiguous statutory language according to its terms.").

Here, there is no question that Plaintiffs bring this lawsuit (i) challenging BOEM's decision, *see, e.g.*, FAC ¶¶ 10, 11, 55, 88, 106, 110 (challenging BOEM's "decision"), (ii) allege violations of OCSLA, *see, e.g.*, FAC ¶¶ 1 (alleging BOEM's April 2025 decision was "*in violation* of OCSLA, 43 U.S.C. § 1351(h)(3), [and] its implementing regulations, 30 C.F.R. § 550.283(a). . . .") (emphasis added), 13 ("Plaintiffs request an order from the Court declaring that the Bureau *is violating* OCSLA, [and] its implementing regulations . . . .") (emphasis added), Request for Relief (seeking declaration BOEM's April 2025 decision was "not in accordance with OCSLA or its implementing regulations . . ."), and (iii) seek to compel compliance with OCSLA, Request for Relief ("*Order Defendants to require revision of the DPP* for Platform Harmony in the Santa Ynez Unit" and "Prohibit Defendants from authorizing new oil and gas drilling activity at the Santa Ynez Unit unless and until revision of the DPP is complete") (emphasis added). Plaintiffs nonetheless claim they are not seeking to compel compliance with OCSLA but are instead "challeng[ing] [] the agency's errors in administering OCSLA." Opp. at 9. That is contradicted by Plaintiffs' own allegations in FAC and, even so, that is a distinction without a difference given OCSLA's broad citizen suit provision.

In interpreting the OCSLA citizen suit provision, the Court reasoned that: "[T]he OCSLA legislative history supports a broad interpretation of the citizen-suit provision. . . . [which] establishes the 'method to challenge OCS decisions,

1    enforcement or violations.'" *Ctr. for Biological Diversity v. Haaland*, No. 2:22-

2    cv-06996, 2023 WL 3007920, at *5 (C.D. Cal. Apr. 17, 2023) (quoting H.R. Rep.

3    95-590, at 161).  Indeed, contrary to its position in the instant case, Plaintiff CBD

4    previously advocated for this "broad interpretation of [OCSLA's] citizen-suit

5    provision." *Id.* at *4.  And while there is no dispute that OCSLA's citizen suit

6    provision can apply to mandamus-type actions, that does not mean the provision is

7    limited to such actions as Plaintiffs wrongly contend.  Opp. at 10-11.  Quite the

8    contrary, the court emphasized OCSLA's citizen suit provision is broad and

9    applies to both substantive and procedural claims.  *Ctr. for Biological Diversity*,

10    2023 WL 3007920, at *6-7.  Plaintiffs have cited no other authority supporting its

11    position that OCSLA's citizen suit provision applies *only* to mandamus-type

12    actions.  Moreover, irrespective of labels, Plaintiffs ignore that the FAC

13    specifically asks this Court to force (*e.g.*, compel) BOEM to take a specific action.

14    FAC at Request for Relief (asking to "[o]rder Defendants to require revision of the

15    DPP").  Such relief is exactly the type of remedy sought in a "mandamus-type

16    action." *See Ctr. for Biological Diversity*, 2023 WL 3007920, at *5.

17         Plaintiffs claim that "*Bennett v. Spear*—the seminal case delineating the

18    boundary between citizen-suit provisions and the APA's judicial review

19    provisions—is particularly instructive."  Opp. at 11.  But Plaintiff CBD

20    successfully argued in front of this Court that *Bennett* was "irrelevant for the

21    purpose interpreting the OCSLA citizen-suit provision" because "the [Endangered

22    Species Act], which the Supreme Court analyzed in *Bennett v. Spear*, has a

23    materially different citizen-suit provision and statutory scheme than that contained

24    in OCSLA." *Ctr. for Biological Diversity*, 2023 WL 3007920, at *5.  The Court

25    agreed, noting that *Bennett* was not controlling because OCSLA does not contain a

26    separate mandamus provision and "the legislative history of OCSLA specifically

27    supports a broad application of the citizen-suit provision[.]" *Id.* at *6.

