UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2-25-cv-02840-MWC-MAA                    Date: September 10, 2025

Title:   Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:  Order DENYING Intervenor-Defendant Sable's Motion to Dismiss (Dkt. 31)**

Before the Court is a motion to dismiss ("Motion") filed by Intervenor-Defendant Sable Offshore Corporation ("Sable"). Dkt. # 31 ("*Mot.*").  Secretary of the Interior Doug Burgum, Bureau of Ocean Energy Management ("BOEM"), and Pacific Regional Director of BOEM Douglas Boren (collectively, "Federal Defendants") filed a response in support of Sable's Motion.  Dkt. # 34.  Plaintiffs Center for Biological Diversity and the Wishtoyo Foundation (collectively, "Plaintiffs") filed an opposition ("Opposition") to the Motion, Dkt. # 35 ("*Opp.*"), and Sable replied ("Reply"), Dkt. # 36 ("*Reply*").  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers, the Court **DENIES** Sable's Motion.

I.    Background

      A.    Factual Background

Plaintiffs' first amended complaint ("FAC") centers on an allegation that the Federal Defendants determined incorrectly that Sable could proceed in restarting offshore oil and gas production from the Santa Ynez Unit in the Santa Barbara Channel without a revision to the associated development and production plan ("DPP") .  *See generally* Dkt. # 12 ("*FAC*").  The FAC alleges as follows:

There are currently 30 active oil and gas leases on the Pacific outer continental shelf, most of which are organized into units.  *FAC* ¶ 49.  The Santa Ynez Unit ("SYU") is in the Santa Barbara Channel and consists of 16 leases.  *Id.*  There are three offshore production platforms at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2-25-cv-02840-MWC-MAA                    Date: September 10, 2025

Title:      Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

the SYU, one of which is Platform Harmony, installed in June 1989. *Id.* ¶ 50. The predecessor to BOEM approved the development and production plan for drilling at the SYU from Platform Harmony in 1985 and 1988. *Id.* ¶ 51. In 1992, BOEM's predecessor approved a supplemental plan to allow the installation of topsides (a surface deck of the platform, which includes all drilling equipment) onto Platform Harmony. *Id.* ¶ 52. In 2014, BOEM approved another DPP to allow the replacement of two power cables from an onshore facility to Platform Harmony and the installation of a power cable from Platform Harmony to another nearby platform, Platform Heritage. *Id.* None of those amendments addressed new information, including the risk of oil spills, the age of SYU infrastructure, the extent or length of production, or the extent of air pollution emissions from oil and gas operations at SYU. *Id.* ¶ 53.

Oil and gas production at the SYU has been shut down since 2015, when an onshore pipeline used to transport oil from the SYU ruptured due to massive corrosion. *Id.* ¶ 2. That spill excreted hundreds of thousands of gallons of oil into the coastal environment, killed hundreds of birds and marine mammals, harmed shorelines, and closed beaches and fisheries. *Id.* Even prior to the 2015 spill, oil and gas activities at the SYU caused harm through greenhouse gas emissions and harmful air pollution. *Id.* ¶ 3. The pipeline that ruptured in 2015 was built in 1987, and the environmental impact statement associated with the construction and operation of the pipeline determined that the risk of a spill would more than double as the pipeline aged from 20 to 40 years. *Id.* ¶ 82. Many of the offshore pipeline segments in the SYU are now 40 years old, *id.*, and the risk of stress to subsea pipelines accelerates over time, *id.* ¶ 83. That is because marine environments produce significant corrosion on steel surfaces, and the likelihood of accidents increases significantly with the age of infrastructure. *Id.*

In December 2024, BOEM issued a memorandum indicating that it would require all oil companies operating on the Pacific OCS to update their DPPs in response to a recent biological opinion from the National Marine Fisheries Service ("NMFS"). *Id.* ¶ 54. Under this memorandum, BOEM had to ensure that oil and gas vessel operators on the Pacific OCS report any collisions with marine mammals and sea turtles to the NMFS. *Id.* In April 2025, BOEM issued a decision memorializing (1) its review of the DPP for Platform Harmony and (2) its determination that the DPP need not be revised. *Id.* ¶ 55. BOEM provided that it had reviewed various documents and that its review resulted in a finding that "[n]o additional revisions of the DPP for Platform Harmony are needed at this time." *Id.* ExxonMobil Corporation ("Exxon") owned all three platforms in the SYU for several decades but sold the SYU in 2024. *Id.* ¶ 57. Sable now owns Platform Harmony, the other two platforms in the SYU, and is the lessee on all 16 oil and gas leases in the SYU. *Id.* Sable has told investors that it plans to resume drilling operations at the SYU in the second quarter of 2025. *Id.* ¶ 60. Sable plans to restart oil production, including oil transport, using the same onshore pipeline system that ruptured in 2015, though it decided not to completely replace the original pipelines. *Id.* ¶ 61.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2-25-cv-02840-MWC-MAA                          Date: September 10, 2025

