Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Emily Jeffers (CA Bar No. 274222)
Email: ejeffers@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DOUG BURGUM, et al., <br><br> *Defendants*, <br><br> and <br><br> SABLE OFFSHORE CORP., <br><br> *Intervenor-Defendant*. | Case No. 2:25-cv-02840-MWC-MAA <br><br> **PLAINTIFFS' OPPOSITION TO MOTIONS TO STRIKE EXTRA-RECORD EVIDENCE** <br><br><br> Hearing Date: May 15, 2026 <br> Hearing Time: 1:30 p.m. <br> Judge: Hon. Michelle Williams Court <br> Location: Courtroom 6A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

    I.     The Court's Review Is Not Limited to the Administrative Record............................................................................................... 1

          A.    The Standard of Review Is Separate and Distinct from the Scope of Review ............................................................ 2

          B.    Ninth Circuit Caselaw and OCSLA's Plain Language Demonstrate that the Court Can Consider Plaintiffs' Extra-Record Evidence ............................................................ 3

          C.    BOEM and Sable Rely on Inapposite Caselaw .......................... 7

    II.    Plaintiffs Are Not Required to Show Exceptions to the Record-Review Rule, but the Evidence Satisfies an Exception ....................................................................................... 14

CONCLUSION ....................................................................................................... 19

CERTIFICATE OF COMPLIANCE ....................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Aluminum Co. of Am. v. Bonneville Power Admin.*,
   175 F.3d 1156 (9th Cir. 1999) ...................................................................12

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
   370 F. Supp. 3d 1 (D.D.C. 2019)...............................................................19

*Am. Canoe Ass'n, Inc. v. EPA*,
   46 F. Supp. 2d 473 (E.D. Va. 1999) ..........................................................13

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*,
   273 F.3d 1229 (9th Cir. 2001) ...................................................................12

*Bennett v. Spear*,
   520 U.S. 154 (1997)...............................................................................3, 12

*Bunker Hill Co. v. EPA*,
   572 F.2d 1286 (9th Cir. 1977) ...................................................................19

*Cal. ex rel. Lockyer v. U.S. Dep't. of Agric.*,
   575 F.3d 999 (9th Cir. 2009) .....................................................................12

*Cascadia Wildlands v. Scott Timber Co.*,
   105 F.4th 1144 (9th Cir. 2024) ..................................................................15

*Chandler v. Roudebush*,
   425 U.S. 840 (1976).....................................................................................7

*Cheneau v. Garland*,
   997 F.3d 916 (9th Cir. 2021) .......................................................................7

*City of Sausalito v. O'Neill*,
   386 F.3d 1186 (9th Cir. 2004) ...................................................................12

*Conservation Cong. v. Finley*,
   774 F.3d 611 (9th Cir. 2014) .....................................................................12

*Conservation Council for Haw. v. Nat'l Marine Fisheries Serv.*,
   97 F. Supp. 3d 1210 (D. Haw. 2015)..........................................................15

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
  698 F.3d 1101 (9th Cir. 2012) ...................................................................12

*Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*,
  No. 14-1667 PSG (CWx), 2015 WL 12659937 (C.D. Cal. June 30, 2015) .........13

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
  450 F.3d 930 (9th Cir. 2006) .....................................................................12

*Defs. of Wildlife v. EPA*,
  420 F.3d 946 (9th Cir. 2005) .....................................................................12

*Earth Island Inst. v. U.S. Forest Serv.*,
  442 F.3d 1147 (9th Cir. 2006) ...................................................................15

*Ellis v. Housenger*,
  No. C–13–1266-MMC, 2015 WL 3660079 (N.D. Cal. June 12, 2015) ................3

*Envt'l Prot. Info. Ctr. v. Simpson Timber Co.*,
  255 F.3d 1073 (9th Cir. 2001) ...................................................................12

*Franklin Sav. Ass'n v. Office of Thrift Supervision*,
  934 F.2d 1127 (10th Cir. 1991) ...................................................................2

*Friends of Endangered Species v. Jantzen*,
  760 F.2d 976 (9th Cir. 1985) .....................................................................12

*Friends of the Clearwater v. Higgins*,
  523 F. Supp. 3d 1213 (D. Idaho 2021) .......................................................10

*Grand Canyon Trust v. U.S. Bureau of Reclamation*,
  691 F.3d 1008 (9th Cir. 2012) ...................................................................12

*Greater Yellowstone Coal., Inc. v. Servheen*,
  665 F.3d 1015 (9th Cir. 2011) ...................................................................11

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*,
  383 F.3d 1082 (9th Cir. 2004) ...................................................................12

*Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*,
  230 F. Supp. 3d 1106 (N.D. Cal. 2017) ....................................................9, 14

*Humane Soc'y of the United States v. Locke*,
626 F.3d 1040 (9th Cir. 2010) ...................................................................15

*Inst. for Wildlife Prot. v. Norton*,
149 Fed. Appx. 627 (9th Cir. 2005)...........................................................12

*Karuk Tribe v. U.S. Forest Serv.*,
681 F.3d 1006 (9th Cir. 2012) (en banc) ....................................................9

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) ...................................................................14

*Nat. Res. Def. Council v. Houston*,
146 F.3d 1118 (9th Cir. 1998) ...................................................................13

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007)......................................................................................8

*Nat'l Ass'n of Home Builders v. Norton*,
340 F.3d 835 (9th Cir. 2003) .....................................................................11

*Nat'l Audubon Soc'y v. U.S. Forest Serv.*,
46 F.3d 1437 (9th Cir 1993) ......................................................................16

*Nat'l Family Farm Coal. v. EPA*,
966 F.3d 893 (9th Cir. 2020) .................................................................6, 11

*Nat'l Wildlife Fed'n v. U.S. Fish & Wildlife Serv.*,
524 F.3d 917 (9th Cir. 2008) .....................................................................12

*Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*,
992 F. Supp. 2d 1095 (D. Or. 2014) ..........................................................14

