LATHAM & WATKINS LLP
Michael G. Romey (Bar No. 137993)
Email: michael.romey@lw.com
355 South Grand Avenue, Suite 400
Los Angeles, CA 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

Janice M. Schneider (*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor (*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Intervenor-Defendant*
*Sable Offshore Corp.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DOUG BURGUM, et al.,<br><br>*Defendants*,<br><br>and<br><br>SABLE OFFSHORE CORP.,<br><br>*Intervenor-Defendant*. | CASE NO. 2:25-cv-02840-MWC-MAA<br><br>**REPLY IN SUPPORT OF SABLE OFFSHORE CORP.'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing<br>Date: May 15, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Michelle Williams Court<br>Courtroom: 6A |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.    ARGUMENT..........................................................................................1

    A.    Plaintiffs Did Not Provide Notice for Several Claims........................1

    B.    Plaintiffs Overstate When DPP Revision Is Required .......................3

    C.    Sable Has Not Proposed to Increase Production Rates........................5

    D.    DPP Revision Is Not Required Regarding Air Emissions ..................8

    E.    BOEM Adequately Considered Wastewater Discharges.....................9

    F.    DPP Revision Is Not Required Due to Oil Spill Risk.......................10

    G.    Plaintiffs' Requested Remedies Are Unwarranted and Improper .................................................................................................11

III.    CONCLUSION....................................................................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

i

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.*,
464 F.3d 1003 (9th Cir. 2006) .................................................................................6

*Cascadia Wildlands v. Scott Timber Co.*,
105 F.4th 1144 (9th Cir. 2024) ...............................................................................2

*Ctr. for Biological Diversity v. Haaland*,
No. 2:22-cv-06996-CAS-KSx, 2023 WL 3007920 (C.D. Cal. Apr.
17, 2023) .................................................................................................................4

*Ctr. for Biological Diversity v. Salazar*,
706 F.3d 1085 (9th Cir. 2013) .................................................................................9

*Grand Canyon Tr. v. Provencio*,
467 F. Supp. 3d 797 (D. Ariz. 2020), *aff'd*, 26 F.4th 815 (9th Cir.
2022) .....................................................................................................................12

*Grand Canyon Tr. v. U.S. Bureau of Reclamation*,
No. CV-07-8164-PHX-DGC, 2011 WL 1211602 (D. Ariz. Mar.
30, 2011) .................................................................................................................7

*N. Plains Res. Council, Inc. v. U.S. Bureau of Land Mgmt.*,
725 F. App'x 527 (9th Cir. 2018) ..........................................................................10

*Nw. Env't Advocs. v. U.S. Env't Prot. Agency*,
745 F. Supp. 3d 1150 (D. Or. 2024) .......................................................................2

*Oceana, Inc. v. Coggins*,
No. 19-CV-03809-LHK, 2021 WL 1788516 (N.D. Cal. May 5,
2021) .....................................................................................................................11

*Pac. Rivers Council v. U.S. Forest Serv.*,
942 F. Supp. 2d 1014 (E.D. Cal. 2013), *case dismissed as moot*,
724 F.3d 1146 (9th Cir. 2013) ...............................................................................12

*Trs. for Alaska v. U.S. Dep't of Interior*,
919 F.2d 119 (9th Cir. 1990) ...................................................................................3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

ii

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

*United States v. Approx. 64,695 lbs. of Shark Fins,*
    520 F.3d 976 (9th Cir. 2008) ........................................................................5

*Wasco Prod., Inc. v. Southwall Techs., Inc.,*
    435 F.3d 989 (9th Cir. 2006) ........................................................................6

*Waterkeeper Alliance v. U.S. Env't Prot. Agency,*
    140 F.4th 1193 (9th Cir. 2025) ....................................................................4

## STATUTES

43 U.S.C.
    § 1337(b)(2) .................................................................................................8
    § 1349(a) .....................................................................................................2
    § 1351(c) ......................................................................................................3
    § 1351(c)(5) .................................................................................................5
    § 1351(h) ......................................................................................................3
    § 1351(h)(1) .................................................................................................3
    § 1351(h)(3) ...................................................................................3, 4, 6, 11

