ADAM R. F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment & Natural Resources Division

SHANNON BOYLAN, Trial Attorney
Natural Resources Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
shannon.boylan@usdoj.gov
(202) 598-9584

THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION – LOS ANGELES

CENTER FOR BIOLOGICAL
DIVISION, *et al*.

       Plaintiffs,

   v.

DOUG BURGUM, Secretary of the
Interior, *et al*.

       Defendants.

  And

SABLE OFFSHORE CORP.

       Intervenor-Defendant.

Case No. 2:25-cv-02840-MWC-MAA

**FEDERAL DEFENDANTS'
MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS
PLAINTIFFS' SECOND
AMENDED COMPLAINT**

Hearing Date: October 2, 2026
Hearing Time: 1:30 p.m.
Judge: Hon. Michelle Williams Court
Location: Courtroom 6A

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs challenge the April 30, 2025 decision by the Bureau of Ocean Energy Management ("BOEM") not to require revision of operator Sable's Development and Production Plan ("DPP") for Platform Harmony under the Outer Continental Shelf Lands Act ("OCSLA"). On May 14, 2026, after the parties had submitted their Cross-Motions for Summary Judgment, the Court entered an order *sua sponte* dismissing Plaintiffs' First Amended Complaint for lack of standing and granting Plaintiffs leave to file an amended complaint. Dismissal Order, Dkt. No. 71.

Plaintiffs' Second Amended Complaint ("SAC"), filed on June 4, 2026, Dkt. No. 72, must also be dismissed for lack of standing. Article III limits federal court jurisdiction to resolving actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To invoke federal jurisdiction, Plaintiffs bear the burden of demonstrating (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged agency action; and (3) that it is likely to be redressed by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Second Amended Complaint attempts to cure the standing deficiencies previously identified by the Court by more narrowly alleging that BOEM failed to consider "changes in available information" during its periodic review under 43 U.S.C. § 1351(h)(3). By making this change, Plaintiffs attempt to invoke the relaxed redressability and immediacy standards applicable to procedural injury claims. But those relaxed standards do not apply here because Plaintiffs' claims are not procedural.  And even if they were, the claims would fail because the requirement that Plaintiffs must identify a concrete injury to their own interests is never relaxed, *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009), and Plaintiffs still bear the burden of demonstrating that any such injury has a sufficient relationship to the challenged agency action. Plaintiffs satisfy none of those requirements here. Because Plaintiffs' amendments do not cure the standing

1

deficiencies found in the Court's Dismissal Order, the Second Amended Complaint should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal for lack of subject matter jurisdiction where a plaintiff has failed to adequately allege Article III standing. *See, e.g., Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). When considering a Rule 12(b)(1) motion, the court does not assume that it has jurisdiction. *See Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981). Rather, "[o]nce challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (quoting *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)). When determining whether a court has subject matter jurisdiction, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Once the moving party has presented evidence demonstrating a lack of subject matter jurisdiction, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

## ARGUMENT

**A.    Plaintiffs Have Not Alleged a Concrete, Non-Speculative Injury in Fact.**

To establish injury in fact, Plaintiffs must allege an invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation omitted). "Conjectural, hypothetical, or speculative injuries, such as '[a]llegations of possible future injury,' do not suffice." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) (alteration in original) (citation omitted). Likewise, "a bare procedural violation,

2

divorced from any concrete harm," cannot satisfy Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

The Second Amended Complaint fails to satisfy these principles. Plaintiffs allege that BOEM's April 2025 determination—that Platform Harmony's existing DPP did not require revision—exposes their members to increased risks of oil spills, vessel strikes, air pollution, underwater noise, and other environmental harms that may diminish their recreational, aesthetic, cultural, and spiritual enjoyment of the Santa Barbara Channel and surrounding coastal areas. SAC ¶¶ 27–35. But these allegations do not describe an actual or non-speculative injury because they inappropriately rely on a tenuous chain of conjecture. *See Ctr. for Biological Diversity*, 946 F.3d at 560 (finding no standing where alleged injury "rests on a speculative chain of future possibilities"). Specifically, Plaintiffs' theory of injury rests on the premise that: (1) in a new review of Sable's DPP, BOEM will consider certain documents, (2) that based on consideration of those documents, BOEM will require revision of the DPP; (3) that any such revision will impose additional mitigation measures beyond those already governing Platform Harmony; (4) that those hypothetical measures will alter Sable's future operations in a meaningful way; (5) that those operational changes will reduce the likelihood of future environmental incidents, and (6) ultimately that Plaintiffs' members would thereby avoid injury to their recreational, aesthetic, cultural, or spiritual interests. At each step, Plaintiffs ask the Court to speculate about events that may never occur. Article III requires more. *See Ctr. for Biological Diversity*, 946 F.3d at 560 (finding there is no cognizable injury where the alleged injury "rests on a speculative chain of future possibilities" in which the agency would take hypothetical steps); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting standing based on a "highly attenuated chain of possibilities"); *Flynn v. Burlington N. Santa Fe Corp. (BNSF)*, 98 F. Supp. 2d 1186, 1191 (E.D. Wash. 2000) (finding similar series of hypotheticals insufficient to satisfy the injury in fact requirement).

