LATHAM & WATKINS LLP
Janice M. Schneider (*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor (*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

Michael G. Romey (Bar No. 137993)
Email: michael.romey@lw.com
355 South Grand Avenue, Suite 400
Los Angeles, CA 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

Kevin A. Homrighausen (Bar No. 329034)
Email: kevin.homrighausen@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel.: (714) 540-1235
Fax: (714) 755-8290

*Attorneys for Intervenor-Defendant*
*Sable Offshore Corp.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DOUG BURGUM, et al., <br><br> *Defendants*, <br><br> and <br><br> SABLE OFFSHORE CORP., <br><br> *Intervenor-Defendant*. | CASE NO. 2:25-cv-02840-MWC-MAA <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SABLE OFFSHORE CORP.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR DECLARATORY AND OTHER RELIEF** <br><br> <u>Hearing</u> <br> Date: October 2, 2026 <br> Time: 1:30 p.m. <br> Judge: Hon. Michelle Williams Court <br> Courtroom: 6A |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ...................................................................................................2

III.   PROCEDURAL HISTORY ..................................................................................3

IV.    LEGAL STANDARD ...........................................................................................4

V.     ARGUMENT.........................................................................................................6

    A.     Plaintiffs Have Not Established Standing for Their Amended OCSLA Claim ....................................................................6

        1.     Plaintiffs Do Not Adequately Allege a Procedural Injury .................................................................................6

        2.     Plaintiffs Have Not Otherwise Adequately Alleged Environmental Injury ...........................................12

        3.     Plaintiffs Do Not Adequately Claim Causation and Redressability................................................13

            a.     Plaintiffs Fail to Establish Causation ..........................14

            b.     Plaintiffs Fail to Establish Redressability....................15

    B.     Plaintiffs Fail to Adequately Plead an APA Claim..........................20

        1.     The SAC Fails to State an Alternative Claim Under the APA...............................................................20

        2.     Plaintiffs' APA Claim Independently Fails on Standing ...........................................................21

    C.     Plaintiffs Failed to Provide Adequate 60-Day Notice ......................23

VI.    CONCLUSION.....................................................................................................25

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

i

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Artichoke Joe's v. Norton*,
  216 F. Supp. 2d 1084 (E.D. Cal. 2002), *aff'd sub nom. Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003) ...............................................................................................10

*ASARCO Inc. v. Kadish*,
  490 U.S. 605 (1989)..................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................6

*Ashley Creek Props., LLC v. Timchak*,
  649 F. Supp. 2d 1171 (D. Idaho 2009), *aff'd sub nom. Ashley Creek Props., L.L.C. v. Larson*, 403 F. App'x 273 (9th Cir. 2010) ...................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................13

*Bennett v. Spear*,
  520 U.S. 154 (1997)..............................................................................11, 22

*Biancur v. Hickey*,
  221 F. App'x 546 (9th Cir. 2007) ..............................................................21

*California v. Texas*,
  593 U.S. 659 (2021)..................................................................................16

*Camp v. Pitts*,
  411 U.S. 138 (1973)..................................................................................20

*Cascadia Wildlands v. Scott Timber Co.*,
  105 F.4th 1144 (9th Cir. 2024) ...................................................................5

*Cent. Valley Eden Env't Defs., LLC v. Castle & King Rock & Ready Mix*,
  No. 2:23-CV-02616-SCR, 2025 WL 1411344 (E.D. Cal. May 15, 2025) ...........................................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

ii

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)...................................................................................15

*Coastkeeper v. U.S. Int'l Boundary & Water Comm'n*,
    No. 3:24-CV-663-JES-VET, 2025 WL 509303 (S.D. Cal. Feb. 14,
    2025) .........................................................................................................5

*Ctr. for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019) ...............................................................12, 13

*Ctr. for Biological Diversity v. Haaland*,
    No. 2:22-CV-06996-CAS-KSx, 2023 WL 3007920 (C.D. Cal. Apr.
    17, 2023) ..................................................................................................23

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*,
    566 F.3d 794 (9th Cir. 2009) ...............................................................5, 23

*Dep't of Educ. v. Brown*,
    600 U.S. 551 (2023).....................................................................................5

*Diamond Alt. Energy, LLC v. EPA*,
    606 U.S. 100 (2025)...............................................................................14, 18

*Env't Integrity Project v. McCarthy*,
    319 F.R.D. 8 (D.D.C. 2016), *aff'd sub nom. Env't Integrity Project
    v. Pruitt*, 709 F. App'x 12 (D.C. Cir. 2017) ...........................................11

*Firebaugh Canal Co. v. United States*,
    203 F.3d 568 (9th Cir. 2000) ..................................................................17

*Flynn v. Burlington N. Santa Fe Corp. (BNSF)*,
    98 F. Supp. 2d 1186 (E.D. Wash. 2000)................................................12

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)...................................................................................13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)...................................................................................16

*G.B. by & through G.P. v. U.S. Env't Prot. Agency*,
    172 F.4th 1042 (9th Cir. 2026) ......................................................14, 15, 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
    465 F.3d 1123 (9th Cir. 2006) ...................................................................19, 23

*Gulf Restoration Network v. Salazar*,
    683 F.3d 158 (5th Cir. 2012) ...........................................................................10

*Hallstrom v. Tillamook Cnty.*,
    493 U.S. 20 (1989)............................................................................................23

*Hallstrom v. Tillamook Cnty.*,
    844 F.2d 598 (9th Cir. 1987), *aff'd*, 493 U.S. 20 (1989).....................................6

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020) .............................................................16, 19, 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..........................................................................................11

*Lighthiser v. Trump*,
    No. 25-6714, 2026 WL 1555982 (9th Cir. June 2, 2026) ..................................16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...........................................................................4, 5, 12, 14

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) ............................................................................19

*Nat. Res. Def. Council v. Jewell*,
    749 F.3d 776 (9th Cir. 2014) ............................................................................10

*Next League Exec. Bd. LLC v. Biden*,
    758 F. Supp. 3d 1029 (D. Ariz. 2024) ..............................................................16

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*,
    457 F.3d 941 (9th Cir. 2006) ...........................................................................7, 8

*ONRC Action v. Columbia Plywood, Inc.*,
    286 F.3d 1137 (9th Cir. 2002) ..........................................................................24

*Our Children's Earth Found. v. Regan*,
    No. 24-3735, 2025 WL 1444414 (9th Cir. May 20, 2025) ..........................24, 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iv

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

*Papasan v. Allain*,
    478 U.S. 265 (1986)..............................................................................................6

*Salmon Spawning & Recovery All. v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ......................................................................14, 15

*San Luis & Delta-Mendota Water Auth. v. Haugrud*,
    848 F.3d 1216 (9th Cir. 2017) ..............................................................................14

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
    747 F.3d 581 (9th Cir. 2014) ................................................................................20

*Sancho v. U.S. Dep't of Energy*,
    392 F. App'x 610 (9th Cir. 2010) .........................................................................12