28

The specific language relied upon in *Bennett* for the Supreme Court to conclude that the Endangered Species Act ("ESA") citizen suit provision does not apply to "maladministration" of the ESA is wholly absent from the plain language of OSCLA. *See Bennett v. Spear*, 520 U.S. 154, 173-74 (1997) (finding that Subsection C of the ESA would be "superfluous" if Subsection A "permitted suit against the Secretary for any 'violation' of the ESA"); *see also Duke Energy Field Servs. Assets, L.L.C. v. Fed. Energy Regul. Comm'n*, 150 F. Supp. 2d 150, 156 (D.D.C. 2001) ("[T]he citizen suit provision in *Bennett* differed markedly from [OCSLA's]" because "[t]hat citizen suit provision established the conditions under which a citizen suit *could* be brought, but *did not* establish any conditions prohibiting such a suit.") (emphasis in original). In contrast to the ESA, OCLSA has a broad citizen suit provision that applies here: "*all suits* challenging actions or decisions *allegedly in violation* of, or seeking enforcement of, the provisions of [OCSLA], or any regulation promulgated under this subchapter . . ., shall be undertaken in accordance with the procedures described in" OCSLA's citizen suit provision. 43 U.S.C. § 1349(a)(6) (emphasis added). The APA, in contrast, provides for judicial review of agency action only when "there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 177 (2023) ("we have consistently refused to read [a statute's] 'plain language' to mean anything other than what it says").

Plaintiffs' reliance on *OXY USA* and *Amerada Hess*, two out-of-circuit opinions, is equally unavailing. In *OXY USA*, the plaintiffs argued that "the district court should have considered evidence outside of the OXY administrative record" because plaintiffs "allege[d] a cause of action under the citizen suit provision of OCSLA, 43 U.S.C. § 1349(a), and therefore [the court was] not confined to any particular administrative record." *OXY USA, Inc. v. Babbitt*, 122 F.3d 251, 256 (5th Cir. 1997). The Fifth Circuit framed plaintiffs' claims as "attempting to use the citizen suit provision as an avenue of obtaining judicial review of OCSLA-

1  related agency decisions that is wholly independent of the judicial review

2  procedures set forth in the APA." *Id.* at 258.  In that context, the Fifth Circuit held

3  that the OCSLA citizen suit provision did not implicitly repeal the APA, and that

4  OCSLA is not "a mechanism by which OCS lessees, situated as are the Companies

5  in this case, could bypass well-established procedures for administrative and

6  judicial review" under the APA, such as the need for final agency action, the

7  standard applicable to judicial review of agency actions, or limiting the scope of

8  review to the administrative record before the agency. *Id.* at 258-59.  In *Amerada*

9  *Hess*, at dispute was whether judicial review of an agency's decision requiring

10  payment of royalties on offshore leases should proceed in accordance with APA

11  standards and procedures.  *Amerada Hess Corp. v. U.S. Dep't of Interior*, 170 F.3d

12  1032, 1034 (10th Cir. 1999).  The Tenth Circuit (relying on *OXY USA*) similarly

13  held that the OCSLA citizen suit provision was not available in order to avoid

14  implicit repeal of the APA with respect to the agency decisions at issue.  *Id.*  As a

15  result, the Tenth Circuit resolved to "conform [its] review to APA standards and

16  the available administrative record." *Id.* at 1035.

17      Importantly, neither *OXY USA* nor *Amerada Hess* grapple with the plain

18  language distinctions between the ESA in *Bennett* and OCSLA.  Additionally, the

19  Fifth and Tenth Circuits' concerns in *OXY USA* and *Amerada Hess*, respectively,

20  are not implicated here as none of the Defendants dispute the application of the

21  APA's judicial review procedures (*e.g.*, finality, standard of review and scope of

22  review generally limited to the administrative record).  Plaintiffs are thus flatly

23  wrong in suggesting that finding that OCSLA citizen suit requirements apply

24  would somehow "upend the usual deference afforded to agency decisionmaking"

25  or otherwise "require the Court to step into BOEM's shoes" to make

26  determinations reserved to the agency or the appropriate standard of review for

27

28

1    agency actions.  Opp. at 15.  Instead, unlike in *OXY USA* and *Amerada Hess*,[1]

2    Plaintiffs are merely attempting to circumvent OCSLA's express 60-day notice

3    requirement by repackaging their claim under the APA and serving up purported

4    positions no defendant is taking.[2]

5         Plaintiffs' reliance on *Hornbeck Offshore Services L.L.C. v. Salazar* also

6    falls flat.  696 F. Supp. 2d 627 (E.D. La. 2010).  In *Hornbeck*, the plaintiffs

7    challenged a moratorium the government issued that suspended all pending,

8    current, or approved drilling operations of new deepwater wells in the Gulf and in

9    the Pacific for a period of six months.  *Id.* at 636.  Unlike here, where Plaintiffs are

10   specifically alleging that BOEM violated OCSLA and its implementing

11   regulations, the *Hornbeck* court determined the plaintiffs were not alleging "the

12   Secretary [wa]s in 'violation' of OCSLA or its regulations."  *Id*.  In any event, the

13   court found that, unlike this case, the notice requirements were met.  *Id.* at 636 n.7.