Title:    Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

Despite regulations specifying when a party must revise an approved DPP, BOEM did not require revision or supplementation of the DPP for Platform Harmony.  *Id.* ¶¶ 89–90.  Previous DPP amendments related to Platform Harmony do not reference new information and operational changes.  *Id.* ¶ 90.  The SYU has already exceeded the level of production contemplated in the controlling DPPs and associated environmental analyses, as those DPPs estimated extraction of oil and gas in the SYU to take place for up to 35 years, beginning in 1981.  *Id.* ¶ 92.  Moreover, the DPPs stated that Exxon would draw approximately 300 to 400 million barrels of crude oil and 600 to 700 billion standard cubic feet of natural gas, but Exxon has already produced over 500 million barrels of oil and over 960 billion cubic feet of gas from the SYU.  *Id.* ¶ 93.  Exxon drilled an additional well in 2010 to expand production in the SYU.  *Id.* ¶ 94.  Further, the SYU produces more volatile organic compound emissions than the DPPs contemplated, and Exxon has admitted that it was unable to prevent the recurrence of leaks.  *Id.* ¶¶ 96–97.  Resuming oil and gas production at the SYU would also change the types and quantity of water pollution discharges contemplated under the controlling DPPs for SYU.  *Id.* ¶ 104.  BOEM did not account for these changes when reaching its decision that Sable need not revise the DPP for Platform Harmony.  *Id.* ¶ 106.

B.    Procedural Background

Plaintiffs provided notice of their intent to file suit in a letter to Defendants on September 26, 2024.  *See* Dkt. # 1 ("*Orig. Compl.*") ¶ 15; *FAC* ¶ 10.  On April 2, 2025, Plaintiffs filed this lawsuit alleging that BOEM's "failure to require revisions of the DPPs for the Santa Ynez Unit violates the [Outer Continental Shelf Lands Act ("OCSLA")], 43 U.S.C. § 1351, its implementing regulations, 30 C.F.R. §§ 550.283 and 550.284, and/or constitutes 'agency action unlawfully withheld or unreasonably delayed' within the meaning of the [Administrative Procedure Act ("APA")], 5 U.S.C. § 706(1)."  *Orig. Compl.* ¶ 109.  The original complaint also averred that BOEM's "determination that the DPPs for the Santa Ynez Unit need not be revised for any reason other than to include the terms and conditions in a 2024 biological opinion (regarding reporting vessel collisions with marine mammals and sea turtles) constitutes an agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;' and made 'without observance of procedure required by law.'"  *Id.* (quoting 5 U.S.C. § 706(2)(A), (D)).

On April 30, 2025, BOEM issued a decision memorializing (1) its review of the development plan for Platform Harmony in the SYU and (2) its determination that no revisions to the DPP were necessary.  *FAC* ¶ 55.  BOEM chronicled that it reviewed various documents— including those related to the 2015 oil spill, various regulatory requirements, plans of operations for the SYU from 2010 through 2015, and a worst-case oil spill discharge analysis from 2016.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2-25-cv-02840-MWC-MAA                         Date: September 10, 2025

Title:     Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

---

*Id.*  BOEM concluded that its review found no need for "additional revisions for the DPP for Platform Harmony . . . at this time."  *Id.*