*Ninilchik Traditional Council v. United States*,
227 F.3d 1186 (9th Cir. 2000) .....................................................................9

*Nw. Coal. for Alts. to Pesticides v. EPA*,
920 F. Supp. 2d 1168 (W.D. Wash. 2013) .................................................10

*Nw. Envt'l Advocates v. Nat'l Marine Fisheries Serv.*,
No. 3:21-cv-01591-AB, 2025 WL 472332 (D. Or. Feb. 11, 2025)............10

*Nw. Envt'l Advocates v. U.S. Dep't of Com.*,
  No. C16-1866-JCC, 2017 U.S. Dist. LEXIS 185295
  (W.D. Wash. Nov. 8, 2017) ...............................................................8, 11

*Oceana, Inc. v. Evans*,
  384 F. Supp. 2d 203 (D.D.C. 2005)........................................................18

*Or. Nat. Res. Council v. Allen*,
  476 F.3d 1031 (9th Cir. 2007) ...............................................................12

*Pac. Coast Fed. of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*,
  426 F.3d 1082 (9th Cir. 2005) ...............................................................12

*Pyramid Lake Paiute Tribe v. U.S. Dep't of Navy*,
  898 F.2d 1410 (9th Cir. 1990) ...............................................................13

*Resources Ltd., Inc. v. Robertson*,
  35 F.3d 1300 (9th Cir. 1994) .................................................................13

*Rodriguez v. United States*,
  480 U.S. 522 (1987)................................................................................7

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
  747 F.3d 581 (9th Cir. 2014) .................................................................10

*Selkirk Conservation All. v. Forsgren*,
  336 F.3d 944 (9th Cir. 2003) .................................................................12

*Sierra Club v. Marsh*,
  816 F.2d 1376 (9th Cir. 1987) ...............................................................13

*Stop H-3 Ass'n v. Dole*,
  740 F.2d 1442 (9th Cir. 1984) ...............................................................13

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*,
  143 F.3d 515 (9th Cir. 1998) .................................................................13

*Tucson Herpetological Soc'y v. Salazar*,
  566 F.3d 870 (9th Cir. 2009) .................................................................11

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*,
  340 F.3d 969 (9th Cir. 2003) .................................................................12

*United States v. Carlo Bianchi & Co.*,
  373 U.S. 709 (1963)...........................................................................................8

*Vill. of False Pass v. Clark*,
  733 F.2d 605 (9th Cir. 1984) ...........................................................................13

*W. Watersheds Proj. v. Kraayenbrink*,
  632 F.3d 472 (9th Cir. 2011) ..................................................................... 3, 4, 6

*W. Watersheds Proj. v. Matejko*,
  468 F.3d 1099 (9th Cir. 2006) .........................................................................12

*Wash. Toxics Coal. v. EPA*,
  413 F.3d 1024 (9th Cir. 2005) .................................................................... 3, 4, 5

*Westlands Water Dist. v. U.S. Dep't of Interior*,
  376 F.3d 853 (9th Cir. 2004) ...........................................................................12

*White v. U.S. Army Corps of Eng'rs*,
  Case No. 3:22-cv-06143-JSC, 2024 WL 24322 (N.D. Cal. Jan. 2, 2024) .......3, 14

*Wong v. United States*,
  859 F.2d 129 (9th Cir. 1988) ...........................................................................13

*Yang v. Cal. Dep't of Social Servs.*,
  183 F.3d 953 (9th Cir. 1999) .............................................................................7

**Statutes**

5 U.S.C. § 704.......................................................................................................2, 3

5 U.S.C. § 706.......................................................................................................2, 3

5 U.S.C. § 706(2)(A).............................................................................................2, 16

16 U.S.C. § 1536(a)(2)..............................................................................................5

43 U.S.C. § 1349(a) .................................................................................................8

43 U.S.C. § 1349(a)(1)...........................................................................................6, 7

43 U.S.C. § 1349(a)(2)(A).......................................................................................15

43 U.S.C. § 1349(c)(6)................................................................................7

43 U.S.C. § 1351(c) ............................................................................ 17, 18

43 U.S.C. § 1351(h)(1)................................................................................5

43 U.S.C. § 1351(h)(3)............................................................................5, 17

**Regulations**

30 C.F.R. § 250.410(b) .............................................................................16

30 C.F.R. § 550.283 .................................................................................17

30 C.F.R. § 550.283(a)(4) .........................................................................17

30 C.F.R. §§ 550.241–.262 .......................................................................17

**Legislative History**

H.R. Rep. No. 95-590 (1977).........................................................................8

# INTRODUCTION

In this case, Plaintiffs challenge Federal Defendants the Bureau of Ocean Energy Management et al.'s (collectively, BOEM) unlawful decision that Sable Offshore Corp. (Sable) need not revise the oil and gas development and production plan for the Santa Ynez Unit. This Court has ruled that Plaintiffs' claim arises under the citizen suit provision of the Outer Continental Shelf Lands Act (OCSLA). As such, the Court's review is not limited to the administrative record, and the Court can rely on any admissible evidence. The overwhelming caselaw from the Ninth Circuit and district courts within it confirms that while the Administrative Procedure Act (APA) provides the *standard* the Court should apply in reviewing Plaintiffs' claim, the APA's restriction on the *scope* of that review does not control. OCSLA's plain language also supports this position.

Nevertheless, BOEM and Sable have moved to strike the five documents that Plaintiffs submitted with their opening summary judgment brief. The motions are unfounded. First, BOEM and Sable's arguments confuse the standard of review with the scope of review, conflict with OCSLA's plain language, and misread the caselaw. Second, because Plaintiffs' claim arises under OCSLA, Plaintiffs need not satisfy any exception to the record-limitation rule of the APA. Rather, the Court can consider any admissible evidence in evaluating Plaintiffs' claim. Finally, Sable merely regurgitates its misguided merits arguments in contending that Plaintiffs' proffered evidence—including the company's own statements regarding its intentions for the Santa Ynez Unit—is irrelevant to BOEM's determination.