## REGULATIONS

30 C.F.R.
    § 550.243(c)(1) .............................................................................................5
    § 550.243(h) .................................................................................................5
    § 550.249......................................................................................................9
    § 550.249(a)(2) .............................................................................................9
    § 550.270......................................................................................................3
    § 550.283......................................................................................................3
    § 550.283(a) ...........................................................................................7, 10
    § 550.283(a)(3) .............................................................................................5
    § 550.283(a)(4) .............................................................................................8
    § 550.283(b) .................................................................................................5
    § 550.284......................................................................................................3
    § 550.284(a) .................................................................................................4

## OTHER AUTHORITIES

70 Fed. Reg. 51,478 (Aug. 30, 2005)..................................................................7

91 Fed. Reg. 13,063 (Mar. 18, 2026)................................................................10

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

iii

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

## I.   INTRODUCTION

The Bureau of Ocean Energy Management's ("BOEM") April 2025 Decision that the Santa Ynez Unit's ("SYU") existing development and production plan ("DPP") for Platform Harmony did not require a revision was reasonable and should be upheld.  The Decision marked the culmination of the agency's "periodic review" process consistent with applicable statutory and regulatory requirements that afford BOEM substantial discretion.  There is no requirement under the Outer Continental Shelf Lands Act ("OCSLA") and its implementing regulations to revise an already-approved DPP when the operator is simply resuming operations within the scope of the existing DPP, as Sable has done here.  Plaintiffs' challenge to BOEM's periodic review is at its core an impermissible collateral attack on the SYU's DPP and must be rejected by this Court.  The extensive administrative record before this Court demonstrates that BOEM's Decision complied with OCSLA and its regulations and was not arbitrary and capricious.  Accordingly, the Court should grant Sable's Cross-Motion for Summary Judgment.

## II.   ARGUMENT

### A.   Plaintiffs Did Not Provide Notice for Several Claims

Plaintiffs (at Dkt. 63 at 20-22) did not (and cannot) show where their Notice Letter includes any claims that: (1) BOEM improperly relied on Santa Barbara County Air Pollution Control District ("APCD") permits and failed to consider APCD inspection reports, Dkt. 51 at 18; (2) BOEM failed to consider a 2014 EPA Pollutant Loading Report, Dkt. 51 at 20; (3) DPP revision is required because Sable's current Oil Spill Response Plan predicts a lower spill volume than a 2011 Worst Case Discharge scenario, Dkt. 51 at 21-22; (4) "low cathodic protection readings" identified by BOEM "triggered revision of the DPP," Dkt. 51 at 22; and (5) DPP revision is required due to permitting and bonding information, Dkt. 51 at 24 n.12.  *See* Dkt. 59-1 at 6.  Instead, Plaintiffs effectively concede that these narrower claims were not raised.  *See* Dkt. 63 at 20-21.  Here, Plaintiffs can only

bring these particular claims after giving BOEM "notice of the alleged violation," 43 U.S.C. § 1349(a). Plaintiffs expressly argue these new claims are violations of OCSLA but failed to raise those claims in the Notice Letter. Dkt. 51 at 18, 20-22, 24 n.12. And Plaintiffs (at Dkt. 63 at 20-21) cannot rely on the Motion to Dismiss Order to save these specific claims because they were not raised in Plaintiffs' First Amended Complaint ("FAC") and thus not addressed in that Order. Dkt. 59-1 at 5-6. That Plaintiffs provided some notice at the motion to dismiss stage is not the same as finding Plaintiffs provided sufficient notice prior to filing suit for every claim newly raised in their Motion for Summary Judgment. *See Nw. Env't Advocs. v. U.S. Env't Prot. Agency*, 745 F. Supp. 3d 1150, 1177 (D. Or. 2024).

*Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024), does not help Plaintiffs. There, the Ninth Circuit explained that determining whether notice was sufficient involves examining "both the notice itself and the behavior of its recipients to determine whether they understood or reasonably should have understood the alleged violations." *Id.* at 1154-55 (citation omitted). Here, BOEM responded to each of the "example" claims Plaintiffs did identify in their Notice Letter regarding "production volume and lifespan," "air pollution," "wells stimulation," and "risk of oil spills," *see* AR_Folder 01_35, 36-37; AR_Folder 01_77-78. Yet, for the five issues above not included in the Notice Letter, Plaintiffs now allege BOEM's Decision was deficient because the agency did not consider these specific issues, proffered for the first time in litigation. Plaintiffs' "post hoc" arguments do not satisfy OCSLA pre-suit mandatory notice requirements. Plaintiffs ignore the foundational requirement that proper notice "must 'at a minimum provide sufficient information so that [BOEM] could identify and attempt to abate the violation.'" *Cascadia Wildlands*, 105 F.4th at 1154 (citation omitted). In failing to include the specific claims Plaintiffs belatedly raise in litigation, their Notice Letter afforded BOEM no opportunity to respond and is insufficient regarding these claims. *See* Dkt. 59-1 at 5-7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