While Plaintiffs identify members who use and enjoy the Santa Barbara Channel, they do not allege that BOEM's April 2025 decision itself has impaired, or imminently threatens to impair, those interests. Instead, they repeatedly allege only that BOEM's decision increases the *risk* of future environmental harms because additional environmental safeguards were not required. SAC ¶ 34 (alleging "increased risk of death and injury" to marine mammals, "increased noise pollution," and "increased risk of oil spills"); *id.* ¶ 35 (asserting that, if BOEM had required an updated DPP, "additional environmental safeguards *could* be required" (emphasis added)). Such allegations remain highly contingent upon the occurrence of future events that may never happen and they do not establish that Plaintiffs presently suffer—or imminently face—a concrete injury resulting from BOEM's April 2025 decision. At most, Plaintiffs allege that offshore oil and gas operations generally present environmental risks. They fail, however, to allege how BOEM's decision meaningfully or non-speculatively increases those risks.

This conclusion follows naturally from the nature of the challenged agency action. BOEM's April 2025 determination did not approve new drilling, authorize new production, issue a new lease, or otherwise expand offshore development. It simply concluded, after conducting the periodic review required by 43 U.S.C. § 1351(h)(3), that revision of the *existing* DPP was unnecessary. Plaintiffs therefore cannot establish injury merely by alleging that a different result from that review could have produced additional environmental safeguards. Such allegations remain "conjectural" and "hypothetical," not "actual or imminent," as Article III requires. *Lujan*, 504 U.S. at 560 (citation omitted).

Because Plaintiffs have not plausibly alleged that BOEM's challenged decision has caused—or imminently threatens to cause—a concrete injury to their members' recreational, aesthetic, cultural, or spiritual interests, they have failed to establish a concrete injury in fact.

**B.    Plaintiffs Cannot Demonstrate That Their Alleged Injuries Are Fairly Traceable to BOEM's Decision.**

Plaintiffs likewise fail to establish causation. Article III requires Plaintiffs to demonstrate that their alleged injuries are "fairly traceable" to the challenged agency action, rather than to the independent conduct of third parties. *Lujan*, 504 U.S. at 560 (citation modified).

They cannot make that showing here. The challenged agency action is BOEM's April 2025 determination, following the periodic review required by § 1351(h)(3), that Platform Harmony's existing DPP did not require revision. Plaintiffs do not challenge an agency action authorizing new offshore development, approving new drilling, or expanding production at the Santa Ynez Unit. Rather, they challenge BOEM's decision to leave an existing DPP unchanged after completing the review required by statute.

Plaintiffs nevertheless seek to attribute future oil spills, vessel strikes, emissions, underwater noise, and other environmental harms to BOEM's periodic review. But those alleged injuries would depend, if they exist at all, upon Sable's future operational decisions and the occurrence of future environmental events that are unpredictable and independent of BOEM's challenged determination. Because BOEM's April 2025 decision neither authorized new activities nor altered the legal status quo, Plaintiffs have not plausibly alleged that their asserted injuries are fairly traceable to the challenged agency action itself. Rather, this "series of hypotheticals requires a conclusion" that Plaintiffs' "injury is not directly nor fairly traceable to" BOEM's decision not to require revision of the DPP. *See BNSF*, 98 F. Supp. 2d at 1191–92.

**C.    Plaintiffs Cannot Demonstrate That Their Alleged Injuries Are Likely to Be Redressed by the Requested Relief.**

Finally, Plaintiffs have not established redressability. To satisfy Article III, Plaintiffs must demonstrate that it is likely—not merely speculative—that the relief they seek will remedy their alleged injuries. *Lujan*, 504 U.S. at 561.

Plaintiffs cannot make that showing. Their theory assumes that, if BOEM reconsidered its April 2025 determination, the agency would require revision of Platform Harmony's DPP and impose additional mitigation measures that would reduce the environmental harms Plaintiffs identify. But OCSLA leaves to the Secretary's judgment whether the results of a periodic review indicate that revision of a DPP is warranted. 43 U.S.C. § 1351(h)(3). Thus, even if BOEM were directed to undertake further review, Plaintiffs identify no non-speculative basis for concluding that the Secretary would require revision of the DPP or that any such revision would alleviate Plaintiffs' alleged injuries.