*Sierra Forest Legacy v. U.S. Forest Serv.*,
    598 F. Supp. 2d 1058 (N.D. Cal. 2009).............................................................8, 9

*Skye Orthobiologics, LLC v. CTM Biomedical, LLC*,
    351 F.R.D. 155 (C.D. Cal. 2026)..........................................................................20

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................................5

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*, 275
    F.3d 1187 (9th Cir. 2001) ......................................................................................6

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..............................................................................................11

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    216 F.3d 764 (9th Cir. 2000) ................................................................................21

*Tailford v. Experian Info. Sols., Inc.*,
    26 F.4th 1092 (9th Cir. 2022) .................................................................................4

*Thomas v. Bible*,
    983 F.2d 152 (9th Cir. 1993) ................................................................................20

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)................................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

v

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

*Underhill v. Kijakazi*,
   No. 22-36033, 2023 WL 8469209 (9th Cir. Dec. 7, 2023) ................................17

*Unified Data Servs., LLC v. Fed. Trade Comm'n*,
   39 F.4th 1200 (9th Cir. 2022) ...........................................................................5

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
   No. CV081885GHKAGRX, 2016 WL 8919455 (C.D. Cal. Nov.
   16, 2016) ..........................................................................................................21

*W. Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ..............................................................................6

*Wash. Envtl. Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ..........................................................................13

*Wash. Trout v. McCain Foods, Inc.*,
   45 F.3d 1351 (9th Cir. 1995) ..............................................................................5

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ............................................................................4

*Wishtoyo Found. v. U.S. Fish & Wildlife Serv.*,
   No. CV 19-03322-CJC(ASX), 2019 WL 6998665 (C.D. Cal. Oct.
   16, 2019) ..........................................................................................................11

## STATUTES

5 U.S.C.
   § 704........................................................................................................................3
   § 706(2)................................................................................................................20

43 U.S.C.
   § 1349(a) .............................................................................................................23
   § 1349(a)(2)(A)....................................................................................................24
   § 1349(a)(6) ...................................................................................................20, 23
   § 1351(d)..............................................................................................................10
   § 1351(h)(3) ..................................................................................................*passim*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

vi

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

# RULES

Fed. R. Civ. P.
    12(b)(1) ................................................................................................4, 5, 23, 25
    12(b)(6) ...........................................................................................6, 20, 21, 23, 25

# REGULATIONS

30 C.F.R.

    § 250.410.............................................................................................................15
    § 550.267.............................................................................................................10
    § 550.268(a) ........................................................................................................10
    § 550.269.............................................................................................................10
    § 550.284..............................................................................................................9
    § 550.285(c) .....................................................................................................9, 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

vii

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

## I.        INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") is their latest effort to stop Sable Offshore Corp.'s ("Sable") lawful and ongoing oil and gas operations at the Santa Ynez Unit ("SYU") after the Bureau of Ocean Energy Management ("BOEM") completed a thorough review of the Platform Harmony Development Production Plan ("DPP") and determined that no revision was necessary.  In their third complaint, Plaintiffs seek to relitigate two dispositive issues that this Court has already fully addressed: whether Plaintiffs have standing to seek an order from the Court compelling BOEM to undertake another periodic review of the DPP and whether Plaintiffs' claim arises under the Outer Continental Shelf Lands Act ("OCSLA") or the Administrative Procedure Act ("APA").  The SAC should be dismissed in its entirety for lack of standing consistent with the Court's *sua sponte* order dismissing the Plaintiffs' First Amended Complaint, and other reasons.

First, Plaintiffs have not cured the standing deficiencies with respect to their OCSLA claims.  Plaintiffs fail to adequately claim that BOEM violated any procedural rules or that they were otherwise injured as part of BOEM's periodic review of the Platform Harmony DPP.  Their alleged future environmental harms are too speculative and attenuated to establish causation.  This Court has already correctly determined that OCSLA affords the Secretary near-plenary discretion regarding whether and when to revise a DPP and that because the Court cannot compel BOEM to come to a particular outcome, an order requiring BOEM to re-do a review it has already conducted does not provide the relief Plaintiffs seek.

Second, Plaintiffs' alternative request for relief under the APA fails.  The law of this case is settled: this is an OCSLA citizen-suit, not an APA action.  The Court has twice held that OCSLA controls, and no new allegations in the SAC change that.  Plaintiffs cannot relitigate this determination and therefore fail to state a claim under the APA.  And even if Plaintiffs could allege their claims under

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

the APA separate and apart from OCSLA (they cannot), Plaintiffs would still lack standing for the same reasons their OCSLA claim fails.

Third, new claims in Plaintiffs' SAC must also be dismissed because Plaintiffs failed to provide adequate 60-day notice under OCSLA's citizen suit provision. Plaintiffs' September 2024 Notice does not provide BOEM with the specificity required to support Plaintiffs' new theories in the SAC, including allegations that BOEM failed to consider specific information about Sable's plans and concerns about alleged public process deficiencies, or non-specific, umbrella allegations that BOEM failed to consider "all available information[.]"

## II.    BACKGROUND

Sable is the current owner and operator of the SYU, which consists of 16 oil and gas leases on the Pacific Outer Continental Shelf ("OCS") issued by the federal government. Dkt. 71 at 2; SAC ¶ 74. The SYU is comprised of three offshore production platforms—Platforms Hondo, Harmony, and Heritage, which were installed in 1976, 1989, and 1989, respectively. SAC ¶ 74. As a result of an onshore pipeline leak, production in the SYU was temporarily shut down in 2015. Dkt. 71 at 2; SAC ¶ 98. Since 2024, Sable has worked to resume production at the SYU, beginning with Platform Harmony in May 2025 and Platform Heritage in April 2026. Dkt. 71 at 2; *see also* SAC ¶ 5.

The SYU is subject to an approved DPP that has been revised, amended, and supplemented as needed over the years. *See, e.g.*, Dkt. 71 at 2-3; SAC ¶¶ 111-13. On April 30, 2025, BOEM issued a decision ("April 2025 Decision") memorializing its review of the DPP for Platform Harmony and its determination that the DPP need not be revised. Dkt. 39 at 2; *see also* Dkt. 71 at 9; SAC ¶¶ 115-16. The April 2025 Decision explained that from November 2024 until April 2025 BOEM reviewed the DPP for Platform Harmony and assessed various reports, information and studies before ultimately concluding that "[n]o additional

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

2

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

revisions to the DPP for Platform Harmony are needed at this time[.]"  Dkt. 71 at 9; SAC ¶¶ 116-17.

## III.    PROCEDURAL HISTORY

On September 26, 2024, Plaintiffs submitted a letter to Federal Defendants indicating their intent to sue pursuant to the 60-day notice requirement under OCSLA's citizen suit provision ("September 2024 Notice").  Dkt. 39 at 3; SAC ¶ 131.  On April 2, 2025, Plaintiffs filed their Original Complaint in this Court, claiming that BOEM failed to conduct a periodic review of the DPP in violation of OCSLA and/or the APA.  Dkt. 1.  After then, BOEM completed its periodic review and issued its April 2025 Decision determining that Sable was not required to revise the DPP for Platform Harmony.  Dkt. 71 at 9.