14   Because Plaintiffs are alleging a violation of OCSLA and its regulations, *see supra*

15   

---

16   [1] Plaintiffs' citation to *San Francisco v. United States Department of Transportation*, 796 F.3d 993 (9th Cir. 2015), is similarly misplaced due to

17   differences with the Pipeline Safety Act's citizen suit provision that was at issue in that case.  As this Court has found, "OCSLA's statutory scheme and legislative

18   history are materially different from [the] Pipeline Safety Act" because "the legislative history of the Pipeline Safety Act supports a narrow interpretation of

19   that citizen-suit provision, [while] the legislative history of OCSLA specifically supports a broad application of the citizen-suit provision."  *Ctr. for Biological*

20   *Diversity*, 2023 WL 3007920, at *6.
     [2] Contrary to Plaintiffs' claims, none of their cited cases are "[i]n line" with their

21   narrow interpretation of "OCSLA's citizen-suit provision."  Opp. at 14 n.2.  In *Healthy Gulf v. Burgum* and *California v. Norton*, plaintiffs raised claims under the

22   National Environmental Policy Act ("NEPA") and the Coastal Zone Management Act ("CZMA"), neither of which have citizen suit provisions and both of which are

23   regularly reviewed under the APA.  *See California v. Norton*, 311 F.3d 1162, 1170 (9th Cir. 2002) ("Judicial review of actions under the [CZMA] and NEPA

24   ordinarily is governed by the Administrative Procedure Act[.]"); *Healthy Gulf v. Burgum*, 775 F.Supp.3d 455, 465-69 (D.D.C. 2025) ("The APA provides the

25   vehicle for review of NEPA-based challenges to federal agency actions.").
     *Klamath-Siskiyou Wildlands Center v. Bureau of Land Management* is inapposite

26   for the same reason.  387 F.3d 989 (9th Cir. 2004) (concerning NEPA claim).  And the OCSLA claim in *Tribal Village of Akutan v. Hodel* did not proceed under the

27   APA, rather it proceeded under OCSLA Section 1345(d), which provides that "the Secretary's acceptance or rejection of [state] recommendations [concerning

28   proposed lease sales] shall be final '*unless found to be arbitrary or capricious*.'" 869 F.2d 1185, 1189 (9th Cir. 1988) (emphasis added).

1   at 3, OCSLA's broad citizen suit provision applies.  *See, e.g., Ctr. for Biological*

2   *Diversity*, 2023 WL 3007920, at *5 (OCSLA "citizen-suit provision establishes the

3   'method to challenge OCS decisions, enforcement or violations'" and it applies to

4   "'procedural' and 'substantive' violations of OCSLA"); *Duke*, 150 F. Supp. 2d at

5   155; *Green Oceans v. U.S. Dep't of the Interior*, No. 1:24-CV-141-RCL, 2025 WL

6   973540, at *13 (D.D.C. Apr. 1, 2025) (rejecting argument that OCSLA's notice

7   requirement "does not apply to [plaintiffs] because they are not suing under

8   OCSLA's citizen suit provision, but rather, under the APA").

9          Plaintiffs' attempts to distinguish binding authority that rejected the type of

10  conduct at issue here—i.e., evasion of statutorily set notice requirements—fail.

11  *See* Opp. at 15-18.  Plaintiffs try to distinguish this authority arguing that they have

12  no adequate remedy under OCSLA.  Opp. at 16.  As discussed above, Plaintiffs'

13  claim rests on alleged OCSLA violations, which are covered by OCSLA's broad

14  citizen suit provision and the procedural requirements set forth therein.  *Ctr. for*

15  *Biological Diversity*, 2023 WL 3007920, at *5.  Because the "citizen-suit provision

16  constitutes an 'adequate remedy,'" the Court "lack jurisdiction to review [a] claim

17  under the APA."  *Brem-Air*, 156 F.3d at 1005 (citation omitted); *see also Bowen*,

18  487 U.S. at 903; *McCrary v. Gutierrez*, 528 F. Supp. 2d 995, 999 (N.D. Cal. 2007).