On May 12, 2025, following BOEM's determination that Sable need not revise the DPP for Platform Harmony, Plaintiffs filed the FAC to reference that decision.  *Id.* ¶ 111.  Without providing a new notice of intent to sue under OCSLA, Plaintiffs' FAC asked the Court to "[d]eclare that [Federal] Defendants' decision that the DPP for Platform Harmony in the Santa Ynez Unit need not be revised is arbitrary, capricious, and not in accordance with OCSLA or its implementing regulations, in violation of the APA."  *Id.* 29 ¶ 1.  Plaintiffs also seek an order requiring revision of the DPP for Platform Harmony in the Santa Ynez unit, *id.* 29 ¶ 2, and a prohibition on Federal Defendants authorizing new oil and gas drilling activity at the Santa Ynez Unit "unless and until the revision of the DPP is complete," *id.* 29 ¶ 3, along with litigation costs, *id.* 29 ¶ 4.  On May 13, 2025, Sable filed a motion to intervene, Dkt. # 14, which the Court granted on June 10, 2025, Dkt. # 28.  On July 21, 2025, Sable filed its motion to dismiss.  *See generally Mot.*

C.      Statutory Framework

        i.      *Administrative Procedure Act*

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or made "without observance of procedure required by law"  5 U.S.C. § 706(2)(A), (D).  Agency action is "the whole or a part of an agency rule, order license, . . . or failure to act."  *Id.* § 551(13).  "The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court,' [*id.*] § 704," and "applies universally 'except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law,' [*id.*] § 701(a)."  *Bennett v. Spear*, 520 U.S. 154, 175 (1997).  "[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."  *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)).  The APA does not require litigants to provide pre-suit notice.  *See Or. Nat. Res. Council v. U.S. Forest Serv.*, 834 F.2d 842, 850 (9th Cir. 1987).

        ii.     *Outer Continental Shelf Lands Act*

OCSLA applies to oil and gas drilling in federal waters and establishes distinct statutory stages to developing an offshore oil well: (1) formulation of a five-year leasing plan; (2) lease

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2-25-cv-02840-MWC-MAA                          Date: September 10, 2025

Title:   Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

sales; (3) exploration by the lessees; and (4) development and production. *Sec'y of the Interior v. California*, 464 U.S. 312, 337 (1984). "Each stage involves separate regulatory review . . . ." *Id.* Prior to the development of the well at the fourth stage, OCSLA requires lessees to submit DPPs. *Id.* at 340; 43 U.S.C. § 1351(a). Each DPP must include a description of:

> (1) the specific work to be performed;
>
> (2) a description of all facilities and operations located on the outer Continental Shelf which are proposed by the lessee or known by him (whether or not owned or operated by such lessee) to be directly related to the proposed development, including the location and size of such facilities and operations, and the land, labor, material, and energy requirements associated with such facilities and operations;
>
> (3) the environmental safeguards to be implemented on the outer Continental Shelf and how such safeguards are to be implemented;
>
> (4) all safety standards to be met and how such standards are to be met;
>
> (5) an expected rate of development and production and a time schedule for performance; and
>
> (6) such other relevant information as the Secretary may by regulation require.

43 U.S.C. § 1351(c).

OCSLA also requires the Secretary of the Interior to occasionally review each approved DPP "based upon changes in available information and other onshore or offshore conditions affecting or impacted by development and production pursuant to such plan," and "[i]f the review indicates that the plan should be revised to meet the requirements of this subsection, the Secretary shall require such revision." 43 U.S.C. § 1351(h)(3). OCSLA requires rejection of a DPP if: (i) the Secretary determines that implementing the plan would cause serious harm to life, property, marine, coastal, or human environments; (ii) the threat of harm or damage will not dissipate within a reasonable period of time; and (iii) the advantages of not approving the plan outweigh the advantages of development and production. 43 U.S.C. § 1351(h)(1)(D).

BOEM's implementing regulations contain additional requirements for DPPs. 30 C.F.R. §§ 550.241–.262. The frequency and extent of BOEM's review of an approved DPP will vary "based on the significance of any changes in available information and on shore and offshore conditions," which may result in BOEM requiring a revision to the DPP. 30 C.F.R. § 550.284.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2-25-cv-02840-MWC-MAA                    Date: September 10, 2025

Title:    Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

All DPPs must contain, *inter alia*, detailed descriptions related to the water and air pollution that the extraction will generate, mitigation measures to protect impacted species, and information regarding planning for oil spill response. 30 C.F.R. §§ 550.241–.261. Leaseholders must revise their DPP when they propose to take certain actions, including to "[c]hange the type of production or significantly increase the volume of production or storage capacity;" "[i]ncrease the emissions of [certain] air pollutant[s] . . . to an amount that exceeds the amount specified in [the] approved [DPP];" "[s]ignificantly increase the amount of solid or liquid wastes to be handled or discharged;" or "[c]hange the location of [its] onshore support base . . .," among others. 30 C.F.R. § 550.283(a).