The Court should deny the motions.

# ARGUMENT

## I.    The Court's Review Is Not Limited to the Administrative Record

Plaintiffs' claim against BOEM arises under the citizen suit provision of OCSLA. *See* Order Denying Sable Mot. to Dismiss 8, Dkt. No. 39. Since "the citizen suit provision of OCSLA" provides a "remedy" for Plaintiffs' claim, *id.*,

1

and the APA only applies where "there is no other adequate remedy in a court," 5 U.S.C. § 704, the APA does not govern Plaintiffs' claim and the scope of the Court's review is not limited to an administrative record the way it would be under the APA, *see id*. § 706.

The Ninth Circuit has twice affirmed as much in cases arising under the citizen suit provision of the Endangered Species Act (ESA), as have many district courts. True, these cases did not involve OCSLA's citizen suit provision, but their reasoning applies just the same. Like the plaintiffs in those cases, Plaintiffs here challenge an agency's determination that a statutorily mandated process intended to prevent substantive harm is not required. Just as in those cases, a citizen suit, not the APA, provides the remedy for this violation, and therefore the Court can consider evidence outside the administrative record. BOEM and Sable's numerous attempts to convince this Court otherwise fall flat.

### A.    The Standard of Review Is Separate and Distinct from the Scope of Review

BOEM and Sable repeatedly blur the essential distinction between a standard of review and a scope of review. Only the latter is at issue in their motion, and the two concepts cannot be conflated, despite BOEM and Sable's attempt to do so. The Tenth Circuit has succinctly distinguished these two concepts, stating that "[t]he scope of judicial review refers merely to the evidence the reviewing court will examine in reviewing an agency decision. The standard of judicial review refers to how the reviewing court will examine that evidence." *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127, 1136 (10th Cir. 1991).

Under the APA, a court must hold unlawful agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This constitutes the *standard* of review. And it is the standard of review that courts in the Ninth Circuit also apply when evaluating a challenge to an agency action brought under the citizen suit provision of a

2

substantive statute that does not contain an "internal standard of review," *see W. Watersheds Proj. v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011) (citation omitted), such as the citizen suit provision of OCSLA.

The *scope* of review of these claims, however, is different from review of claims arising under the APA. For claims arising under the APA, courts are generally limited to reviewing "the whole record" compiled by the agency. 5 U.S.C. § 706. But "the APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 154, 161–62 (1997) (quoting 5 U.S.C. § 704). As such, where another statute provides a remedy, the APA's scope of review restrictions do not apply and are "divisible" from the APA's standard of review. *White v. U.S. Army Corps of Eng'rs*, Case No. 3:22-cv-06143-JSC, 2024 WL 24322, at *2 (N.D. Cal. Jan. 2, 2024) (citation omitted); *see also Ellis v. Housenger*, No. C–13–1266-MMC, 2015 WL 3660079, at *4 (N.D. Cal. June 12, 2015) (noting that "where a claim alleges a failure to consult, in violation of the ESA, the APA's 'arbitrary and capricious' standard applies, but the court, in applying that standard, is not limited to a review of the administrative record, as the claim is not governed by the APA" (citation modified)).

B.    **Ninth Circuit Caselaw and OCSLA's Plain Language Demonstrate that the Court Can Consider Plaintiffs' Extra-Record Evidence**

The Ninth Circuit has repeatedly held that cases arising under a statute's citizen suit provision are not confined to an administrative record, even where the APA provides the standard of review. In *Washington Toxics Coalition v. Environmental Protection Agency*, the plaintiffs sued the Environmental Protection Agency (EPA) under the ESA citizen suit provision, challenging the agency's failure to consult over the effects of its pesticide registrations on endangered species. 413 F.3d 1024, 1028 (9th Cir. 2005), *abrogated on other grounds as*

3

*recognized in Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1089 (9th Cir. 2015). The district court considered extra-record evidence regarding the effects of the pesticides at issue and enjoined EPA's authorization of the use of certain pesticides pending compliance with the ESA. *Washington Toxics*, 413 F.3d at 1030–31. On appeal, industry intervenors argued that the district court erred by failing to limit review to the administrative record. *Id.* at 1034. The Ninth Circuit rejected this argument, ruling that "[t]he district court correctly held . . . that the ESA citizen suit provision creates an express, adequate remedy" for the plaintiffs' claims. *Id.* As such, "[b]ecause [the ESA] independently authorizes a private right of action, the APA does not govern the plaintiffs' claims." *Id.*

The Ninth Circuit reached a similar conclusion in *Western Watersheds Project v. Kraayenbrink*, a case challenging an agency's determination that its action would not affect ESA-listed species and the agency's attendant failure to consult under section 7 of the ESA. 632 F.3d at 495–96. The plaintiffs had submitted extra-record evidence in support of their merits argument in the district court, and intervenors claimed on appeal that the court could not consider this evidence because its review was limited to the administrative record. *Id.* at 497. The Ninth Circuit rejected this argument, holding that its scope of review was not limited to the record because the ESA provides the remedy for the plaintiffs' claim:

> As we explained in *Washington Toxics Coalition*, the APA applies only where there is no other adequate remedy in a court, and—because the ESA provides a citizen suit remedy—the APA does not apply in such actions. Therefore, under *Washington Toxics Coalition* we may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim.

*Id.* (citation modified). The court then examined expert declarations the plaintiffs had submitted to determine whether the agency action was arbitrary and capricious. *Id.* at 497–98. In other words, in both *Washington Toxics* and

4

*Kraayenbrink*, the Ninth Circuit recognized that while the *standard* of review of ESA citizen suit claims was the APA's "arbitrary and capricious" standard, the *scope* of review was not limited to the APA's rule that review is generally limited to the "whole record."