2

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

**B.**    **Plaintiffs Overstate When DPP Revision Is Required**

Plaintiffs abandon their initial claim that DPP revision is required every time a DPP purportedly falls out of compliance with *any* of "OCSLA's substantive requirements," *see* Dkt. 51 at 9-10, and do not dispute that "the DPP review requirements clearly do not include the provisions in a different subsection (43 U.S.C. § 1351(c))." *See* Dkt. 59-1 at 8.  Plaintiffs now concede that DPP revision is only triggered when BOEM determines that doing so is necessary "to meet the requirements" of 43 U.S.C. § 1351(h).  Dkt. 63 at 2-3.  But Plaintiffs still go too far by arguing that the conditions requiring modification of a new DPP are the same as revising an existing DPP.  *See* Dkt. 63 at 3.  43 U.S.C. § 1351(h)(1) relates to BOEM's initial decision on a newly submitted DPP to "approve, disapprove, or require modifications of the plan," while Paragraph (h)(3) is the provision that specifically applies after a DPP has already been approved, as is the case here.  *See* Dkt. 59-1 at 7-8.  Nothing in 43 U.S.C. § 1351(h)(3) requires BOEM to repeat the process outlined in Paragraph (h)(1) when conducting a periodic review.

Instead, Congress in Section 1351(h)(3) granted the agency the authority to determine the circumstances warranting revision of a DPP, and BOEM exercised that authority by promulgating 30 C.F.R. § 550.283, which sets forth the enumerated circumstances requiring revision (of which none have occurred here), and 30 C.F.R. § 550.284, which provides BOEM with discretion over the "frequency and extent" of periodic reviews.  In contrast, BOEM issued separate regulations governing the agency's review of new DPPs and the conditions that warrant their modification.  *See* 30 C.F.R. § 550.270; *Trs. for Alaska v. U.S. Dep't of Interior*, 919 F.2d 119, 122-23 (9th Cir. 1990) (recognizing regulatory distinction between "modification" of initial plan proposal and "revision" of existing, approved plan in analogous OCSLA context).  This statutory and regulatory framework—not Plaintiffs' proposed and constantly shifting standard for never-ending reviews—is what governs the periodic review process.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

3

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

Plaintiffs claim that "[h]ad Congress intended [the Paragraph (h)(1)] factors to only apply when BOEM approves a DPP in the first instance, it would not have required review and revision of previously approved plans." Dkt. 63 at 4. This is a non sequitur. Instead, the legislative history supports BOEM's discretion to determine when revision of a DPP is warranted based on changes in available information and conditions. *See* H.R. Report No. 94-1084 ("Periodic review of the plan in light of changes in available information and other onshore or offshore conditions is required, and if the review indicates that a plan should be revised in light of such changes, the Secretary shall require revision."); H.R. Report No. 95-590 (same). Moreover, 30 C.F.R. § 550.284(a) (BOEM's sole regulation regarding the "periodic review" process) provides that "[t]he frequency and extent of this [periodic] review will be based on the significance of any changes in available information and onshore or offshore conditions" and does not reference the factors requiring modification of a new DPP. Congress could have—but did not—adopt any other requirement. *See* 43 U.S.C. § 1351(h)(3). Accordingly, the statute gives BOEM considerable discretion. *See Ctr. for Biological Diversity v. Haaland*, No. 2:22-cv-06996-CAS-KSx, 2023 WL 3007920, at *8 (C.D. Cal. Apr. 17, 2023) ("OCSLA affords discretion as to the *manner* in which [BOEM] may conduct a review of DPPs, along with any ultimate conclusion that *revision* of a plan is necessary") (emphasis in original).[1] To require otherwise would commit BOEM to a never-ending and unwarranted review of all existing DPPs for existing infrastructure around the country.