**D.    Plaintiffs' Attempt to Invoke the Relaxed Standards of Immediacy and Redressability Applicable to Procedural Claims Does Save the SAC from Dismissal for Lack of Standing.**

While Plaintiffs now recast their claims as "procedural" in an attempt to invoke the relaxed standing requirements applicable to such claims, *see* SAC ¶¶ 35–36, their new tack does not save the SAC from dismissal here. "The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 573 n.7.  But "the requirement of injury in fact is a hard floor of Article III jurisdiction" that is never relaxed, even in cases alleging violation of a procedural right.  *Earth Island Inst.*, 555 U.S. at 497.  Because Plaintiffs fail to allege a concrete injury, the SAC must be dismissed regardless of whether Plaintiffs allege procedural claims.

But Plaintiffs' arguments would fail regardless because their claims are not, in fact, procedural in nature. Instead, the Second Amended Complaint alleges only that BOEM reached the wrong substantive conclusion after completing the periodic review required by 43 U.S.C. § 1351(h)(3).

To establish standing based on a procedural injury, a plaintiff must show that "(1) the agency violated certain procedural rules; (2) these rules protect a plaintiff's concrete

interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006) (citation modified). Plaintiffs cannot allege a procedural injury because they identify no procedural requirement that BOEM failed to observe.

The Second Amended Complaint alleges that BOEM violated § 1351(h)(3) because it failed to consider "all available information" bearing on whether Platform Harmony's DPP should be revised. *See* SAC ¶¶ 15, 36–37. According to Plaintiffs, BOEM ignored "highly relevant" information regarding aging infrastructure, increased production, oil-spill risks, greenhouse gas emissions, and other developments since approval of the original DPP. But these allegations do not identify a procedural defect. Rather, they challenge the adequacy of BOEM's substantive evaluation of the information before it.

That distinction is reflected in the Administrative Procedure Acts's ("APA") standard of review. The APA at 5 U.S.C. § 706(2)(A) authorizes a court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" Under that familiar standard, an agency acts arbitrarily and capriciously where it "entirely failed to consider an important aspect of the problem" or otherwise failed to consider the relevant factors before it. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). By contrast, § 706(2)(D) permits a court to set aside agency action taken "without observance of procedure required by law[.]" The APA therefore distinguishes between challenges to the substance or reasonableness of an agency's decisionmaking and challenges alleging that the agency failed to comply with a legally required procedure.

Review under OCSLA's citizen-suit provision likewise proceeds under the APA's arbitrary-and-capricious standard. *See* Dismissal Order at 16 (citing *W. Watersheds Proj. v. Kraayenbrink*, 632 F.3d 472, 495–96 (9th Cir. 2011)). Plaintiffs' allegations fit squarely within that framework. Their theory is that BOEM failed to consider certain

information that Plaintiffs believe was relevant to the periodic review required by § 1351(h)(3). That is, at bottom, an argument that BOEM failed to consider the relevant factors—a paradigmatic arbitrary-and-capricious claim under § 706(2)(A). It is not a claim that BOEM failed to perform a procedural step required by law under § 706(2)(D).

Nor does § 1351(h)(3) impose the procedural obligation Plaintiffs attempt to read into it. The statute requires BOEM periodically to review approved development and production plans, and provides that such review "shall be based upon changes in available information and other onshore or offshore conditions affecting or impacted by development and production pursuant to such plan." 43 U.S.C. § 1351(h)(3). If that review indicates revision is warranted, the Secretary shall require revision of the plan. *Id*. As this Court has already recognized, however, OCSLA "afford[s] near-plenary discretion on the Secretary regarding when and how to revise a DPP" and whether the results of the review warrant revision of an existing DPP. Dismissal Order at 22.

Plaintiffs do not allege that BOEM failed to perform the review required by § 1351(h)(3). Nor do they identify any statutory or regulatory procedure that BOEM omitted. Instead, they argue that BOEM should have reached a different conclusion because it failed to give sufficient consideration to additional information Plaintiffs believe is relevant. But whether particular information was sufficiently relevant to the Secretary's review goes to the reasonableness of the Secretary's decision; it is not a procedural prerequisite whose alleged violation gives rise to procedural standing.

## CONCLUSION

Because Plaintiffs have failed to establish a concrete injury in fact, the violation of a procedural rule, causation, or redressability, the Second Amended Complaint should be dismissed for lack of Article III standing.

Dated: July 16, 2026                    Respectfully submitted,

                                        ADAM R. F. GUSTAFSON
                                        Principal Deputy Assistant Attorney General

8

Environment & Natural Resources Division

*/s/ Shannon Boylan*
SHANNON BOYLAN, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
E-mail: shannon.boylan@usdoj.gov
Tel: (202) 598-9584

*Attorneys for Federal Defendants*

9

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Federal Defendants, certifies that this brief does not exceed 25 pages, in compliance with the page limit set by this Court's Standing Order, Section 6.c, dated April 15, 2025 (Dkt. No. 11).

Dated: July 16, 2026                         */s/ Shannon Boylan*
                                              Shannon Boylan