Plaintiffs filed their First Amended Complaint ("FAC") on May 12, 2025, substantially revising their claims to directly challenge BOEM's April 2025 Decision under the APA.  FAC, Dkt. 12 ¶¶ 1, 10-13, 107-11.  On May 13, 2025, Sable filed a motion to intervene as of right as a defendant in this case, which the Court granted.  Dkts. 14, 28.  On July 21, 2025, Sable moved to dismiss Plaintiffs' FAC, contending that "Plaintiffs cannot evade OCSLA's 60-day notice requirement by instead relying only on the APA to bring this suit" because "[t]he APA provides for judicial review of an agency action only when 'there is no other adequate remedy in a court'" and OCSLA's citizen suit provision constitutes an "adequate remedy," meaning the Court lacks jurisdiction to review Plaintiffs' claim under the APA as Plaintiffs proposed.  Dkt. 31-1 at 15-17 (quoting 5 U.S.C. § 704); Dkt. 39 at 7; *see also* Federal Defendants' Response to Intervenor's Motion to Dismiss, Dkt. 34 at 6-7 (agreeing with Sable that "Plaintiffs cannot rely on the APA as an escape hatch from OCSLA's notice requirement" and that Plaintiffs failed to provide adequate notice under OCSLA's citizen suit provision).  On September 10, 2025, this Court issued an Order denying Sable's motion to dismiss

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

3

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

but holding that OCSLA's citizen suit provision "controls" this matter. Dkt. 39 at 8 ("To adopt Plaintiffs' interpretation [that the APA separately provides a right to relief] would require the Court to act as if there were no remedy available under the citizen suit provision of OCSLA, or as if Plaintiffs were not seeking to correct 'violations' of OCSLA, contrary to the plain language of the FAC."). The parties filed cross-motions for summary judgment. Dkts. 51, 57, 59.

On May 14, 2026, this Court issued a *sua sponte* order dismissing Plaintiffs' FAC for lack of Article III standing. Dkt. 71. The Court determined that because there was "no dispute that BOEM conducted [the requisite] review in its April 2025 Decision," and "compelling compliance of OCSLA does not compel revision to the [DPP]," the Court dismissed Plaintiffs' FAC for lack of Article III standing, noting its "hesitan[cy] that amendment can cure Plaintiffs' standing deficiencies." *Id.* at 21-22, 24. Plaintiffs subsequently filed their SAC on June 4, 2026. Dkt. 72.

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." Because a lack of Article III standing deprives the Court of subject matter jurisdiction, a motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). It is "well-established that Article III '[s]tanding is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court.'" Dkt. 71 at 11 (quoting *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022)). The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements" that plaintiffs must prove. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, plaintiffs "must have suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical"; second, plaintiffs' "injury must be fairly traceable to the challenged action of the

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

4

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

defendant"; and "[t]hird, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (citation and quotations omitted). Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted). The parties invoking federal jurisdiction—here, Plaintiffs—bear the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan*, 504 U.S. at 561. "In the context of a motion to dismiss, '[a]ll of the facts alleged in the complaint are presumed true[.]'" *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1209 (9th Cir. 2022) (citation omitted). However, where "a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (citations omitted).

In addition, when a statute's citizen suit provisions call for it, "the giving of a 60-day notice is not simply a desideratum; it is a jurisdictional necessity." *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009). Therefore, failure to provide notice under an applicable statute's citizen suit provision is grounds for dismissal under Rule 12(b)(1). *See, e.g., Wash. Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354-55 (9th Cir. 1995) ("district court was correct in dismissing the action for lack of subject matter jurisdiction" where plaintiffs failed to provide sufficient notice under relevant citizen suit provisions).[1]

---

[1] In *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1153 (9th Cir. 2024), the Ninth Circuit held that the notice requirement under the Endangered Species Act ("ESA") citizen suit provision was not "jurisdictional" but a "mandatory claims-processing rule." There is no Ninth Circuit decision applying the Court's reasoning in *Cascadia Wildlands* to OCSLA's citizen suit provision and Courts have continued to apply the "jurisdictional" rule to non-ESA citizen suit provisions. *See, e.g., Cent. Valley Eden Env't Defs., LLC v. Castle & King Rock & Ready Mix*, No. 2:23-CV-02616-SCR, 2025 WL 1411344, at *3 (E.D. Cal. May 15, 2025); *Coastkeeper v. U.S. Int'l Boundary & Water Comm'n*, No. 3:24-CV-663-JES-VET, 2025 WL 509303, at *3-4 (S.D. Cal. Feb. 14, 2025). In any case,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

5

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted". To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts need not accept as true a plaintiff's (1) conclusory allegations, (2) legal conclusions, (3) allegations that contradict matters properly subject to judicial notice, or (4) allegations that contradict documents attached to or incorporated by reference into the complaint. *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

## V.   ARGUMENT

### A.   Plaintiffs Have Not Established Standing for Their Amended OCSLA Claim

This Court previously held that Plaintiffs lack Article III standing, *see* Dkt. 71 at 24, and Plaintiffs' amendments in the SAC do not overcome the deficiencies identified by the Court.

#### 1.   Plaintiffs Do Not Adequately Allege a Procedural Injury

Plaintiffs' SAC fails to cure a critical issue in Plaintiffs' prior complaint that this Court dismissed: Plaintiffs do not adequately plead a procedural injury in

---

even if failure to provide notice were not "jurisdictional," "compliance with the 60-day notice provision is a mandatory . . . condition precedent for suit," which "a district court may not disregard . . . at its discretion," and dismissal would still be required under Rule 12(b)(6). *See Hallstrom v. Tillamook Cnty.*, 844 F.2d 598, 601 (9th Cir. 1987), *aff'd*, 493 U.S. 20, 26, 31 (1989).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

6

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

connection with their OCSLA claim and requested relief. The Ninth Circuit has made clear that, in a "procedural injury" case, plaintiffs "must allege . . . that (1) the [agency] violated certain procedural rules; (2) these rules protect [a plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006) (citations omitted). Plaintiffs claim that BOEM failed to comply with "OCSLA's procedures" that require BOEM to "review previously approved development and production plans based on new information" and "require an updated plan when necessary to ensure adequate environmental safeguards are in place[.]" SAC ¶ 34. But Plaintiffs cannot satisfy the first requirement for a procedural injury—that BOEM "violated certain procedural rules"— because, as this Court found, "[t]here is no dispute that BOEM conducted such a review in its April 2025 Decision," and the determination of whether revision is "necessary" is "left up to the Secretary's read of the plan, and what he believes should happen next" under the Secretary's "near-plenary discretion[.]" *See* Dkt. 71 at 21-22. No new allegations in the SAC change that.