19         Fatal to Plaintiffs' argument against *Duke*, Opp. at 14, is that this Court

20  favors a "broad application of the [OCSLA] citizen-suit provision," *Ctr. for*

21  *Biological Diversity*, 2023 WL 3007920, at *5, which is entirely consistent with

22  the District of Columbia Court's interpretation of the provision in *Duke*, 150 F.

23  Supp. 2d at 155 ("the citizen suit provision in the instant case plainly bars *all cases*

24  which do not comply with the provision") (emphasis in original).  And contrary to

25  Plaintiffs' characterizations, the court in *Green Oceans* independently analyzed

26  whether OCSLA's notice requirements were met.  *Green Oceans*, 2025 WL

27  973540, at *13.  Like in *Green Oceans*, "Plaintiffs cannot now change course to

28  shoehorn their OCSLA citizen-suit claim into the APA."  *Id.*

1  Plaintiffs are correct that in *Oregon Natural Resources Council*, "the Ninth
2  Circuit held that where the Clean Water Act's [CWA] citizen-suit provision did not
3  provide a cause of action for reviewing an agency's compliance with certain water
4  quality standards," APA review was appropriate. Opp. at 16 (citing *Or. Nat. Res.*
5  *Council v. U.S. Forest Serv.*, 834 F.2d 842, 850-51 (9th Cir. 1987)). However,
6  Plaintiffs ignore that here, OCSLA's broad citizen suit provision is materially
7  different than the CWA provision at issue in *Oregon Natural Resources Council* in
8  that unlike the CWA provision at issue there, OCSLA provides an adequate and
9  unambiguous vehicle to challenge BOEM's decision. Plaintiffs also ignore that the
10  Ninth Circuit specifically noted that "[w]here plaintiffs may otherwise proceed
11  under the citizen suit provision, they should not be allowed to bypass the explicit
12  requirements of the Act established by Congress through resort to . . . the APA[.]"
13  *Id.* at 851.

14  **B.    Plaintiffs' September 2024 Notice Is Inadequate**

15  Contrary to Plaintiffs' argument, *see* Opp. at 18-22, the September 2024
16  Notice does not satisfy OCLSA's notice requirements because that notice says
17  nothing about BOEM's April 2025 decision that Sable need not revise the DPP for
18  Platform Harmony. Nor could it, because BOEM's April 2025 decision occurred
19  after the September 2024 Notice. The cases Plaintiffs cite illustrate why the
20  September 2024 Notice is insufficient. In *Cascadia Wildlands*, the Ninth Circuit
21  emphasized that "[t]o provide proper notice of an alleged violation, a would-be
22  plaintiff must at a minimum provide sufficient information so that the notified
23  parties could identify and attempt to abate the violation." *Cascadia Wildlands v.*
24  *Scott Timber Co.*, 105 F.4th 1144, 1154 (9th Cir. 2024) (cleaned up). There the
25  plaintiffs sent a 60-day notice to the defendant owner of a timber tract asserting
26  that logging the timber tract would violate the ESA because it was occupied by a
27  threatened species. *Id.* at 1149. When the defendant proceeded with "a plan to
28  clear-cut 49 acres of timber located in the middle" of the tract, the plaintiffs sued.

*Id.* Given that the allegations in the complaint mirrored those in the 60-day notice letter, and given prior litigation between the parties over nearly identical issues, the court held that the notice was adequate even though it was sent before the defendant began logging in the tract. *Id.* at 1155-56.

In contrast, Plaintiffs' September 2024 Notice says nothing about BOEM's April 2025 decision or any claim under 5 U.S.C. § 706(2). *Cascadia Wildlands* offers no support for what Plaintiffs did here—sending the September 2024 Notice alleging one violation (failure to require Sable to update its DPPs) and using that notice to sue on an entirely different alleged violation (BOEM's April 2025 decision). *See also* Fed. Defs.' Response, Dkt. 34 at 4-5 (premature notice is inadequate).