OCSLA includes a citizen-suit provision. The statute allows suits "to compel compliance with [the statute] against any person, including the United States, or any other government instrumentality or agency . . . for any alleged violation of any provision of [the statute]," its implementing regulations, or the terms of the previously issued license or permit. 43 U.S.C. § 1349(a)(1). The statute also prohibits an action under the citizen-suit provision "prior to sixty days after the plaintiff has given notice of the alleged violation, in writing under oath, to the Secretary and any other appropriate Federal official, to the State in which the violation allegedly occurred or is occurring, and to any alleged violator . . . ." 43 U.S.C. § 1349(a)(2)(A). The requirement for notice prior to a citizen suit has historically been a jurisdictional one, *see Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009) (referring to the notice provision of the Clean Water Act as a "jurisdictional necessity"), though recent Ninth Circuit precedent has called this characterization into question, *see Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1153 (9th Cir. 2024) (holding that the notice requirement in the Endangered Species Act "is a mandatory claims-processing rule, not a jurisdictional predicate"). Regardless, OCSLA's notice requirement is mandatory prior to filing suit. *See id.*

II.    Discussion

A.    Legal Standard

"Federal courts are courts of limited jurisdiction." *Hornsby v. Lufthansa German Airlines*, 593 F. Supp. 2d 1132, 1134 (C.D. Cal. 2009) (citation omitted). Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." "When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court takes the allegations in the complaint as true." *Cal. Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F. Supp. 2d 1102, 1108 (C.D. Cal. 2015) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2-25-cv-02840-MWC-MAA                    Date: September 10, 2025

Title:      Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

---

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff.  *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, a cause of action's elements that are "supported by mere conclusory statements, do not suffice." *Id.*  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

B.      Analysis

Sable makes three arguments in favor of dismissal: (1) that Plaintiffs failed to provide the requisite 60-day notice under OCSLA, stripping the Court of subject matter jurisdiction; (2) that Plaintiffs' claims cannot proceed solely under the APA, independent of OCSLA; and (3) that Plaintiffs' September 2024 notice was not sufficiently related to the allegations in the FAC.  *See generally Mot.*  Plaintiffs respond by contending that the FAC states a claim under the APA, making the 60-day notice requirement in OCSLA inapplicable.  *See Opp.* 9–18.  In the alternative, Plaintiffs aver that their September 2024 notice of intent to sue was sufficient to satisfy OCSLA's requirements.  *Id.* 18–22.  The Court will first analyze whether Plaintiffs can maintain their action separate from OCSLA and via only the APA, before determining whether Plaintiffs' September 2024 notice was adequate.

i.      *Statute Controlling Plaintiffs' Cause of Action*

First, Sable argues that "Plaintiffs cannot evade OCSLA's 60-day notice requirement by instead relying only on the APA to bring this suit." *Mot.* 15.  It directs the Court to OCSLA's citizen suit provision, which reads, "all suits challenging actions or decisions allegedly in violation of, or seeking enforcement of, the provisions of [OCSLA], or any regulation promulgated under this subchapter . . ., shall be undertaken in accordance with the procedures described in" OCSLA's citizen suit provision.  *Id.* 15–16 (citing 43 U.S.C. § 1349(a)(6)).  Moreover, Sable contends, the APA allows for judicial review of an agency action only when "there is no other adequate remedy in a court . . . ." *Id.* 16 (citing 5 U.S.C. § 704)).  The payoff of Sable's argument is that because the citizen suit provision constitutes an "adequate remedy," the Court lacks jurisdiction to review Plaintiffs' claim under the APA.  *Id.* (citing *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1005 (9th Cir. 1998)).  Sable believes that Plaintiffs cannot "restyle" their lawsuit to circumvent OCSLA's pre-suit notice requirement.  *See id.* 2, 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2-25-cv-02840-MWC-MAA                    Date: September 10, 2025