BOEM attempts to dismiss the relevance of these cases by pointing to the fact that claims that are the subject of the ESA citizen suit provision (i.e., violations of section 7 or section 9 of the statute) "target current and future harms rather than the validity of a past administrative decision," and that Plaintiffs' claim here targets a prior administrative decision. BOEM Mot. to Strike 6–7, Dkt. No 58-1 [hereinafter BOEM MTS]. But a claim challenging an agency's failure to consult under section 7 of the ESA, 16 U.S.C. § 1536(a)(2)—the claims at issue in both *Washington Toxics* and *Kraayenbrink*—also targets a past administrative action: a federal agency's decision to take an action without first complying with the consultation procedures required by the ESA and its implementing regulations, *Washington Toxics*, 413 F.3d at 1028 (challenging agency's approval of 54 types of pesticides); *Kraayenbrink*, 632 F.3d at 476–77 (challenging agency's issuance of rules regarding grazing on public lands).

While those ESA procedures are intended to prevent current and future harm to endangered species from agency actions, BOEM MTS 7, the OCSLA procedures underlying this case are similarly intended to prevent current and future environmental harm. OCSLA requires updates to development plans to ensure they properly account for changes in operations, changes in offshore or onshore conditions, and other new information—thereby helping prevent or mitigate current and future harm from oil and gas production activities. *See* 43 U.S.C. § 1351(h)(3); *see also id.* § 1351(h)(1) (requiring modification of a plan if "the lessee has failed to make adequate provision in such plan for safe operations on the lease area or for protection of the human, marine, or coastal environment"). In other words, just like the claims at issue in *Washington Toxics* and *Kraayenbrink*,

5

Plaintiffs here challenge an agency's failure to comply with a statutorily mandated procedure; and just like the procedural requirements at issue in those cases, the OCSLA process BOEM disregarded here exists to prevent substantive violations of the statute. OCSLA "provides a citizen suit remedy" for this violation, and thus the Court can consider extra-record evidence in reviewing this claim. *See Kraayenbrink*, 632 F.3d at 497 (citation omitted); *see also* 43 U.S.C. § 1349(a)(1) (citizen suit provision authorizing actions against BOEM "to compel compliance" with OCSLA "for any alleged violation").

Sable argues that Plaintiffs' merits briefing dictates otherwise because it focuses on how BOEM's decision is arbitrary and fails to consider relevant factors. Sable Mot. to Strike 2, 6, Dkt. No. 60-1 [hereinafter Sable MTS]. But Plaintiffs framed their argument this way because that is the standard of review the Court applies in reviewing the claim. Plaintiffs' arguments do not transform their citizen suit claim into one that is governed by the APA's restrictions on the scope of review. Indeed, in cases where the Ninth Circuit determined the APA did not govern the scope of plaintiff's citizen suit claims, the court evaluated whether the agency's determination that its action would have "no effect" on ESA-listed species—and resulting failure to engage in the ESA consultation process—was arbitrary and capricious and based on consideration of the relevant factors while also considering extra-record evidence. *See Kraayenbrink*, 632 F.3d at 495–98; *Nat'l Family Farm Coal. v. EPA*, 966 F.3d 893, 923–27, 926 n.11 (9th Cir. 2020). Considering such evidence does not require the Court to substitute its judgment for that of the agency. *Cf.* BOEM MTS 2, 3–4; Sable MTS 8. Rather, it simply ensures the Court has the information necessary to determine whether the Court must compel BOEM to comply with OCSLA.

The plain language of OCSLA's judicial review provision also supports Plaintiffs' position. The Supreme Court has recognized that "in most instances . . . where Congress intends review to be confined to the administrative record, it so

indicates, either expressly or by use of a term like 'substantial evidence.'" *Chandler v. Roudebush*, 425 U.S. 840, 862 n.37 (1976). Section 1349(c)(6) of OCSLA, which involves challenges to specific agency actions not relevant here, states that courts "shall consider the matter under review solely on the record made before [an agency]" and that an agency's findings, "if supported by substantial evidence on the record considered as a whole, shall be conclusive." 43 U.S.C. § 1349(c)(6). But that language is conspicuously absent from section 1349(a)(1), despite expressly covering cases against federal agencies. *Id.* § 1349(a)(1).

It is a basic principle of statutory construction that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Rodriguez v. United States*, 480 U.S. 522, 525 (1987) (citation modified). "This presumption applies with even greater force here, where Congress used particular language in one provision and not in another provision of the same subsection of the same statute." *Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021). In other words, if Congress intended to limit the scope of review under the citizen suit provision of section 1349(a)(1), "it would have done so explicitly." *See Yang v. Cal. Dep't of Social Servs.*, 183 F.3d 953, 959 (9th Cir. 1999). It did not.

### C.     BOEM and Sable Rely on Inapposite Caselaw

BOEM's argument that this Court should disregard *Kraayenbrink* (and *Washington Toxics*) by pointing to inapposite Supreme Court and Ninth Circuit cases fails. BOEM MTS 1–2, 4–6. None of the Supreme Court cases on which BOEM relies involved citizen suit claims; and the Ninth Circuit cases BOEM cites did not address the scope of a court's review of such claims.

In *United States v. Carlo Bianchi & Company*, a case from over sixty years ago, the Supreme Court determined its scope of review was limited to an

7

administrative record for claims arising under the Wunderlich Act. 373 U.S. 709, 709–10, 714 (1963). But the Court based its decision on that Act's particular language and its legislative history. *Id.* at 714–17. Specifically, the Court relied on the fact that the Act itself limits its application to review of agency action and instructs courts to evaluate whether the agency's action is "supported by substantial evidence," and other standards typically associated with a review limited to the administrative record. *Id.* at 715. The court also looked to the legislative history of the Act, including the House Report recommending the bill's enactment explicit reference to the APA's use of the substantial evidence standard to ensure "that the records of hearing officers" would be complete. *Id.* at 716–17 (citation omitted).