---

[1] Plaintiffs attempt to distinguish the posture of this case and instead cite cases regarding agency discretion in different and inapplicable contexts. *See* Dkt. 63 at 6. But Plaintiffs cannot simply ignore the one case from this District interpreting 43 U.S.C. § 1351(h)(3), the statute giving BOEM discretion. *Waterkeeper Alliance v. U.S. Env't Prot. Agency*, 140 F.4th 1193 (9th Cir. 2025), also remains inapposite. Plaintiffs (at Dkt. 63 at 6-7) ignore the central distinction: DPP revision is required only when BOEM determines that it "should be," 43 U.S.C. § 1351(h)(3), whereas the guidelines in *Waterkeeper Alliance* must be updated under an objective, "if appropriate" standard, *see* 140 F.4th at 1215.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

4

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

**C.    Sable Has Not Proposed to Increase Production Rates**

Plaintiffs' argument (at Dkt. 63 at 8-12) that simply resuming already approved operations at the SYU amounts to a significant increase in production hinges on their misinterpretation of 30 C.F.R. § 550.283(a)(3), which unambiguously states that a lessee must revise its DPP when it *proposes* to "significantly increase the volume of production or storage capacity." 30 C.F.R. § 550.283(a)(3). The plain language of the regulation requires a DPP revision when a lessee proposes changes to its operations that would significantly increase the amount of oil or gas that it is capable of producing or storing beyond that which its DPP already allows. Sable has proposed no such changes here.[2]

Plaintiffs' reference to other OCSLA regulations undermines their own claim that 30 C.F.R. § 550.283(a)(3) is concerned with the *total volume* of production rather than *rate* of production. As Plaintiffs note, 30 C.F.R. § 550.243(h) requires blowout scenarios to include a "total volume" of liquid hydrocarbons. Dkt. 63 at 9. Plaintiffs' own cited authority suggests that if BOEM intended 30 C.F.R. § 550.283(a)(3) to consider "total volume" of production, the agency would have used that precise language. *See* Dkt. 63 at 9 (citing *United States v. Approx. 64,695 lbs. of Shark Fins*, 520 F.3d 976, 983 (9th Cir. 2008)). Critically, Plaintiffs offer no response to Sable's explanation (at Dkt. 59-1 at 10) that OCSLA requires DPPs to include "an expected ***rate*** of development and production" rather than a cumulative total volume of production. *See* 43 U.S.C. § 1351(c)(5)[3] (emphasis added); 30 C.F.R. § 550.243(c)(1) (requiring new DPPs to include "[e]stimates of the average and peak rates of production"). Plaintiffs offer no explanation for the absurd result of their interpretation: how can revision of a DPP be required if a unit exceeds a total production volume that was never

---

[2] Sable has also not proposed to conduct any activities not described in an approved DPP. Thus, no "supplementation" is required. 30 C.F.R. § 550.283(b).

[3] Plaintiffs also abandoned their claim that the DPP should be revised because it does not conform to this "substantive requirement" in 43 U.S.C. § 1351(c)(5).

required in the first place?  *See e.g.*, *Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) ("absurd results are to be avoided").

Plaintiffs' argument that a DPP revision is required because historical production rates exceeded those "predicted" in the DPP fails for multiple reasons. *See* Dkt. 63 at 10-12.  This new claim was never raised in Plaintiffs' Notice Letter or FAC and therefore cannot be sustained.  *See supra* Section II.A; *see also Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation omitted).  It is also factually incorrect.  Figure 1 cited by Plaintiffs to support this new argument merely shows that (as would be expected), overall SYU production rates vary year over year and were lower than predicted in several years and higher than predicted in several years, AR_Folder 02E_17612, which could be expected given that these are production estimates and not caps.  Plaintiffs offer no evidence that Sable has sought approval from BOEM to undertake modifications to Platform Harmony or the SYU that would allow Sable to exceed peak rates of production and actually acknowledge "that the Unit is well beyond its peak production years."  Dkt. 63 at 13.