First, Plaintiffs' new allegations regarding an alleged "procedural" defect in BOEM's review of "changes in available information" under Section 1351(h)(3) are insufficient to allege procedural injury. Throughout the SAC, Plaintiffs contend that BOEM failed to consider "all available information" in conducting its periodic review under Section 1351(h)(3). *See, e.g.*, SAC ¶ 15 ("Plaintiffs request an order from the Court declaring that BOEM's decision not to require revision or supplementation of the DPP failed to consider all available information"); *id.* ¶ 36 ("By failing to evaluate all available information and not requiring revisions to the Santa Ynez Unit DPP, BOEM is depriving Plaintiffs' members of opportunities for public comment on those revisions"); *id.* ¶ 37 ("Relief in this case would ensure BOEM's authorization and management of offshore drilling activity at the Santa

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

7

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

Ynez Unit complies with relevant law, including OCSLA's requirements that BOEM evaluate all available information"). But nothing in OCSLA required BOEM to consider Plaintiffs' new standard of "all available information," which is found nowhere in the statute. Section 1351(h)(3) requires only that periodic reviews "shall be based upon changes in available information and other onshore or offshore conditions affecting or impacted by development and production pursuant to such plan." 43 U.S.C. § 1351(h)(3).

The SAC does not—and cannot—allege that BOEM's review was not "based on changes in available information" because BOEM's periodic review decision on its face describes the changes in available information upon which the review was based. *See, e.g.*, SAC ¶ 117 (acknowledging "that BOEM reviewed various documents, including several related to the 2015 Refugio oil spill; regulatory requirements for blowout prevention and financial responsibility for offshore facilities; the annual plan of operations for the Santa Ynez Unit from 2010 through 2015; the Clean Water Act permit for oil and gas platforms in federal waters off California; historical flaring and venting data for the Unit, a worst case oil spill discharge analysis from 2016; and others"); *see also Sierra Forest Legacy v. U.S. Forest Serv.*, 598 F. Supp. 2d 1058, 1065 (N.D. Cal. 2009) (finding no procedural violation and declining to reach the validity of a challenged agency action where plaintiffs failed to establish the action was required). Plaintiffs have not adequately alleged that BOEM "violated certain procedural rules" and thus there is no procedural injury. *See Nuclear Info. & Res. Serv.*, 457 F.3d at 949.

Second, there is no "procedure" that BOEM violated in its determination that no revision to the Platform Harmony DPP was required. Section 1351(h)(3) states that "[i]f the [Secretary's periodic] review indicates that the [DPP] should be revised to meet the requirements of this subsection, the Secretary shall require such revision." 43 U.S.C. § 1351(h)(3). And "OCSLA does not provide an internal

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

8

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

framework or guideline on how a DPP must be revised[.]" Dkt. 71 at 23. While Plaintiffs may substantively disagree with BOEM's determination that no revision was required, that does not establish a procedural injury in this specific context of a DPP periodic review. *See Sierra Forest Legacy*, 598 F. Supp. 2d at 1067 (finding that "even if the [agency] was wrong about its ["no effect"] determination, as Plaintiffs allege in the Complaint, the Court cannot conclude that the [agencies] violated any procedural rule" when they had "no obligation to consult"). As this Court explained, "OCSLA's own provisions afford near-plenary discretion on the Secretary regarding when and how to revise a DPP." Dkt. 71 at 22. While Plaintiffs allege BOEM theoretically *could* have required a supplemental or revised DPP to go through a public comment process pursuant to 30 C.F.R. § 550.285(c), BOEM in its "near-plenary discretion" determined that no such revision was necessary.

Plaintiffs also claim they were unable to participate in the periodic review process. *See* SAC ¶ 36 ("BOEM's failure to require an update of the DPP for the Santa Ynez Unit also deprives Plaintiffs' members of a right to participate in BOEM's decisionmaking and to information which they are legally entitled."). But neither Section 1351(h)(3) nor the corresponding regulation governing the DPP periodic review process afford Plaintiffs any opportunity to engage in that process. *See* 43 U.S.C. § 1351(h)(3); 30 C.F.R. § 550.284. Plaintiffs cannot escape the fact that they were not "legally entitled" to any participation in BOEM's periodic review of the DPP under Section 1351(h)(3) and BOEM's determination that no revision was necessary, as this Court correctly found. *See* Dkt. 71 at 15-16 (Plaintiffs failed to "demonstrate that OCSLA or its implementing regulations afford Plaintiffs a procedural right to the process of revising a DPP."). Because BOEM never determined that a revision was required—let alone that such a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

9

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

revision would result in "a significant change in the impacts previously identified and evaluated"—no public involvement was required. *See* 30 C.F.R. § 550.285(c).

None of the "opportunities for public comment" that Plaintiffs describe in the SAC (at ¶ 36) apply when, as here, BOEM has determined that no DPP revision is required.[2] Instead, those procedural requirements only apply in specific circumstances not present here. *See* SAC ¶¶ 59, 60 (citing 30 C.F.R. § 550.285(c), which covers supplemental DPPs and revised plans that are "likely to result in a significant change in the impacts previously identified and evaluated"); SAC ¶¶ 48-51 (citing provisions governing the *initial* approval of DPPs, including public review and comment requirements under 30 C.F.R. § 550.267, NEPA review under 30 C.F.R. § 550.269, and consistency review under the Coastal Zone Management Act, 43 U.S.C. § 1351(d), 30 C.F.R. § 550.268(a)). This Court correctly determined that Plaintiffs did not establish a procedural injury pursuant to Section 1351(g) because those circumstances do not apply here. *See* Dkt. 71 at 16-17. Most fundamentally, the Court properly held that "Section 1351(g) speaks to the 'approval' of a [DPP], and not revision to an old one, it logically cannot afford Plaintiffs a procedural right." *Id.* at 17 (citation omitted).

Plaintiffs cannot claim they were deprived of the ability to participate in a process that was never required in the first place. *See, e.g.*, *Artichoke Joe's v.*

---

[2] The procedural injury cases cited by Plaintiffs (at SAC ¶ 34) are also inapposite. *Natural Resources Defense Council v. Jewell* stands for the unremarkable proposition that "alleged violations of [the ESA's] Section 7(a)(2)'s consultation requirement constitute a procedural injury for standing purposes." *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 783 (9th Cir. 2014). But there is no similar requirement in 43 U.S.C. § 1351(h)(3). Similarly, in *Gulf Restoration Network v. Salazar*, 683 F.3d 158 (5th Cir. 2012), plaintiffs had standing to challenge approvals of *new exploration and development and production plans* under OCSLA and National Environmental Policy Act ("NEPA"). *Id.* at 164, 167. A periodic review of an existing DPP is fundamentally different, as this Court has recognized. *See* Dkt. 71 at 17 ("Section 1351(g) speaks to the 'approval' of a plan, and not revision to an old one.").