The other cases cited by Plaintiffs similarly stand for the unremarkable proposition that a 60-day notice is sufficient if it actually includes claims ultimately brought in a complaint. *See Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 996-97 (9th Cir. 2000) (notice was sufficient to challenge revised stormwater pollution prevention plan where plaintiffs notice letter alleged that defendant had failed to prepare *and implement* good housekeeping plan required by the permit); *Cottonwood Env't L. Ctr. v. Edwards*, 86 F.4th 1255 (9th Cir. 2023) (emphasizing there must "be a true notice that tells a target precisely what it allegedly did wrong, and when") (cleaned up); *id.* (notice alleging violations both pursued and not pursued in complaint was adequate).

For similar reasons, Plaintiffs' efforts to distinguish the cases cited in Sable's Motion fail. Nothing in *Friends of Animals* would allow Plaintiffs to rely on the September 2024 Notice to challenge an agency action that is nowhere discussed in that notice, and the court held that if the plaintiffs fail to give adequate notice, "dismissal is mandatory." *Friends of Animals v. Ashe*, 51 F. Supp. 3d 77, 87-88 (D.D.C. 2014), *aff'd*, 808 F.3d 900 (D.C. Cir. 2015). Contrary to Plaintiffs' arguments, *Kern County Farm Bureau v. Badgley* is not limited to rulemaking, but

1  rather that case emphasizes that "citizen suit notice requirements cannot be avoided

2  by employing a flexible or pragmatic construction," but rather actual notice of the

3  alleged violations is required at least 60 days before plaintiffs file suit.  No. CVF

4  025376 AWI DLB, 2002 WL 34236869, at *7 (E.D. Cal. Oct. 10, 2002) (cleaned

5  up).  Contrary to Plaintiffs' arguments, the cases require a 60-day notice to include

6  alleged violations with specificity and reasonable detail and are highly relevant.

7  Here, Plaintiffs September 2024 Notice does not discuss BOEM's April 2025

8  determination at all, let alone with any sort of detail, and it is therefore

9  inadequate.[3]  *See Our Children's Earth Found. v. Regan*, No. 24-3735, 2025 WL

10  1444414, at *2 (9th Cir. May 20, 2025); *Ctr. for Biological Diversity v. Marina*

11  *Point Dev. Co.*, 566 F.3d 794, 802-03 (9th Cir. 2009); *see also Moden v. U.S. Fish*

12  *& Wildlife Serv.*, 281 F. Supp. 2d 1193 (D. Or. 2003) (60-day notice challenging

13  Fish and Wildlife Service ("FWS") decision not to delist endangered species

14  inadequate where notice was sent before FWS decision; given ESA citizen suit

15  provision that is narrower than OCSLA's, case allowed to proceed under APA).

16  Plaintiffs' September 2024 Notice is therefore not adequate.

17  **III.   CONCLUSION**

18      Sable respectfully requests that the Court dismiss the FAC for lack of

19  subject matter jurisdiction under Rule 12(b)(1) and/or for failure to state a claim

20  under Rule 12(b)(6).

21

22

---

23  [3] Plaintiffs note that their initial complaint pled a claim under the APA as well as OCSLA.  Opp. at 7.  But this is irrelevant as Plaintiffs' 60-day notice is devoid of
24  any discussion of 5 U.S.C. § 706(2) and in no way excuses Plaintiffs' failure to comply with OCSLA's notice requirements prior to filing their FAC.  *See Nat. Res.*
25  *Def. Council*, 236 F.3d at 997 ("Subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant.");
26  *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989) (adequate notice must occur before lawsuit filed to effectuate statutory purpose of (1) allowing "agencies to
27  take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits" and (2) allowing an agency "an opportunity to bring itself into
28  complete compliance . . . and thus likewise render unnecessary a citizen suit") (citation omitted).

Dated:  August 29, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Daniel P. Brunton*

Daniel P. Brunton (Bar No. 218615)
Email: daniel.brunton@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Tel.: (858) 523-5400
Fax: (858) 523-5450

Michael G. Romey (Bar No. 137993)
Email: michael.romey@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

Janice M. Schneider
(*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor
(*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Intervenor-Defendant Sable Offshore Corp.*

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Intervenor-Defendant Sable Offshore

3  Corp., certifies that this brief contains 12 pages, which complies with the page limit

4  set by this Court's Standing Order, Section 6.c, dated April 15, 2025 (Dkt. 11).

5

6

7  Dated:  August 29, 2025             By: /s/ *Daniel P. Brunton*

8                            Daniel P. Brunton (Bar No. 218615)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28