Title:      Center for Biological Diversity *et al.* v. Doug Burgum *et al.*


Plaintiffs provide several responses.  First, Plaintiffs argue that the citizen suit provision
in OCSLA allows for Plaintiffs to retain "any right which any person or class of persons may
have under any other Act or common law to seek appropriate relief."  *Opp.* 10 (citing 43 U.S.C.
§ 1349(a)(6)).  Because the APA separately provides a right to relief, Plaintiffs assert that they
may bring their claims under that statute rather than OCSLA.  *Id.*  Plaintiffs also maintain that
the 60-day notice requirement applies only to actions brought under 43 U.S.C. § 1349(a)(1),
which refers only to suits "to compel compliance" with OCSLA, its implementing regulations, or
applicable terms under the statute.  *Id.*  Plaintiffs reason that suits "compelling compliance" refer
only to mandamus actions, so "when suing BOEM, the 60-day notice letter requirement only
applies to actions 'to compel' BOEM to comply with a nondiscretionary obligation under
OCSLA," which Plaintiffs do not seek here.  *Id.* 10–11.  Lastly, Plaintiffs reject the argument
that they "restyled" their lawsuit—instead, "[b]ecause Plaintiffs no longer seek to compel the
agency's compliance with OCSLA's duty to review and revise the development plan, they no
longer assert a claim under 1349(a)," and instead challenge the "adequacy of the agency's
decisionmaking."  *Id.* 16–17.

Beginning with the question as to whether the APA provides an avenue for relief separate
from OCSLA, making the 60-day notice requirement inapplicable, the Court finds that OCSLA
controls.  Plaintiffs' FAC indeed refers to BOEM's violation of or lack of compliance with
OCSLA multiple times.  *See FAC* ¶¶ 1, 13, 28; *see also id.* ¶¶ 10, 11, 55, 88, 106, 110 (referring
to its challenges to BOEM's "decision").  And since "[c]ourts must give effect, if possible, to
every clause and word of a statute," *Loughrin v. United States*, 573 U.S. 351, 358 (2014)
(citation omitted), the Court cannot overlook the plain language of OCSLA that "all suits
challenging actions or decisions allegedly in violation of, or seeking enforcement of, the
provisions of [OCSLA], or any regulation promulgated under this subchapter . . ., shall be
undertaken in accordance with the procedures described in" OCSLA's citizen suit provision.  43
U.S.C. § 1349(a)(6).  The same is true of the text of the APA, which counsels that judicial
review is available for "final agency action for which there is no other adequate remedy in a
court."  5 U.S.C. § 704.  To adopt Plaintiffs' interpretation would require the Court to act as if
there were no remedy available under the citizen suit provision of OCSLA, or as if Plaintiffs
were not seeking to correct "violations" of OCSLA, contrary to the plain language of the FAC.
*See Oceans v. U.S. Dep't of the Interior*, No. 1:24-cv-141-RCL, 2025 WL 973540, at *13
(D.D.C. Apr. 1, 2025) ("Where plaintiffs may otherwise proceed under the citizen suit provision,
they should not be allowed to bypass the explicit requirements of [OCSLA] established by
Congress through resort to . . . the APA." (quoting *Basel Action Network v. Mar. Admin.*, 370 F.
Supp. 2d 57, 76 (D.D.C. 2005))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2-25-cv-02840-MWC-MAA                          Date: September 10, 2025

Title:      Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

Plaintiffs point to *Friends of Yosemite Valley v. Norton*, which stated that "[t]he Clean Water Act explicitly permits a party to seek relief under other statutes . . . ." 348 F.3d 789, 802 (9th Cir. 2003). Sable contends—and the Court agrees—that the Clean Water Act and OCSLA are distinguishable, since OCSLA includes a statement that it applies to "all suits challenging actions or decisions allegedly in violation of, or seeking enforcement of, the provisions of" OCSLA, while the Clean Water Act contains no such provision. *Compare* 43 U.S.C. § 1349(a)(6), *with* 33 U.S.C. § 1365(e). Plaintiffs provide no authority where a court interpreted a provision referring to "all suits" challenging violations of or seeking enforcement of a statute as simultaneously allowing judicial review under the APA. *See Duke Energy Field Servs. Assets, L.L.C. v. Fed. Energy Regul. Comm'n*, 150 F. Supp. 2d 150, 156 (D.D.C. 2001) (stating that "the citizen suit provision in the instant case [concerning OCSLA] plainly bars *all cases* which do not comply with" the sixty-day notice provision (emphasis in original)).