Such language is absent from OCSLA's citizen suit provision. *See* 43 U.S.C. § 1349(a). Nor does OCSLA's legislative history indicate that Congress intended citizen suits against BOEM to be limited to the administrative record. On the contrary, its legislative history indicates that Congress contemplated cases brought under the citizen suit provision would not be limited to a record. *See* H.R. Rep. No. 95-590, at 162 (1977) ("[U]nlike a [claim] covered by the citizens' suit provision . . . there is a less of a need to create a record at a trial court" in cases challenging BOEM's adoption of a leasing program or the other agency actions covered in section 1349(c)).

*National Association of Home Builders v. Defenders of Wildlife* is also inapposite. 551 U.S. 644 (2007). Like many of BOEM's cited authorities, *Home Builders* does not address the appropriate scope of review of claims arising under the ESA citizen suit provision because the case did not involve such a claim. Rather, the sole ESA-based claim, involving a challenge to a biological opinion, arose under the APA. *See id.* at 653–55; *see also Nw. Envt'l Advocates v. U.S. Dep't of Com.*, No. C16-1866-JCC, 2017 U.S. Dist. LEXIS 185295, at *3 (W.D. Wash. Nov. 8, 2017) ("Biological opinion challenges are APA claims, *not* citizen-suit claims."). The Supreme Court's discussion of the appellate court's ruling

concerned whether the appellate court appropriately applied the arbitrary and capricious standard of review in resolving the merits and in vacating and remanding the EPA decision at issue. *Home Builders*, 551 U.S. at 657–60.

And in *Ninilchik Traditional Council v. United States*, the Ninth Circuit applied the APA's standard of review to an Alaska National Interest Lands Conservation Act claim and did not expressly adopt the APA's scope of review. *See* 227 F.3d 1186, 1194 (9th Cir. 2000) ("We adopt the arbitrary and capricious standard . . . ."). Moreover, the Ninth Circuit decided *Ninilchik* five years before *Washington Toxics*; if the court wanted to apply the same reasoning and scope of review to an ESA citizen suit claim, it could have done so in *Washington Toxics*. But it did not.

Contrary to BOEM's suggestion, the Ninth Circuit has not, "subsequent to its decision in *Kraayenbrink*, reaffirmed that record-review standards apply to ESA citizen-suit cases." BOEM MTS 6 (citations omitted). In *Karuk Tribe v. U.S. Forest Service*, the Ninth Circuit labelled the plaintiffs' ESA claim a "record review" case, but the scope of the administrative record was not at issue. 681 F.3d 1006, 1011, 1017 (9th Cir. 2012) (en banc). Additionally, the single sentence referencing the record falls under the section for "Standard of Review," where the court noted that it follows the APA's *standard* of "arbitrary [or] capricious" to determine an agency's compliance with the ESA. *Id.* at 1017. This cursory reference—which did not expressly address the *scope* of review for ESA citizen suit claims or discuss *Washington Toxics* and *Kraayenbrink* at all—cannot overrule long-standing Ninth Circuit precedent.

Indeed, since the Ninth Circuit's opinion in *Karuk Tribe*, numerous district court decisions have held that *Karuk Tribe* did not silently overrule *Washington Toxics* and *Kraayenbrink*, and thus the scope of review for ESA citizen suit claims is not limited to an administrative record. *See, e.g.*, *Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, 230 F. Supp. 3d 1106, 1124 (N.D. Cal. 2017) ("There is no

9

indication that the Ninth Circuit intended [the 'record review case'] statement to overrule the reasoning in *Washington Toxics* and *Kraayenbrink*; those cases are neither cited nor discussed in *Karuk Tribe*"); *Nw. Envt'l Advocates v. Nat'l Marine Fisheries Serv.*, No. 3:21-cv-01591-AB, 2025 WL 472332, at *7 (D. Or. Feb. 11, 2025) (recognizing that "*Karuk Tribe* has not overruled *Kraayenbrink*" and listing other district court decisions that "also concluded that the court's review in cases brought under the citizen suit provision of the ESA are not limited to the administrative record"); *Nw. Coal. for Alts. to Pesticides v. EPA*, 920 F. Supp. 2d 1168, 1174–76 (W.D. Wash. 2013) (stating that "*Karuk Tribe* cannot reasonably be read to implicitly or silently overrule the Ninth Circuit's reasoned holdings that, in circumstances where a plaintiff challenges a federal agency's failure to act under the citizen suit provision of the ESA, review is not confined to an administrative record" and denying the agency's motion to limit review to the record); *Friends of the Clearwater v. Higgins*, 523 F. Supp. 3d 1213, 1220 (D. Idaho 2021) ("This Court agrees with many other district courts that *Kraayerbrink* is still good law, and that it allows the Court to consider evidence outside the record in ESA cases.").

The same is true of the Ninth Circuit's decision in *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581 (9th Cir. 2014). While that case involved both a challenge to a biological opinion (a claim arising under the APA) and an agency's unlawful reliance on that biological opinion (a claim arising under the citizen-suit provision of the ESA), the primary issue on appeal was the legality of the biological opinion. *Id*. at 591, 604–38. The court's statements regarding the scope of review were about the evidence the court could consider in reviewing the biological opinion and specifically whether it was improper for the district court to have considered over forty additional expert declarations when it had already appointed four experts to aid in its understanding of the biological opinion under an exception to the record review rule. *Id.* at 603–04. The court did not mention

10

*Washington Toxics* or *Kraayenbrink* in this part of its opinion, let alone discuss its holding that ESA citizen suit claims are not limited by the APA's record-review rule, *see id.*, and cannot be read as overruling these cases, *see Nw. Envt'l Advocates v. U.S. Dep't of Com.*, 2017 U.S. Dist. LEXIS 185295, at *4 ( "[C]ircuit law is created 'where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration.'" (citation omitted)).