Plaintiffs improperly cite Sable's investor materials to claim that drilling new wells and reworking old wells will result in production rates over 50 kBOD across the SYU.  Dkt. 63 at 11.  First, these are improper extra-record materials that were not before BOEM when it reached its Decision and should be excluded.  *See* Dkt. 66.  Second, these materials were not "available" to BOEM under any reasonable interpretation of 43 U.S.C. § 1351(h)(3), and Plaintiffs offer no rebuttal to the absurd consequence of their novel interpretation:  BOEM would have to continuously monitor every public filing from every offshore oil and gas operator in the country to determine whether information warranted DPP revision.  Dkt. 59-1 at 13.  This information could have been made "available" to BOEM via a notice of intent to sue under OCSLA.  It was not.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

6

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

Most importantly, even if Sable's investor materials were in the record, the fact remains that Sable has not actually "proposed" to drill new wells or significantly increase production at Platform Harmony, which remains well below the peak rates in the DPP.  *See* AR_Folder 02F_18195; Dkt. 59-1 at 12-13; Dkt. 51 at 15 (Plaintiffs conceding that "Sable has not yet 'proposed' this development"); *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, No. CV-07-8164-PHX-DGC, 2011 WL 1211602, at *5 (D. Ariz. Mar. 30, 2011) ("Court could not find the agencies to be acting arbitrarily and capriciously on the basis of a decision they have not yet made.").  The figures relied upon by Plaintiffs (at Dkt. 63 at 10-11) are forecasts only and do not take precedence over approved rates.  The DPP states that "[t]he permitting basis for the Santa Ynez Unit provides for flexibility to increase total unit oil production to 125 kBOD[.]"  AR_Folder 02F_18206.  There is no basis for BOEM to require a DPP revision.

Plaintiffs concede that the SYU "outliv[ing]" its operational estimates is not grounds for DPP revision under 30 C.F.R. § 550.283(a), *see* Dkt. 51 at 22, and pivot to arguing that "DPP revision is not limited to the triggers listed in 30 C.F.R. § 550.283(a)," citing language from the rulemaking that BOEM "cannot anticipate, with complete certainty, the factors that would require a revision, and therefore must retain a certain degree of flexibility," Dkt. 63 at 12 (citing 70 Fed. Reg. 51,478, 51,493 (Aug. 30, 2005)).  That BOEM retains discretion to require DPP revision as determined by the agency is not evidence that BOEM acted arbitrarily or capriciously in finding that none of the 30 C.F.R. § 550.283(a) triggers were met here and that DPP revision was not otherwise required.  *See* AR_Folder 01_79. Plaintiffs' position is further undermined by their own concession that "DPPs do not have an 'expiration date' and leases are extended for as long as they are producing."  Dkt. 63 at 12.  Indeed, OCSLA provides that a lease shall continue for "as long . . . as oil or gas is produced from the area in paying quantities, or drilling or well reworking operations as approved by the Secretary are conducted thereon."

43 U.S.C. § 1337(b)(2).  Plaintiffs' theory—that a DPP must be revised whenever a unit outlives its initial operational estimates—would frustrate OCLSA's legislative purpose and impose an expiration date on DPPs that Congress never intended.  Plaintiffs also offer no substantive objection to Sable's explanation of why the DPP's operational estimates for Platform Harmony would actually be extended to 2031, and, even under Plaintiffs' novel "expiration date" theory, their FAC is premature by at least six years.  *See* Dkt. 63 at 10 n.3, 12.

**D.    DPP Revision Is Not Required Regarding Air Emissions**

Contrary to Plaintiffs' assertion (at Dkt. 63 at 13) that "BOEM's review of air emissions considered only two things," BOEM assessed a range of information relating to Platform Harmony's air emissions to determine that DPP revision was not required.  Plaintiffs' mischaracterization (at Dkt. 63 at 13) of BOEM's arguments as "*post hoc* rationalizations" ignores BOEM's evaluation of monthly operation reports, prior environmental reviews, air quality standards, and approved permits during its periodic review.  *See* AR_Folder 01_77-78; AR_Folder 01_37; AR_Folder 06_28706-884.  In fact, BOEM's conclusion that operations cannot be reasonably expected to approach the emissions rates of the past aligns with its explanation in the Periodic Review Tracker that "[r]eported data . . . correspond[ed] with the expected peak in air emissions during 1992" and that flaring in 2015 was "less than half the volume flared during the peak period." AR_Folder 01_37.  Furthermore, Plaintiffs offer no explanation for how BOEM's reliance on Platform Harmony's 2023 APCD permit, which reflects the most detailed and current emissions limitation information available, was arbitrary and capricious.  *See* AR_Folder 01_78; 30 C.F.R. § 550.283(a)(4); Dkt. 59-1 at 16.