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

10

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

*Norton*, 216 F. Supp. 2d 1084, 1103 (E.D. Cal. 2002), *aff'd sub nom. Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003) (no procedural injury where assertion of procedural right of consultation was "premature"); *Wishtoyo Found. v. U.S. Fish & Wildlife Serv.*, No. CV 19-03322-CJC(ASX), 2019 WL 6998665, at *7 (C.D. Cal. Oct. 16, 2019) ("Plaintiffs cannot claim that they were injured by the alleged deficiencies in a process in which they had no right to participate."); *Env't Integrity Project v. McCarthy,* 319 F.R.D. 8, 15 (D.D.C. 2016), *aff'd sub nom. Env't Integrity Project v. Pruitt*, 709 F. App'x 12 (D.C. Cir. 2017) (no procedural injury where plaintiffs "have not cited any persuasive authority for the proposition that they are entitled to participate when the [agency] reviews its regulations to determine whether revisions may be necessary"); *Ashley Creek Props., LLC v. Timchak*, 649 F. Supp. 2d 1171, 1179 (D. Idaho 2009), *aff'd sub nom. Ashley Creek Props., L.L.C. v. Larson*, 403 F. App'x 273 (9th Cir. 2010) (no procedural injury where the agencies "may have the authority to" take action but no "firm requirement" or commitment was made).[3]

Because Plaintiffs have not properly alleged a procedural injury in connection with their OCSLA claim, they are not entitled to a more relaxed standard for causation and redressability. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("Only a 'person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.'") (citations omitted).

---

[3] Moreover, Plaintiffs have failed to show they are within the "zone of interest" OCSLA protects, which is "determined not by reference to the overall purpose of the Act in question [], but by reference to the particular provision of law upon which the plaintiff relies." *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (The zone of interest test "applies to all statutorily created causes of action . . . Congress is presumed to 'legislat[e] against the background of' the zone-of-interests limitation, 'which applies unless it is expressly negated.'") (citations omitted). *See infra* Section V.B.2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

11

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

## 2. Plaintiffs Have Not Otherwise Adequately Alleged Environmental Injury

In order to meet the injury-in-fact requirement for standing under Article III, Plaintiffs must allege "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citations omitted). "Speculative fear of future harm does not constitute an injury in fact sufficient to confer standing." *Sancho v. U.S. Dep't of Energy*, 392 F. App'x 610, 611 (9th Cir. 2010) (citation omitted). Here, Plaintiffs' alleged environmental harms are too speculative to confer Article III standing.[4]

Courts in this Circuit have refused to find standing when a plaintiff's alleged environmental harms are based on conjecture. *See, e.g., Flynn v. Burlington N. Santa Fe Corp. (BNSF)*, 98 F. Supp. 2d 1186, 1191 (E.D. Wash. 2000) (alleged environmental harm was "clearly conjecture and hypothetical" where "Plaintiffs' injury would occur only if the . . . Facility is constructed, a leak or malfunction occurs, contaminants reached the aquifer, the contaminants reached Spokane, and Plaintiffs' drinking water is contaminated"); *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) (finding no cognizable injury from operation of a provision that precludes agency from protecting wildlife that plaintiff's members enjoy observing in wildlife refuges because it "rest[ed] on a speculative chain of future possibilities").

Here, Plaintiffs' alleged injuries rest on a similarly "speculative chain of future possibilities." *See Bernhardt*, 946 F.3d at 560. Plaintiffs discuss at length the potential recreational, cultural and aesthetic harms that they allege *may* result

---

[4] Recognizing that this Court previously identified "a prospective, albeit, somewhat tenuous, environmental injury in the possibility that Platform Harmony may result in a future oil spill," *see* Dkt. 71 at 15, even if Plaintiff have sufficiently alleged an environmental injury, Plaintiffs still lack standing because they cannot demonstrate causation and redressability.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

12

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

from an oil spill. *See* SAC ¶¶ 6, 27-29, 32, 34, 78, 83-91. As a threshold matter, BOEM's decision not to require a revision to the DPP was not an "approval" of new oil and gas operations. *See* Dkt. 71 at 17. Plaintiffs' concerns regarding an alleged oil spill therefore stem not from the April 2025 Decision but from the continued operation of facilities that were approved decades ago. Plaintiffs' allegations rely on a highly speculative chain of events: additional information being considered by BOEM leading to a DPP revision that affects the potential risk of an oil spill that could potentially affect the particular coastal areas and waters that Plaintiffs' members regularly have an interest in. *See* SAC ¶ 34 (alleging that "increased risk of oil spills[ ] *could* have devastating environmental and economic consequences") (emphasis added). This speculative sequence of occurrences cannot "nudge[]" Plaintiffs' claim of injury "across the line from conceivable to plausible." *Bernhardt*, 946 F.3d at 560 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3.      Plaintiffs Do Not Adequately Claim Causation and Redressability

The standing deficiencies this Court recognized regarding causation and redressability have also not been remedied in Plaintiffs' SAC. Because Plaintiffs still "have not shown a violation to a procedural injury," *see supra* Section V.A.1, they cannot argue the Court should "relax[] the requirements of causation and redressability." Dkt. 71 at 18 (citation and quotations omitted). "The second and third standing elements—causation and redressability—are often flip sides of the same coin." Dkt. 71 at 18 (quoting *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024)). "To satisfy the causality element for Article III standing, Plaintiffs must show that the injury is causally linked or 'fairly traceable' to the Agencies' alleged misconduct, and not the result of misconduct of some third party not before the court." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131,

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

13

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

1141 (9th Cir. 2013) (quoting *Lujan*, 504 U.S. at 560-61).  To show redressability, Plaintiffs must "show a predictable chain of events that would likely result from judicial relief and redress the plaintiff's injury."  *G.B. by & through G.P. v. U.S. Env't Prot. Agency*, 172 F.4th 1042, 1063 (9th Cir. 2026) (quoting *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 121 (2025)).

### a.    Plaintiffs Fail to Establish Causation

Plaintiffs' alleged environmental harms are too speculative and attenuated to establish causation.  The "causal connection" alleged by Plaintiffs that "relies on an 'attenuated chain of conjecture' [is] insufficient to support standing."  *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (citation omitted); *see also San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1233 (9th Cir. 2017) ("set[ting] forth 'an attenuated chain of conjecture[]' that relies on a series of contingencies" is "too uncertain and too remote to constitute a reasonably probable threat of injury") (citations omitted); *G.B.*, 172 F.4th at 1058 (causal chain "cannot rest on 'speculative links' or be 'too attenuated'") (citations omitted).