With respect to Plaintiffs' argument that they are not bringing a suit under § 1349(a)(1) because they are not seeking a mandamus action, the Court likewise finds this reasoning unpersuasive. As detailed above, the Court has little doubt that Plaintiffs' lawsuit challenges BOEM's decision and alleges violations of OCSLA. The reliance on *Bennett v. Spear*, 520 U.S. 154 (1997), which analyzed the Endangered Species Act ("ESA"), does not save Plaintiffs, since "OCSLA's statutory scheme and legislative history are materially different from those of the ESA . . . ." *Ctr. for Biological Diversity v. Haaland*, No. 2:22-cv-06996-CAS-KSx, 2023 WL 3007920, at *6 (C.D. Cal. Apr. 17, 2023); *see also Duke*, 150 F. Supp. 2d at 156 (noting that the citizen suit provision at issue in *Bennett* did not establish any conditions prohibiting a citizen suit, by contrast to OCSLA's express limitations). Specifically, the court in *Center for Biological Diversity v. Haaland* noted that the ESA and Pipeline Safety Act both contain separate mandamus provisions, but OCSLA does not. 2023 WL 3007920, at *6. Rather, "the legislative history of OCSLA specifically supports a broad application of the citizen-suit provision . . . ." *Id.* (citing H.R. Rep. 95-590, at 161). Even if the case law supported Plaintiffs' interpretation, the Court cannot ignore the contradiction of Plaintiffs' statements that they "do not seek to compel BOEM to take a specific action mandated by OCSLA," *Opp.* 11, but also ask the Court, *inter alia*, to "[o]rder [Federal] Defendants to require revision of the DPP for Platform Harmony in the Santa Ynez Unit," *FAC* 29 ¶ 2.

Accordingly, the sixty-day notice provision of OCSLA applies to Plaintiffs' suit.

    *ii.    Adequacy of Plaintiffs' Previous Notice of Intent to Sue*

Plaintiffs contend that the notice that they provided to BOEM on September 26, 2024 was sufficient and "fulfilled all the purposes for requiring such notice." *Opp.* 18. Sable responds that the notice could not satisfy OCSLA's notice requirements because the September

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2-25-cv-02840-MWC-MAA                          Date: September 10, 2025

Title:     Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

---

2024 notice "says nothing about BOEM's April 2025 decision that Sable need not revise the DPP for Platform Harmony." *Reply* 10.  The Court finds that Plaintiffs' September 2024 notice is sufficient for purposes of the suit under the FAC.

OCSLA states only that a plaintiff must "ha[ve] given notice of the alleged violation, in writing under oath, to the Secretary and any appropriate Federal official, to the State in which the violation occurred or is occurring, and to any alleged violator."  43 U.S.C. § 1349(a)(2)(A).  For notice to be adequate, "a would-be plaintiff must at a minimum provide sufficient information so that the notified parties could identify and attempt to abate the violation." *Cascadia Wildlands*, 105 F.4th at 1154 (internal quotation marks and citation omitted).  "To be sufficient, the notice does not have 'to list every specific aspect or detail of every alleged violation.'" *Id.* (quoting *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002)).  Instead, a court must analyze the "overall sufficiency" of the notice by "'examining both the notice itself and the behavior of its recipients to determine whether they understood or reasonably should have understood the alleged violations.'" *Id.* at 1154–55 (quoting *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015)).

Plaintiffs' September 2024 notice centers on their intent to sue over BOEM's failure to require Sable to revise its DPPs before BOEM allowed drilling operations at the SYU to commence.[1] *See generally* Dkt. # 35-1, Ex. A ("*Notice Letter*").  The letter describes the risks of oil and gas drilling and the reasons that BOEM should have required Sable to revise the DPPs. *Id.*  Sable highlights, however, that the notice does not—and, temporally, cannot—refer to BOEM's April 30, 2025 decision, making the notice deficient. *See Mot.* 19.  Sable also points to the notice's lack of reference to its claims under 5 U.S.C. § 706(2). *Reply* 11.