Moreover, the Ninth Circuit has since cited to and relied on *Kraayenbrink* since its decisions in *Karuk Tribe* and *San Luis*. In *National Family Farm Coalition v. EPA*, the petitioners brought an ESA citizen suit claim against the agency for failing to consult before registering a particular pesticide. 966 F.3d 893, 911 (9th Cir. 2020). The court cited to *Kraayenbrink*, acknowledging that it could consider materials outside the administrative record "for the limited purpose of reviewing the petitioners' ESA claim." *Id.* at 926 n.11 (citation modified). It then went on to consider a report the agency submitted to Congress that was not part of the administrative record when evaluating the merits of the petitioners' claim. *Id.* at 926, 926 n.11.

BOEM's long footnote string of Ninth Circuit cases "applying the APA to ESA citizen-suit claims," BOEM MTS 5 n.2, misses the mark. None of the cited cases held that the APA's limitations on the *scope* of review apply to ESA citizen-suit claims. Many of the cases did not even involve an ESA citizen suit claim at all. Instead, they involved challenges to biological opinions;[1] decisions regarding whether to list a species under the ESA or to remove it from the list of protected

---

[1] Including *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1019–20 (9th Cir. 2011); *Tucson Herpetological Soc'y v. Salazar*, 566 F.3d 870, 872 (9th Cir. 2009); and *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 838 (9th Cir. 2003).

11

species;[2] and other decisions the U.S. Fish and Wildlife Service and National Marine Fisheries Service made in their capacity as administrators of the ESA[3]—claims that arise under the APA, not the ESA, *Bennett v. Spear*, 520 U.S. at 174–79—and therefore are subject to the APA's scope of review limitations. For the cited cases that did include an ESA citizen-suit claim, the court only addressed the APA *standard* of review; the scope of review was not at issue so the court had no occasion to rule on it.[4] And in one case, *Stop H-3 Association v. Dole*, the Ninth

[2] Including *Nat'l Wildlife Fed'n v. U.S. Fish & Wildlife Serv.*, 524 F.3d 917, 922 (9th Cir. 2008); *Or. Nat. Res. Council v. Allen*, 476 F.3d 1031, 1032 (9th Cir. 2007); *Pac. Coast Fed. of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1084 (9th Cir. 2005); *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 860 (9th Cir. 2004); *Selkirk Conservation All. v. Forsgren*, 336 F.3d 944, 953 (9th Cir. 2003); *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1233 (9th Cir. 2001); and *Friends of Endangered Species v. Jantzen*, 760 F.2d 976, 979 (9th Cir. 1985).

[3] Including *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 934 (9th Cir. 2006) (challenging a biological opinion and critical habitat decision).

[4] *See Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 698 F.3d 1101, 1105–06, 1109 (9th Cir. 2012) (involving both a challenge to a biological opinion and ESA citizen suit claim but not addressing scope of review for the plaintiffs' citizen suit claim); *Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016–17 (9th Cir. 2012) (same); *Conservation Cong. v. Finley*, 774 F.3d 611, 617 (9th Cir. 2014) (not addressing scope of review of the plaintiffs' ESA citizen suit claim); *Cal. ex rel. Lockyer v. U.S. Dep't. of Agric.*, 575 F.3d 999, 1009, 1011 (9th Cir. 2009) (same); *W. Watersheds Proj. v. Matejko*, 468 F.3d 1099, 1102, 1107 (9th Cir. 2006) (same); *Defs. of Wildlife v. EPA*, 420 F.3d 946, 950, 958–59 (9th Cir. 2005) (same); *Inst. for Wildlife Prot. v. Norton*, 149 Fed. Appx. 627, 629 n.2 (9th Cir. 2005) (same); *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 383 F.3d 1082, 1083–84, 1086 (9th Cir. 2004) (same); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1205–06, 1217 (9th Cir. 2004) (same); *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 970, 973 (9th Cir. 2003) (same); *Envt'l Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1074–75, 1078 (9th Cir. 2001) (same); *Aluminum Co. of Am. v. Bonneville Power Admin.*, 175 F.3d 1156, 1160–61 (9th Cir. 1999) (scope of review of the plaintiffs' ESA citizen suit claim not at issue); *Nat. Res. Def. Council v. Houston*, 146 F.3d

12

Circuit considered expert testimony in evaluating whether an agency committed a substantive violation of the ESA. 740 F.2d 1442, 1458–60 (9th Cir. 1984). Finally, *Wong v. United States* challenged a sanction imposed for a violation of the Food Stamp Act and did not involve an ESA citizen-suit claim. 859 F.2d 129, 130 (9th Cir. 1988).

Nor is Judge Gutierrez's decision in *Center for Biological Diversity v. U.S. Army Corps of Engineers* on point. *Cf.* Sable MTS 5 (citation omitted). In the parts of the decision on which Sable relies, the court was merely reciting "the standard of review" for the plaintiffs' ESA claim. *Ctr. for Biological Diversity*, No. 14-1667 PSG (CWx), 2015 WL 12659937, at *3, *3 n.1 (C.D. Cal. June 30, 2015). While the court also stated that its review was "confined to the administrative record," it recognized that rule applies "where Congress has simply provided for review under the APA." *Id.* at *4 (citation modified). Moreover, the court made the statement in a case that involved not just an ESA citizen suit claim, but also claims arising under the APA and therefore are subject to the APA's record-review rule. *Id.* The scope of review of the ESA citizen suit-based claim was not at issue, so the court had no occasion to consider the issues.