Plaintiffs also argue (at Dkt. 63 at 14) that BOEM failed to seek information about Sable's future development plans, but nothing in OCSLA requires BOEM to anticipate and respond to a lessee's future plans.  And contrary to Plaintiffs' claims, it does not "follow[] that the Unit's air pollution levels will change" based

on a phased return-to-production of the SYU. *Id.* Sable is merely resuming production at a unit where emissions were already well below the historic peak. *See* AR_Folder 01_37, 78. Nor have Plaintiffs demonstrated that actual production rates at Platform Harmony exceed authorized levels in the DPP. *Id.*

Plaintiffs concede that "[30 C.F.R. § 550.249] governs preparation of *new* DPPs," Dkt. 63 at 14 (emphasis added), but nevertheless Plaintiffs argue that the "DPP must show 'revised emissions rates' if a facility's actual emissions are 'greater than the amount specified in [a] previously approved DPP.'" *Id.* (quoting 30 C.F.R. § 550.249(a)(2)). Plaintiffs tellingly omit the first half of the provision: "*If your proposed production and development activities would result in an increase in the emissions* of a criteria air pollutant, VOC or TSP from your facility to an amount greater than the amount specified . . . [the operator] must show the revised emission rates[.]" 30 C.F.R. § 550.249(a)(2) (emphasis added). No such proposal has been made. Plaintiffs cannot invent a requirement by selectively quoting a regulation. *See Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1092 (9th Cir. 2013) (courts must "'not [] give force to one phrase in isolation'").

Even setting aside the fact that Section 550.249 does not apply here, Plaintiffs offer no evidence this exceedance has actually occurred. Nor can they, as Sable has not proposed to increase emissions and BOEM's review confirmed that peak air emissions have already occurred. *See* AR_Folder 01_78. Plaintiffs' purely speculative arguments do not provide a basis to require revision of the DPP *now*, when BOEM has determined that emissions remain below the levels previously approved and analyzed in the DPP. *See* AR_Folder 01_37, 78.

### E. BOEM Adequately Considered Wastewater Discharges

Plaintiffs (at Dkt. 63 at 15) mischaracterize the regulations governing BOEM's review of DPPs, erroneously suggesting the agency must require a DPP revision simply because a lessee restarts or resumes operations. Not so. Plaintiffs fail to grapple with the fact that the applicable regulations only require a lessee to

revise their DPP when they *propose* a list of specific, enumerated circumstances, none of which are present here.  30 C.F.R. § 550.283(a); *see also* Dkt. 59-1 at 18. Similarly, Plaintiffs' repeated, unsupported speculations (at Dkt. 63 at 15-16) about what *may* occur are insufficient to require a DPP revision.  *See* Dkt. 59-1 at 18-20; *see also N. Plains Res. Council, Inc. v. U.S. Bureau of Land Mgmt.*, 725 F. App'x 527, 529 (9th Cir. 2018) (concluding that as an activity had "not been proposed . . . [requiring additional] analysis would be both speculative and premature" and thus upholding agency's review) (internal quotation marks and citation omitted). Plaintiffs' reliance (at Dkt. 63 at 16) on BOEM's consideration of a different company's proposal to supplement its DPP is inapposite and irrelevant to BOEM's consideration of Sable's operations as that other lessee's proposed action does not involve the operation of the SYU or production of its reserves and has no bearing on Sable.  *See* 91 Fed. Reg. 13,063 (Mar. 18, 2026) (intent to prepare an environmental impact statement in response to a proposal from a different lessee to supplement its DPP to authorize new activities not currently authorized under its DPP).  Finally, the extra-record materials on which Plaintiffs (at Dkt. 63 at 17) rely are inapposite and inadmissible.  *See* Dkt. 59-1 at 18-19.  BOEM's Decision is adequately supported by the record and was reasonable.  *Id*. at 17-20.