Plaintiffs allege that the increased risk of an oil spill and other harms flow from "BOEM's management and authorization of offshore drilling activities at the Santa Ynez Unit without evaluating all new information relevant to the DPP" and its purportedly unreasonable determination that the DPP need not be revised.  *See* SAC ¶ 34.  But Plaintiffs' theory misconstrues the nature of Section 1351(h)(3), which requires that BOEM "from time to time, review each plan approved under this section . . . ."  43 U.S.C. § 1351(h)(3).  BOEM's decision that the Platform Harmony DPP did not need to be revised was not an "authorization of offshore drilling activities," *see* SAC ¶ 34, and this determination was not necessary for Sable to resume operations at the SYU which have long been authorized.  There is nothing about Sable's current operations that in any way alter the footprint or

14

environmental issues associated with this long-approved Project.  The DPP is also only one component of the regulatory framework governing Sable's operations.  Instead, contrary to Plaintiffs' implications, any "authorization of offshore drilling activities," *see id.*, such as applications for permits to drill, would require additional approval through distinct regulatory processes, independent of the periodic review at issue here.  *See* 30 C.F.R. § 250.410.  Plaintiffs' speculative causal chain confuses BOEM's regulatory requirements for periodic reviews and revision of a DPP, with the regulatory authority of the Bureau of Safety and Environmental Enforcement in its ongoing oversight of the SYU.  *See, e.g.*, 30 C.F.R. Part 254 (requiring operators to prepare and update oil spill response plans, calculate worst discharge scenarios, and verify capabilities of spill-response equipment).

Plaintiffs' theory of causation essentially rests on the following "attenuated chain of conjecture":  Plaintiffs face future environmental harm *because* a potential oil spill from Platform Harmony may occur *because* of Sable's ongoing previously approved operations *because* BOEM did not require Sable to revise its DPP *because* BOEM did not consider "all available information."  *See Salmon Spawning*, 545 F.3d at 1228.  These "speculative links" are "too attenuated" to support standing.  *See G.B.*, 172 F.4th at 1058; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 416, 418 (2013) (For future injury, a plaintiff must plead injuries that are "*certainly impending*"; "allegations of *possible* future injury," "fears of hypothetical future harm," or "subjective apprehension" are not sufficient) (emphasis in original).

### b.    Plaintiffs Fail to Establish Redressability

Plaintiffs also still fail to show redressability for the same reasons this Court articulated in its prior dismissal order.  *See* Dkt. 71 at 18-24.  To establish Article III standing, the Plaintiffs must show that their requested relief is both

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

15

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

"substantially likely to redress their injuries" and "within the district court's power to award." *Lighthiser v. Trump*, No. 25-6714, 2026 WL 1555982, at *1 (9th Cir. June 2, 2026) (quoting *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020)); *see also* Dkt. 71 at 18. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (citation omitted). "To establish redressability, a petitioner is required to demonstrate that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Next League Exec. Bd. LLC v. Biden*, 758 F. Supp. 3d 1029, 1038 (D. Ariz. 2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). Recognizing that OCSLA's citizen-suit provision governs any potential relief sought regarding Plaintiffs' challenge to BOEM's April 2025 Decision, this Court thoroughly analyzed what "compel[ling] compliance" means in the context of Section 1351(h)(3) and concluded that OCSLA "afford[s] near-plenary discretion on the Secretary regarding when and how to revise a DPP." Dkt. 71 at 21-22. Section 1351(h)(3) requires revision only if the Secretary's review "indicates that the plan should be revised to meet the requirements of this subsection," meaning "[r]evision is then left up to the Secretary's read of the plan, and what he believes should happen next." Dkt. 71 at 21-22 (quoting 43 U.S.C. § 1351(h)(3)). "Thus, compelling compliance of OCSLA does not compel revision to the Plan" in a way that is substantially likely to redress Plaintiffs' alleged injuries. *See* Dkt. 71 at 22.

The minor changes in the SAC regarding Plaintiffs' requested relief do not resolve the fundamental issues this Court already identified. First, Plaintiffs' requested declaration that BOEM's "decision that the DPP for Platform Harmony in the Santa Ynez Unit need not be revised is arbitrary, capricious, and not in accordance with OCSLA or its implementing regulations," SAC at 39, Request for

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

16

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

Relief 1, is essentially identical to their prior complaint, *see* Dkt. 12 at 29, Request for Relief 1.  Because Plaintiffs again "fail to demonstrate how declaratory relief would likely redress their aesthetic, physical, or spiritual injuries" or demonstrate "what BOEM would likely do in response to a declaration[,]" this requested remedy remains "deficient to show redress."  Dkt. 71 at 19.

Similarly, the second item of Plaintiffs' SAC request for relief is substantially the same as their previous request in the FAC.  Plaintiffs ask this Court to "[c]ompel BOEM to comply with OCSLA by ordering it . . . to require a revision to or supplementation of the DPP by a date certain[.]"  SAC at 39, Request for Relief 2 (First Claim); *cf.* Dkt. 12 at 29, Request for Relief 2 ("Order Defendants to require revision of the DPP for Platform Harmony in the Santa Ynez Unit").  This is precisely the type of injunctive relief—directing a specific outcome to an administrative agency process—that is not provided under OCSLA or other law.  *See Firebaugh Canal Co. v. United States*, 203 F.3d 568, 578 (9th Cir. 2000) (finding that the district court could "compel the Department of Interior to provide drainage service as mandated" by law but "cannot eliminate agency discretion as to how it satisfies the drainage requirement").  The Court already determined that "OCSLA's own provisions afford near-plenary discretion on the Secretary regarding when and how to revise a DPP" and that "compelling compliance of OCSLA does not compel revision to the Plan."  Dkt. 71 at 22.   The substantially same request for relief in Plaintiffs' SAC Request for Relief fails for the same reason.  *See Underhill v. Kijakazi*, No. 22-36033, 2023 WL 8469209, at *1 (9th Cir. Dec. 7, 2023) (holding that "absent a showing that the [law of the case] doctrine should not be applied, [the Court] will not revisit those arguments").

The only new "relief" Plaintiffs seek for their OCSLA Claim is for the Court to "[c]ompel BOEM to comply with OCSLA by ordering it to review changes in available information and other onshore or offshore conditions affecting or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

17

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

impacted by development and production at the Santa Ynez Unit[.]" SAC at 39, Request for Relief 2 (First Claim). This requested relief cannot support a finding of redressability for two reasons. First, ordering BOEM to "review changes in available information and other onshore or offshore conditions" with respect to the Platform Harmony DPP is no different than ordering BOEM to conduct another periodic review, given that is precisely what Section 1351(h)(3) requires. This Court has already acknowledged that "Congress has afforded discretion about *when* to [conduct a periodic review] to the Secretary of Interior" and that "[r]evision [of a DPP] is then left up to the Secretary's read of the plan, and what he believes should happen next." Dkt. 71 at 21-22 (emphasis in original). In this regard, "OCSLA's own provisions afford near-plenary discretion on the Secretary regarding when and how to revise a DPP." *Id.* at 22. Because it is BOEM—not the Court—that has the discretion to determine when a new periodic review must be undertaken and whether that review warrants revision of the DPP, Plaintiffs' request for a second review under Section 1351(h)(3) does not redress their purported harms. *See id*.