But Sable's argument ignores that the subject of Plaintiffs' notice was the same—asking BOEM to require revision or supplementation of the SYU DPPs prior to restarting oil production. *See Notice Letter* 5.  BOEM's violation was the same in September 2024 and May 2025 since it failed to require Sable to revise the DPPs, but Sable attempts to mischaracterize the April 2025 decision to avoid this fact. *See Reply* 11.  Specifically, Sable states that Plaintiffs sent "the September 2024 Notice alleging one violation (failure to require Sable to update its DPPs) and us[ed] that notice to sue on an entirely different alleged violation (BOEM's April

---

[1] When deciding a motion to dismiss under Rules 12(b)(1) or 12(b)(6), the Court may consider documents incorporated by reference into the complaint and matters of which the Court may take judicial notice. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014). Plaintiffs reference the notice letter in the FAC, *see FAC* ¶ 10, so the Court may take judicial notice of the letter.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2-25-cv-02840-MWC-MAA                                    Date: September 10, 2025

Title:      Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

2025 decision),” *id.*, but ignores that BOEM’s April 2025 decision was that Sable need not
update its DPPs.

    The mere fact that the notice preceded BOEM’s decision does not render the notice
defective.  In *Cascadia Wildlands*, plaintiffs provided their notice letter two years prior to the
commencement of the violation over which they eventually sued. 105 F.4th at 1150.  The Ninth
Circuit reasoned that this temporal difference was not fatal, since “[t]he notice letter clearly
‘provide[d] sufficient information so that the notified parties could identify and attempt to abate’
the prospective violation of Section 9 of the ESA.”  *Id.* at 1155 (quoting *Klamath-Sikiyou*, 797
F.3d at 651).  Similarly here, Plaintiffs outlined a litany of reasons that BOEM should have
required Sable to revise the SYU DPPs, *see generally Notice Letter*, but BOEM decided later not
to do so.  Likewise, in *Natural Resources Defense Council v. Southwest Marine, Inc.*, the notice
that the Ninth Circuit found sufficient preceded some of defendant’s actions at issue.  236 F.3d
985, 996–97 (9th Cir. 2000).  Under Sable’s logic, the fact that plaintiffs’ notice in *Southwest
Marine* did not refer to defendant’s later actions would render the notice deficient.  The Ninth
Circuit instead asserted that “[a]lthough we require strict compliance with the [Clean Water
Act’s] notice requirement, we do not require citizen-plaintiffs to refer to provisions of plans that
do not exist.”  *Id.* at 997.

    Additionally, Plaintiffs in the present case highlight BOEM’s behavior following
Plaintiffs’ September 2024 notice.  They argue that BOEM’s behavior “demonstrates that the
notice actually compelled the agency to review the development plan in November 2024, though
the agency failed to consider the relevant factors raised in the notice letter and reached a
conclusion contrary to the evidence before it.”  *Opp.* 20–21 (citing FAC ¶ 55).  The Ninth Circuit
in *Southwest Marine* relied on the same reasoning, noting that “[i]n response to Plaintiffs’ letter,
Defendant completely revised its [storm water pollution prevention and monitoring plans] within
four months, adding sections that specifically made reference to the requirements that Plaintiffs
identified.” 236 F.3d at 997.  But these changes, in addition to others that the Ninth Circuit
described related to defendant’s facility and operations, were not enough to render plaintiffs’
previous notice deficient.  *Id.*  The Ninth Circuit handled the issue by reasoning:

        If a defendant receives a proper notice letter alleging that it has
        failed to prepare and implement an adequate plan and, in response,
        prepares a new plan and begins to implement it before the complaint
        is filed, is the otherwise proper notice letter defective for failing to
        identify and discuss the new plan and its implementation? In those
        circumstances, must a citizen-plaintiff send a new notice letter? We
        think not. Subject matter jurisdiction is established by providing a
        notice that is adequate on the date it is given to the defendant. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2-25-cv-02840-MWC-MAA                    Date: September 10, 2025

Title:       Center for Biological Diversity *et al.* v. Doug Burgum *et al.*

> defendant's later changes to its operations and plans may affect
> standing, . . . the question of ongoing violations or remedies, . . . or
> mootness . . . . But such changes do not retroactively divest a district
> court of jurisdiction . . . .

*Id.* (citations omitted).  The Court reaches the same conclusion in this case—BOEM's decision
not to require Sable to revise its DPPs does not strip the Court of jurisdiction over claims
preceded with notice concerning the same subject, even if BOEM took some action between the
notice and the filing of the FAC.

III.    Conclusion

        For the foregoing reasons, the Court **DENIES** Sable's motion to dismiss.  The September
12, 2025 hearing is **VACATED**.


        **IT IS SO ORDERED.**


                                                                                :
                                        **Initials of Preparer**    TJ