BOEM's reliance on a 27-year-old decision from the Eastern District of Virigina is similarly unavailing as it is inconsistent with the law in the Ninth Circuit. *See* BOEM MTS 4 (citing *Am. Canoe Ass'n, Inc. v. EPA*, 46 F. Supp. 2d 473, 476–77 (E.D. Va. 1999)). Moreover, in contrast to the plaintiffs in that case, here Plaintiffs are not seeking discovery against BOEM, but to instead rely on five

1118, 1123, 1125 (9th Cir. 1998) (not addressing the scope of review of the plaintiff's ESA citizen suit claim); *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 516–17, 522 (9th Cir. 1998) (same); *Resources Ltd., Inc. v. Robertson*, 35 F.3d 1300, 1304 (9th Cir. 1994) (same); *Pyramid Lake Paiute Tribe v. U.S. Dep't of Navy*, 898 F.2d 1410, 1414–15 (9th Cir. 1990) (same); *Sierra Club v. Marsh*, 816 F.2d 1376, 1381, 1384 (9th Cir. 1987) (same) *Vill. of False Pass v. Clark*, 733 F.2d 605, 609–10 (9th Cir. 1984) (same).

publicly available documents, including statements from Sable itself regarding its plans for oil and gas production at the Santa Ynez Unit.

## II.   Plaintiffs Are Not Required to Show Exceptions to the Record-Review Rule, but the Evidence Satisfies an Exception

Because Plaintiffs' claim arises under OCSLA's citizen suit provision, the APA's restrictions on the scope of review do not apply. *See, e.g.*, *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1125 (holding that where a citizen suit provision provides a remedy for a claim, "the APA's record review provision does not apply"); *Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, 992 F. Supp. 2d 1095, 1106 (D. Or. 2014) (noting a claim arising under the ESA's citizen suit provision "is evaluated with any admissible evidence and is not limited to the administrative record"). As such, Plaintiffs need not argue the applicability of one of the four exceptions to the general rule limiting the scope of the review of claims arising under the APA. *Contra* BOEM MTS 7–9; Sable MTS 7–8. These "exceptions operate to identify and plug holes in the administrative record," *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005), and do not apply when the Court's review is not limited to that record in the first place, *White*, 2024 WL 24322, at *4 ("*Kraayenbrink* held *the APA does not apply* to whether the court can look to extra-record evidence, not that the APA's exceptions to the general rule of limited record review apply.").

For the same reason, Plaintiffs did not need to move to supplement the record with their exhibits prior to the commencement of merits briefing. *Contra* BOEM MTS 7–8. The parties' joint proposed schedule provided for briefing motions to strike concurrently with merits briefing precisely because Plaintiffs made clear their position that the Court can consider any admissible evidence in evaluating Plaintiffs' OCSLA citizen suit claim. *See* Joint 26(f) Report 2 n.1, 4 n.2, Dkt. No. 42; *see also* Scheduling Order, Dkt. No. 43. Nor did Plaintiffs have to submit this evidence with their notice of intent to sue BOEM. *Contra* Sable MTS

8. Such a requirement does not exist in OCSLA. *See* 43 U.S.C. § 1349(a)(2)(A). All the statute requires is that Plaintiffs "provide sufficient information so that [BOEM] could identify and attempt to abate the violation." *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1154 (9th Cir. 2024) (citation omitted) (interpreting notice requirement of ESA citizen suit provision). That is exactly what Plaintiffs did. Just as "the notice does not have 'to list every specific aspect or detail of every alleged violation,'" *id.* (citation omitted), a plaintiff need not attach every document on which they intend to rely in the eventual litigation

To the extent the Court believes the exceptions to the record review do apply, the five documents Plaintiffs submitted with their opening brief each satisfy one of the exceptions for when a court can consider evidence outside the administrative record. Specifically, the evidence is "necessary to determine whether [BOEM] has considered all relevant factors and has explained its decision." *Humane Soc'y of the United States v. Locke*, 626 F.3d 1040, 1058 (9th Cir. 2010) (citation modified).

Plaintiffs attached each of the documents to their opening merits brief precisely because the agency failed to consider the information within them in reaching its decision. Without these documents it will "be impossible for the Court to determine whether the agency took into consideration all relevant factors." *Conservation Council for Haw. v. Nat'l Marine Fisheries Serv.*, 97 F. Supp. 3d 1210, 1220 (D. Haw. 2015) (citation modified). In other words, "the Court cannot adequately discharge its duty to engage in a substantial inquiry if it is required to take the agency's word that it considered all relevant matters." *Id.* (citation modified); *see also Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1161–62 (9th Cir. 2006) (admitting extra-record evidence showing flaws in the agency's analysis), *abrogated on other grounds by Winter v. Nat'l Res. Def. Council*, 555 U.S. 7 (2008); *Nat'l Audubon Soc'y v. U.S. Forest Serv.*, 46 F.3d 1437, 1447–48

15

(9th Cir 1993) (admitting extra-record evidence where plaintiffs alleged the agency neglected to consider important environmental consequences).

Sable's argument that the documents should be stricken as irrelevant, Sable MTS 8–13, restates its mistaken belief that the extent of oil and gas production, air pollution, water pollution, and oil spills are not pertinent to the agency's evaluation of whether Sable must revise its development plan. Plaintiffs' summary judgment brief explains why each of these documents are relevant to BOEM's decision and why BOEM's failure to consider the information contained within these documents was unlawful. *See* Pls.' Mot. Summ. J. 11–24, Dkt. No. 51 [hereinafter Pls.' MSJ].

Exhibits 1 and 2 to the Declaration of Kristen Monsell (submitted with Plaintiffs' motion for summary judgment) show that Sable projects a radically higher level of total production from the Santa Ynez Unit than the existing development plan contemplates. Monsell Decl., Ex. 1 at 9, Dkt. No. 51-7 (Nov. 2024 Investor Pres.), Ex. 2 at 9, Dkt. No. 51-8 (Mar. 2025 Investor Pres.). This is a highly pertinent factor in evaluating whether Sable needs to update its development plan for the Unit. *See* 30 C.F.R. § 550.283(a)(3) (requiring plan revisions when oil companies propose to "significantly increase the volume of production"); *see also* Pls.' MSJ 12 (explaining relevance). These exhibits also show that Sable has identified more than a hundred opportunities to drill new wells, Monsell Decl., Ex. 1 at 9, Ex. 2 at 9, which is relevant to whether BOEM must require a DPP revision because any new well must be included in a DPP before the Bureau of Safety and Environmental Enforcement will approve drilling it, 30 C.F.R. § 250.410(b). Moreover, these exhibits show that Sable will workover existing wellbores, Monsell Decl., Ex. 1 at 7; Ex. 2 at 7, a process that may involve acid well stimulation treatments, Pls.' MSJ 20. This is relevant to BOEM's review because well stimulation could increase and change the composition of waste discharged from the Unit. Pls.' MSJ 20–21. Finally, these exhibits demonstrate that Sable's plans to restart production, drill new wells, and workover old ones will extend