### F.    DPP Revision Is Not Required Due to Oil Spill Risk

Plaintiffs offer no rebuttal to the fundamental fact that the oil spill analysis is not a trigger for DPP revision in 30 C.F.R. § 550.283(a).  Instead, Plaintiffs focus on an alleged discrepancy between a 2011 worst case discharge analysis from drilling a *new* well at Platform Heritage and the worst case discharge in Sable's Oil Spill Response Plan from *existing* facilities.  *See* Dkt. 59-1 at 21-22.  Rather than identify any flaw in Sable's explanation of why this is not actually a discrepancy, Plaintiffs retort that BOEM "offered no such explanation in its review of the DPP." Dkt. 63 at 18.  BOEM had no obligation to explain a purported "discrepancy" on an issue Plaintiffs never bothered to raise to the agency.  *See supra* Section II.A.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

10

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

Plaintiffs next argue that "[t]he fact that the Santa Ynez Unit is subject to inspections does not make the heightened risk of oil spills associated with aging infrastructure any less relevant to BOEM's review of the DPP." Dkt. 63 at 19. This makes no sense. Plaintiffs cannot credibly claim that a robust regulatory regime does nothing to mitigate such risks, particularly where the Bureau of Safety and Environmental Enforcement confirmed that "100% of the safety systems on Platform Harmony [were] successfully tested" and that "Sable Offshore Corporation has complied with its regulatory requirements." Dkt. 59-1 at 23; AR_Folder 04_26818. Even the cherry-picked incidents Plaintiffs cite, which are mostly unrelated to Platform Harmony, show the regulatory regime working as intended: issues were identified, reported, and addressed. *See* AR_Folder 01_247, 278, 283-96, 391, 394-95, 398.

### G. Plaintiffs' Requested Remedies Are Unwarranted and Improper

The issue before the Court is narrow: whether BOEM's April 2025 Decision that no DPP revision regarding Platform Harmony was necessary was arbitrary and capricious. *See generally* Dkts. 51, 59-1. Although *no* relief (declaratory or otherwise) is warranted, Dkt. 59-1,[4] at most Plaintiffs' argument (at Dkt. 63 at 22-24) about compelling compliance with OCSLA means any relief is limited to remanding the decision to BOEM to "review" the DPP based on "changes in available information and other onshore or offshore conditions." 43 U.S.C. § 1351(h)(3). DPP revision is required only if the *agency's* "review indicates that the plan should be revised[.]" *Id.* That decision is BOEM's alone to make. *See* Dkt. 59-1 at 24-25; *Oceana, Inc. v. Coggins*, No. 19-CV-03809-LHK, 2021 WL 1788516, at *4 (N.D. Cal. May 5, 2021) ("[T]he normal course is to remand the matter to the agency for further consideration rather than dictating the

---

[4] Plaintiffs erroneously suggest that Sable does not challenge Plaintiffs' request for declaratory relief or for an order that BOEM conduct a new DPP review. Dkt. 63 at 24. Sable unequivocally opposes these requests for relief for all the reasons stated in Sable's Motion. *See* Dkt. 59-1, Section IV.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

11

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

agency's future actions.").  Moreover, any relief based on Plaintiffs' challenge to BOEM's April 2025 Decision at issue could not affect the underlying DPP and all activities authorized under it, which were approved long-ago and are not before this Court.  *See Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1034 (E.D. Cal. 2013), *case dismissed as moot*, 724 F.3d 1146 (9th Cir. 2013) (refusing to vacate or enjoin forest plan amendment and projects issued pursuant to it, limiting analysis to the specific agency decision challenged by plaintiff).  And notwithstanding that Sable has not actually proposed *new* oil or gas drilling activity but is simply resuming previously approved operations, any relief halting Sable's activities that fall within the scope of its existing, approved DPP would be legal error and an abuse of discretion.  *See Grand Canyon Tr. v. Provencio*, 467 F. Supp. 3d 797, 805 (D. Ariz. 2020), *aff'd*, 26 F.4th 815 (9th Cir. 2022).

## III.    CONCLUSION

Sable respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment and grant Sable's Cross-Motion for Summary Judgment.

Dated:  April 10, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Janice M. Schneider*
Janice M. Schneider
(*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor
(*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

Michael G. Romey (Bar No. 137993)
Email: michael.romey@lw.com
355 South Grand Avenue, Suite 400
Los Angeles, CA 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

*Attorneys for Intervenor-Defendant Sable Offshore Corp.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

12

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF CROSS-MOT. FOR SUMM. J.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Intervenor-Defendant Sable Offshore Corp., certifies that this brief contains 12 pages, which complies with the page limit set by the Court's Standing Order, Section 6(c), Dkt. 11.

Dated:  April 10, 2026

By: /s/ *Janice M. Schneider*
Janice M. Schneider (*Pro Hac Vice*)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

13

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.