Second, Plaintiffs fail to allege "'a predictable chain of events' that would likely result from judicial relief and redress the plaintiff's injury" if the Court were to compel BOEM to consider additional information in a subsequent periodic review. *See Diamond Alt. Energy*, 606 U.S. at 121 (citation omitted). Plaintiffs claim that "[i]f BOEM examined the relevant information and required an updated DPP, additional environmental safeguards *could* be required" and therefore "the requested relief *could* result in an updated plan that provides for additional mitigation and oversight of offshore drilling activities at the Santa Ynez Unit that would better protect the ocean and imperiled wildlife and help alleviate the recreational, aesthetic, spiritual, and other injuries of Plaintiffs' members." SAC ¶ 35 (emphasis added). To show that their requested relief would actually redress

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

18

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

their alleged future environmental injuries, one must assume the following: (1) BOEM would consider changes in available information that it had not considered before; (2) on the basis of that new information, BOEM would determine that a revised DPP is necessary; (3) BOEM would require Sable to revise its DPP; (4) Sable's revised DPP would include additional unspecified "environmental safeguards" beyond those already in place; and (5) these hypothetical environmental safeguards would meaningfully decrease the alleged risk of an oil spill occurring at the SYU. This is highly speculative, and insufficient to support standing. *See G.B.*, 172 F.4th at 1058.

Most fundamentally, "courts cannot presume . . . to predict" how others might exercise their discretion. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 614-15 (1989). As this Court recognized, "[i]t is well-established that '[t]here is no redressability, and thus no standing, where (as is the case here) any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or to predict.'" Dkt. 71 at 22 (quoting *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006)); *see also Mayfield v. United States*, 599 F.3d 964, 972 (9th Cir. 2010) (finding no standing where "redressability depends upon the actions of the government in response to the court's judgment," which "in light of the unique circumstances of this case, are not within the control of the court"). Given BOEM's "near-plenary discretion . . . regarding when and how to revise a DPP," Dkt. 71 at 22, Plaintiffs' suggestion that another review of available information would address their concerns is mere speculation. *See Juliana*, 947 F.3d at 1170. Therefore, Plaintiffs' OCSLA claim must be dismissed for lack of standing.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

19

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

**B.    Plaintiffs Fail to Adequately Plead an APA Claim**

1.    The SAC Fails to State an Alternative Claim Under the APA

Plaintiffs' alternative APA claim should be dismissed under Rule 12(b)(6) because it fails to state a cognizable claim for relief independent of OCSLA.  This Court has squarely held that "OCSLA controls" this matter and that "the Court cannot overlook the plain language of OCSLA that 'all suits challenging actions or decisions allegedly in violation of, or seeking enforcement of, the provisions of [OCSLA], or any regulation promulgated under this subchapter . . ., shall be undertaken in accordance with the procedures described in' OCSLA's citizen suit provision.  43 U.S.C. § 1349(a)(6).'"  Dkt. 39 at 8; *see also* Dkt. 71 at 16 ("As the Court has previously held, this is an OCSLA citizen-suit—not an APA action."). While the standard and scope of review of agency actions are governed by the APA (including in citizen-suit cases), *see* 5 U.S.C. § 706(2), "the plain terms of OCSLA must control this litigation."  *See* Dkt. 71 at 16.[5]  Plaintiffs again attempt to reassert their APA claim by trying to plead in the alternative, *see* SAC ¶¶ 148-51, but the SAC provides no valid basis to do so.

The law of the case is settled: the APA does not provide an independent basis for Plaintiffs to assert their OCSLA claims.  *See* Dkt. 39 at 8; Dkt. 71 at 16. "[T]he Ninth Circuit has established that 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'"  *Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, 351 F.R.D. 155, 159 (C.D. Cal. 2026) (quoting *Thomas v. Bible*, 983 F.2d 152, 154

_____

[5] While Plaintiffs' claims unambiguously fall under OCSLA's citizen suit provision and the Court should grant this Motion, if the case moves to the merits, Sable maintains that the standard and scope of review is governed by APA Section 706. *See, e.g.*, 5 U.S.C. § 706(2) ("In making" a determination that an agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "the court shall review the whole record or those parts of it cited by a party[.]"); Dkt. 71 at 16; *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

20

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

(9th Cir. 1993)).  Departure from the law of the case is warranted only if "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Biancur v. Hickey*, 221 F. App'x 546, 547 (9th Cir. 2007) (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 787 (9th Cir. 2000)); *see also United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV081885GHKAGRX, 2016 WL 8919455, at *4 (C.D. Cal. Nov. 16, 2016) (same).  None of these exceptions apply here.  And Plaintiffs do not fundamentally allege a new claim under the APA.  Plaintiffs' APA claim rests on the determination that BOEM's decision was "not in accordance with OCSLA and its implementing regulations."  SAC at 39, Request for Relief.  Plaintiffs' central APA allegation is that "BOEM's decision ignored" certain "new information," which is the same nearly verbatim allegation that serves as the foundation of Plaintiffs' OCSLA claim.  *Compare* SAC ¶ 146, *with id.* ¶ 151.  Plaintiffs' attempt to plead an APA claim in the alternative is therefore fundamentally the same claim as their OCSLA claim.  Plaintiffs' attempt to relitigate the applicability of OCSLA's citizen suit provision should thus be rejected, and their APA Claim should be dismissed under Rule 12(b)(6).

2. Plaintiffs' APA Claim Independently Fails on Standing

Even if Plaintiffs asserted a brand new APA claim separate and apart from their OCSLA claim (they did not), Plaintiffs' APA claim would independently fail to satisfy the three requirements for Article III standing—injury in fact, causation, and redressability—for the same reasons their OCSLA claim fails.  *See supra* Section V.A.  Plaintiffs seek declaratory relief that "BOEM's April 29, 2025, decision that the DPP for Platform Harmony in the Santa Ynez Unit need not be revised is arbitrary and capricious and *not in accordance with OCSLA and its*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

21

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

*implementing regulations*, in violation of the APA." SAC at 39, Request for Relief (emphasis added). Plaintiffs' APA claim, which is explicitly tied to its claim that BOEM's decision was "not in accordance with OCSLA" and that BOEM failed to consider the same purportedly "new information," fails for a lack of standing for the same reasons provided above.

*First*, Plaintiffs cannot establish a procedural violation of OCSLA sufficient to support an APA claim based on OCSLA. *See supra* Section V.A.1. Moreover, because Plaintiffs attempt to bring an APA claim alleging that an agency violated a separate substantive statute—here, OCSLA—Plaintiffs must show they are within the "zone of interest" of OCSLA. *See Bennett*, 520 U.S. at 175-76 (zone of interest is "determined not by reference to the overall purpose of the Act in question [] but by reference to the particular provision of law upon which the plaintiff relies"). The SAC does not alter the nature of Plaintiffs' alternative APA claim—indeed, Plaintiffs rely exclusively on purported violations of 43 U.S.C. § 1351(h)(3) and its implementing regulations. SAC ¶¶ 137-47. Because this Court has already correctly recognized that no provision in "OCSLA or its implementing regulations afford Plaintiffs a procedural right to the process of revising a DPP," Plaintiffs cannot show their claim falls within the "zone of interests" sought to be protected by the DPP review and revision procedures outlined in 43 U.S.C. § 1351(h)(3). *See* Dkt. 71 at 16. Additionally, Plaintiffs' alleged environmental injuries are too speculative to establish an injury in fact. *See supra* Section V.A.2.