16

production of the Santa Ynez Unit through at least 2034 or 2035. Monsell Decl., Ex. 1 at 13, Ex. 2 at 13. This is highly relevant to BOEM's evaluation of whether the DPP should be revised because the existing plan predicts that production would have ended in 2020. Pls.' MSJ 13.

That these documents contain projections and a boilerplate disclaimer to potential investors, Sable MTS 10–11, is of no moment. All the information BOEM requires oil companies to include in their development plans necessarily constitutes projections about future activities. *See* 43 U.S.C. § 1351(c); 30 C.F.R. §§ 550.241–.262. And OCSLA requires those plans to be updated when those projections prove to be underestimated. *See* 43 U.S.C. § 1351(h)(3); 30 C.F.R. § 550.283.

Exhibits 3 and 4 show air and water pollution from operations at the Santa Ynez Unit, respectively. Monsell Decl., Ex. 3, Dkt. No. 51-9 (2023 Air Pollution Inspection Rep.), Ex. 4, Dkt. No. 52-1 (EPA 2014 Pollutant Loading Rep.). Plaintiffs relied on these documents to show that the air and water pollution from operations at the Unit would be higher than that addressed in the Unit's existing development plan, and that BOEM's failure to consider these factors was improper. Pls.' MSJ 18, 20. Exhibit 3 is relevant to show that fugitive emissions, including a "major" leak, have occurred from the Unit even while operations were shut down, Monsell Decl., Ex. 3 at 6, despite the development plan's statement that such emissions would be minimized, Pls.' MSJ 18. This is relevant to BOEM's evaluation of whether reviving and prolonging production at the Unit will result in emissions that exceed the limits described in the DPP or in the Unit's air permits. 30 C.F.R. § 550.283(a)(4). As Plaintiffs explained, there is no evidence in the record demonstrating that BOEM considered any of the Unit's emissions, other than flaring rates. Pls.' MSJ 17–18.

Equally unavailing is Sable's argument that Clean Water Act violations shown in Exhibit 4 are irrelevant because they occurred under "a previous

17

operator." Sable MTS 11–12. To the contrary, OCSLA requires "a plan" to address the scope of activities to be conducted under it, including "the specific work to be performed," "the environmental safeguards to be implemented," and other relevant information—and those requirements do not change depending on who the operator is. *See* 43 U.S.C. § 1351(c). Sable's argument on this point is also inconsistent with its overarching position that it is simply stepping into Exxon's shoes in taking over operations at the Unit. *See* Sable Mem. Supp. Summ. J. 3, Dkt. No. 59-1 (describing Exxon's preparation of and revisions to the DPP). The amount of water pollution previously generated at the Unit, and any violations of the applicable Clean Water Act permit, are relevant to evaluating whether the DPP needs to be revised because BOEM relied on this permit to determine that a revision was unnecessary. Pls.' MSJ 19–20.

Exhibit 5 shows that in May 2025, BOEM's estimate of a worst-case oil spill from the Santa Ynez Unit was the same as predicted in a 2011 estimate that appears in the DPP. Monsell Decl., Ex. 5 at 7, Dkt. No. 51-11 (SYU 2025 EA); AR_Folder 02F_000023104. Plaintiffs' opening summary judgment brief argues that BOEM failed to consider that the worst-case discharge volume in Sable's oil spill response plan conflicts with the much larger spill volume predicted in the DPP. Pls.' MSJ 21–22. Exhibit 5 demonstrates that BOEM continues to rely on this number, which underscores the arbitrariness of its failure to reconcile this number with Sable's conflicting figure. Pls.' MSJ 21–22. For the same reason, the information in Exhibit 5 is not duplicative of evidence already in the record. *Contra* Sable MTS 12–13. Nor does it matter that BOEM published Exhibit 5 after the decision here. The purpose of including the document is to demonstrate that BOEM's review of the available information at the time was problematic. Courts have determined that they can consider evidence that post-dates an agency's decision when necessary to resolve an issue in the case. *See, e.g., Oceana, Inc. v. Evans*, 384 F. Supp. 2d 203, 217 n.17 (D.D.C. 2005) (admitting a scientist's letter

18

submitted four months after an agency's decision that critiqued its use of a model because the critique had direct bearing on whether the agency considered relevant factors); *Am. Bar Ass'n v. U.S. Dep't of Educ*., 370 F. Supp. 3d 1, 37–40 (D.D.C. 2019) (admitting extra-record evidence that postdated decision); *see also Bunker Hill Co. v. EPA*, 572 F.2d 1286, 1292 (9th Cir. 1977) (admitting extra-record documents that "were merely explanatory of the original record" and offered "[n]o new rationalization of the [agency's decision]").

### CONCLUSION

Because OCSLA provides the remedy for Plaintiffs' claims, the APA's scope of review limitation does not apply, and the Court can consider Plaintiffs' evidence. The Court should therefore deny BOEM and Sable's motions.

DATED: March 18, 2026
  s/ *Kristen Monsell*
Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Emily Jeffers (CA Bar No. 274222)
Email: ejeffers@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation certifies that this brief does not exceed 25 pages, in compliance with the page limit set by this Court's Standing Order, Section 6.c, dated April 15, 2025 (Dkt. No. 11).


DATED: March 18, 2026              s/ *Kristen Monsell*
                                   Kristen Monsell