*Second*, Plaintiffs cannot establish causation because they cannot show that any alleged injuries are "fairly traceable" to BOEM's April 2025 Decision. *See supra* Section V.A.3.a. Plaintiffs' APA claim challenges BOEM's decision as "not in accordance with OCSLA," but the alleged environmental harms depend entirely on Sable's independent operations under an existing regulatory framework outside

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

22

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

the DPP review process—not on whether BOEM determined a DPP revision was necessary. *See supra* Section V.A.3.a.

*Third*, and most critically, Plaintiffs cannot establish redressability. BOEM retains substantial discretion in conducting any subsequent review and in determining whether a DPP revision is warranted. *Ctr. for Biological Diversity v. Haaland*, No. 2:22-CV-06996-CAS-KSx, 2023 WL 3007920, at *8 (C.D. Cal. Apr. 17, 2023) ("OCSLA affords discretion as to the *manner* in which defendants may conduct a review of DPPs, along with any ultimate conclusion that *revision* of a plan is necessary[.]") (emphases in original). As this Court recognized, OCSLA "afford[s] near-plenary discretion on the Secretary regarding when and how to revise a DPP." Dkt. 71 at 22. Vacating BOEM's decision would simply return the matter to an agency that retains "broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* (quoting *Glanton*, 465 F.3d at 1125). Again, there is no basis to conclude that BOEM would reach a different result on remand, and any such suggestion to the contrary is "merely speculative." *See Juliana*, 947 F.3d at 1170.

Plaintiffs' alternatively pled APA claim therefore fails because the law of the case forecloses it, and even if the APA applied, Plaintiffs cannot satisfy the requirements for Article III standing. The SAC's APA claim should be dismissed.

### C.    Plaintiffs Failed to Provide Adequate 60-Day Notice

Plaintiffs' failure to provide an adequate 60-day notice under OCSLA's citizen suit provision is grounds for dismissal under both Rule 12(b)(1) and Rule 12(b)(6) of new claims contained in the SAC. *See Marina Point Dev. Co.*, 566 F.3d at 800 (deficient notices under Clean Water Act citizen suit provision "were not sufficient to support district court jurisdiction"); *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 32-33 (1989); *supra* Section IV. As a prerequisite of commencing an OCSLA citizen suit action, a plaintiff must initiate the suit "in accordance with the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

23

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

procedures described" in 43 U.S.C. § 1349(a), *id*. § 1349(a)(6), including the requirement to provide "notice of the alleged violation, in writing under oath, to the Secretary and any other appropriate Federal official" at least 60 days before filing suit, *id*. § 1349(a)(2)(A).  A 60-day notice must be "reasonably specific" and outline the "alleged violations to the government" in a way that "allows the agency to take corrective action before a suit is filed" and "avoid[s] burdening the federal courts with unnecessary citizen suits."  *See Our Children's Earth Found. v. Regan*, No. 24-3735, 2025 WL 1444414, at *1 (9th Cir. May 20, 2025).

This Court has already determined that "the sixty-day notice provision of OCSLA applies to Plaintiffs' suit."  Dkt. 39 at 9.  While this Court held in its prior motion to dismiss ruling that Plaintiffs' "notice [was] sufficient for purposes of the suit under the FAC," *id.* at 10, Plaintiffs' SAC impermissibly goes beyond the claims in their September 2024 Notice, *see* Dkt. 35-1, Ex. 1.  For example, Plaintiffs' SAC alleges that BOEM failed to consider specific "information about Sable's actual plans for restarting and operating the Unit" including Sable's "estimates of reserves, a map of over 100 new drilling opportunities, and a post-restart production timeline."  SAC ¶ 118.  Plaintiffs' SAC also alleges that BOEM failed to conduct a public process, depriving Plaintiffs' members of their right to participate in BOEM's decision making and to submit comments.  *Id*. ¶¶ 13, 36.  Neither of these claims were raised in Plaintiffs' September 2024 Notice—indeed, Plaintiffs' Notice neither provides Sable's alleged estimates of reserves nor includes the alleged map of additional drilling opportunities.  *See* Dkt. 35-1, Ex. 1.  Furthermore, Plaintiffs also failed to provide adequate notice of their repeated suggestion in the SAC that BOEM "failed to consider all available information" in conducting its periodic review under Section 1351(h)(3).  *See, e.g.*, SAC ¶¶ 15, 36-37.  *See Our Children's Earth Found.*, 2025 WL 1444414, at *1 (60-day notice must be "reasonably specific").  BOEM "was not required to speculate as to all

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

24

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

possible attacks on its [review] that might be added to a citizen suit when the 60–day notice so specifically identified only [other] attack[s]." *ONRC Action v. Columbia Plywood, Inc.*, 286 F.3d 1137, 1143 (9th Cir. 2002). Because Plaintiffs' "description of [BOEM's] alleged failure was ambiguous[,]" the September 2024 Notice "did not reasonably specify what . . . information was flawed or erroneous" and "failed to inform [BOEM] about their purported violation under [OCSLA][.]" *See Our Children's Earth Found.*, 2025 WL 1444414, at *1-*2.[6]

## VI.    CONCLUSION

Sable respectfully requests that the Court dismiss the SAC for lack of subject matter jurisdiction under Rule 12(b)(1) and/or for failure to state a claim under Rule 12(b)(6).

Dated:  July 16, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Janice M. Schneider*
Janice M. Schneider
(*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor
(*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

Michael G. Romey (Bar No. 137993)
Email: michael.romey@lw.com
355 South Grand Avenue, Suite 400
Los Angeles, CA 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

---

[6] Sable also reiterates and reserves its positions previously presented in Sable's prior motion to dismiss and cross-motion for summary judgment regarding Plaintiffs' failure to provide adequate 60-day notice under OCSLA, Dkt. 31-1 at 2, 17-20; Dkt. 59-1 at 5-7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

25

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

Kevin A. Homrighausen
(Bar No. 329034)
Email: kevin.homrighausen@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel.: (714) 540-1235
Fax: (714) 755-8290

*Attorneys for Intervenor-Defendant
Sable Offshore Corp.*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

26

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Intervenor-Defendant Sable Offshore Corp., certifies that this brief contains 25 pages, which complies with the page limit set by this Court's Standing Order, Section 6.c, dated April 15, 2025 (Dkt. 11).


Dated:  July 16, 2026                          By: */s/ Janice M. Schneider*
                                                    Janice M. Schneider
                                                    (*Pro Hac Vice*)

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

27

CASE NO. 2:25-cv-02840-MWC-MAA
SABLE'S MEMO. IN SUPPORT OF
MOT. TO DISMISS SECOND AM. COMPL.