Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Emily Jeffers (CA Bar No. 274222)
Email: ejeffers@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DOUG BURGUM, et al., <br><br> *Defendants*, <br><br> and <br><br> SABLE OFFSHORE CORP., <br><br> *Intervenor-Defendant*. | Case No. 2:25-cv-02840-MWC-MAA <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** <br><br> Hearing Date: August 21, 2026 <br> Hearing Time: 1:30 p.m. <br> Judge: Hon. Michelle Williams Court <br> Location: Courtroom 6A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................. 1

LEGAL BACKGROUND ...................................................................................... 2

    I.     The Outer Continental Shelf Lands Act ..................................................... 2

          A.     DPPs are designed to promote safety and minimize environmental harm from offshore production .......................... 3

          B.     BOEM must periodically review DPPs based on changes in available information. ............................................................ 4

    II.    The Administrative Procedure Act ............................................................ 4

STANDARD AND SCOPE OF REVIEW ................................................................. 6

ARGUMENT ...................................................................................................... 7

    I.     Plaintiffs have properly pleaded alternative claims challenging BOEM's arbitrary decisionmaking. .................................. 7

          A.     OCSLA does not limit the court's equitable discretion to order relief that will achieve compliance with the law. .............. 7

          B.     If OCSLA does not provide a remedy to redress BOEM's arbitrary decisionmaking, the APA controls. ........................... 9

          C.     The law of the case doctrine does not apply to the SAC. ......... 10

    II.    Plaintiffs have adequately pleaded standing. ........................................ 11

          A.     Plaintiffs have sufficiently pleaded injury-in-fact. ................... 11

               1.     Plaintiffs' members' concrete interests are threatened by BOEM's actions. ................................... 12

        2.      BOEM's failure to comply with OCSLA's procedural requirements injures Plaintiffs' concrete interests. ...........................................................16

   B.    Plaintiffs' injuries are traceable to BOEM's action and are redressable by a favorable decision. ...................................20

        1.      Causation is satisfied because BOEM's actions threaten Plaintiffs' interests. ...........................................21

        2.      Plaintiffs' injuries are redressable by an order compelling compliance with OCSLA procedures or, alternatively, by vacatur and remand. .......................23

III.    Sable's notice arguments lack merit. ...................................................24

CONCLUSION.......................................................................................................25

CERTIFICATE OF COMPLIANCE.......................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)................................................................5, 9

*Artichoke Joe's v. Norton*,
216 F. Supp. 2d 1084 (E.D. Cal. 2002) ................................................19

*Ashley Creek Props., LLC v. Timchak*,
649 F. Supp. 2d 1171 (D. Idaho 2009) ................................................19

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) ................................................10

*Bennett v. Spear*,
520 U.S. 154 (1997)................................................................5, 7

*Biancur v. Hickey*,
221 F. App'x 546 (9th Cir. 2007) ................................................10

*California ex rel. Imperial Cnty. Air Pollution Control Dist. v.
U.S. Dep't of the Interior*,
767 F.3d 781 (9th Cir. 2014) ................................................11

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) ................................................18

*Cascadia Wildlands v. Scott Timber Co.*,
105 F.4th 1144 (9th Cir. 2024) ................................................25

*Catholic League for Religious & C.R. v. Cnty. of San Francisco*,
624 F.3d 1043 (9th Cir. 2010) (en banc) ................................................18

*Citizens for Better Forestry v. USDA*,
341 F.3d 961 (9th Cir. 2003) ................................................21

*City of Sausalito v. O'Neill*,
386 F.3d 1186 (9th Cir. 2004) ................................................18

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)................................................................................15

*Cottonwood Env't Law Ctr. v. U. S. Forest Serv.*,
    789 F.3d 1075 (9th Cir. 2015) ...................................................... 11, 13

*Ctr. for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019)...................................................................14

*Ctr. for Biological Diversity v. Mattis*,
    868 F.3d 803 (9th Cir. 2017) ....................................................... 11, 17

*Defs. of Wildlife v. EPA*,
    420 F.3d 946 (9th Cir. 2005)...................................................................20

*Ecological Rights Found. v. Pac. Lumber Co.*,
    230 F.3d 1141 (9th Cir. 2000) ..................................................... 13, 14

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
    36 F.4th 850 (9th Cir. 2022) .....................................................................2

*Env't Integrity Proj. v. McCarthy*,
    319 F.R.D. 8 (D.D.C. 2016).....................................................................19

*Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*,
    23 F.4th 1195 (9th Cir. 2022) ...................................................................7

*Flynn v. Burlington N. Santa Fe Corp.*,
    98 F.Supp.2d 1186 (E.D. Wash 2000)....................................................16

*Friends of the Earth v. Laidlaw Env't Servs.*,
    528 U.S. 167 (2000)...................................................................... 11, 12

*Friends of the Santa Clara River v. U.S. Army Corps of Eng'rs*,
    887 F.3d 906 (9th Cir. 2018) ..................................................................20

*G.B. v. EPA*,
    172 F.4th 1042 (9th Cir. 2026) ...............................................................22

*Gescheidt v. Haaland*,
    No. 21-cv-04734-HSG, 2023 WL 2250268 (N.D. Cal. Feb. 27, 2023) ..............19

iv

*Gilligan v. Jamco Dev. Corp.*, a
   108 F.3d 246 (9th Cir. 1997) ......................................................................7

*Gulf Restoration Network, Inc. v. Salazar*,
   683 F.3d 158 (5th Cir. 2012) ....................................................................17

*Healthy Gulf v. U.S. Dep't of Interior*,
   152 F.4th 180 (D.C. Cir. 2025).....................................................................2

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944).....................................................................................8

*Hunt v. Wash. State Apple Adver. Comm'n*,
   432 U.S. 333 (1977)...................................................................................11

*Idaho Conservation League v. Mumma*,
   956 F.2d 1508 (9th Cir. 1992) ..................................................................21

*Inland Empire Waterkeeper v. Corona Clay Co.*,
   17 F.4th 826 (9th Cir. 2021) .....................................................................23

*Jones v. L.A. Cent. Plaza Ltd. Liab. Co.*,
   74 F.4th 1053 (9th Cir. 2023) .....................................................................6

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) ..................................................................24

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).....................................................................................6

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990).....................................................................................7

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)............................................................................ 11, 20

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ....................................................................6

*Nat. Res. Def. Council v. EPA*,
   38 F.4th 34 (9th Cir. 2022) ................................................................. 21, 22

*Nat. Res. Def. Council v. Jewell*,
 749 F.3d 776 (9th Cir. 2014) (en banc) ...................................................17

*Nat'l Family Farm Coal. v. EPA*,
 966 F.3d 893 (9th Cir. 2020) ......................................... 12, 15, 17, 19

*Ocean Advocs. v. U.S. Army Corps of Eng'rs*,
 402 F.3d 846 (9th Cir. 2004) ...................................................13

*Or. Nat. Res. Council v. U.S. Forest Serv.*,
 834 F.2d 842 (9th Cir. 1987) ......................................... 5, 9, 25

*Porter v. Warner Holding Co.*,
 328 U.S. 395 (1946).....................................................8

*Pub. Citizen v. U.S. Dep't of Transp.*,
 316 F.3d 1002 (9th Cir. 2003) ......................................... 23, 24

*Ritidian v. U.S. Dep't of the Airforce*,
 128 F.4th 1089 (9th Cir. 2025) ...................................................17

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004) .....................................................6

*Salmon Spawning & Recovery All. v. Gutierrez*,
 545 F.3d 1220 (9th Cir. 2008) ......................................... 16, 20, 22, 23

*Sancho v. U.S. Dep't of Energy*,
 392 Fed. Appx. 610 (9th Cir. 2010).....................................................16

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
 486 F.3d 638 (9th Cir. 2007) .....................................................5, 10

*Semones v. Am. Behav. Rsch. Inst., LLC*,
 No. 2:25-cv-12291-MWC-ADS,
 2026 WL 1849871 (C.D. Cal. May 18, 2026).....................................................6

*Shaughnessy v. Pedreiro*,
 349 U.S. 48 (1955).....................................................5

*Sierra Forest Legacy v. U.S. Forest Serv.*,
 598 F. Supp. 2d 1058 (N.D. Cal. 2009).....................................................19

*Skye Orthobiologics, Ltd. Liab. Co. v. CTM Biomedical, Ltd. Liab. Co.*,
  351 F.R.D. 155 (C.D. Cal. 2026)................................................................10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................11

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  No. CV 08-1885-GHK (AGRx),
  2016 WL 8919455 (C.D. Cal. Nov. 16, 2016) ........................................10

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982)........................................................................ 8, 9, 24

*WildEarth Guardians v. USDA*,
  795 F.3d 1148 (9th Cir. 2015) ................................................................17

*Wishtoyo Found. v. U.S. Fish & Wildlife Serv.*,
  No. 19-cv-03322-CJC(ASx),
  2019 WL 6998665 (C.D. Cal. Oct. 16, 2019)...........................................19

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) .....................................................................6

**Statutes**

5 U.S.C. § 551(13) ......................................................................................5

5 U.S.C. § 701(a) .........................................................................................5

5 U.S.C. § 704............................................................................... 5, 7, 9

5 U.S.C. § 706(2) ......................................................................................10

5 U.S.C. § 706(2)(A)..............................................................................5, 24

5 U.S.C. § 706(2)(D)..............................................................................5, 24

43 U.S.C. §§ 1331–1365b, 1801–1866......................................................3

43 U.S.C. § 1332(3) .................................................................................2, 4

43 U.S.C. § 1349(a)(1).............................................................................2, 23

43 U.S.C. § 1349(a)(6)............................................................................................9

43 U.S.C. § 1351(a) .................................................................................................3

43 U.S.C. § 1351(c) .................................................................................................3

43 U.S.C. § 1351(g) ...............................................................................................17

43 U.S.C. § 1351(h)(1)............................................................................... 3, 13, 20, 23

43 U.S.C. § 1351(h)(1)(D) .......................................................................................3

43 U.S.C. § 1351(h)(3)................................................................................... 4, 17, 19

43 U.S.C. § 1351(i) ..................................................................................................4

43 U.S.C. § 1802(2)(B) ............................................................................................4

**Rules**

Fed. R. Civ. P. 8(a)(3)..............................................................................................7

Fed. R. Civ. P. 8(d) .................................................................................................7

**Regulations**

30 C.F.R. § 550.200(b) ............................................................................................4

30 C.F.R. § 550.202 .................................................................................................3

30 C.F.R. § 550.241 .................................................................................................3

30 C.F.R. § 550.262 .................................................................................................3

30 C.F.R. § 550.266 .................................................................................................4

30 C.F.R. § 550.267(b) ............................................................................................4

30 C.F.R. § 550.267(c).............................................................................................3

30 C.F.R. § 550.273 .................................................................................................4

30 C.F.R. § 550.281(a)............................................................................................3

30 C.F.R. § 550.281(b) .......................................................................................3, 22

30 C.F.R. § 550.283 ...............................................................................................4

30 C.F.R. § 550.284 ...............................................................................................4

30 C.F.R. § 550.285(b) ..........................................................................................4

30 C.F.R. § 550.285(c)............................................................................................4

**Legislative History**

H.R. Rep. No. 95-590 .........................................................................................3, 9

**INTRODUCTION**

In this case, Plaintiffs Center for Biological Diversity and Wishtoyo Foundation challenge the failure of Defendants the Secretary of the U.S. Department of the Interior, Bureau of Ocean Energy Management, and the Pacific Regional Director of the Bureau of Ocean Energy Management (collectively, BOEM) to comply with the Outer Continental Shelf Lands Act (OSCLA) and/or the Administrative Procedure Act (APA) in managing offshore oil and gas activities at the Santa Ynez Unit (SYU or the Unit) in the Santa Barbara Channel. Specifically, BOEM failed to consider significant changes in available information and unlawfully determined that Sable Offshore Corp. (Sable) need not revise or supplement the Unit's development and production plan (DPP).

BOEM's decision means that Sable is operating under a DPP developed decades ago that does not reflect current science or the true scope of the Unit's activities, emissions, or discharges. Without requiring an updated plan, and the public process such an update may entail, the agency and the public will be left in the dark about the full scope of harms from extended production at the SYU, and the need for further environmental safeguards will go unaddressed. This threatens the marine environment and coastal communities with more oil spills and toxic pollution and is arbitrary and capricious.

Plaintiffs' Second Amended Complaint (SAC) (Dkt. No. 72) properly pleads alternative claims challenging Defendants' arbitrary decisionmaking. Plaintiffs' OCSLA claim does not limit the Court's equitable discretion to order relief that will achieve compliance with the law, including vacatur and remand. However, should this Court find OCSLA does not give it equitable authority to order relief that remedies arbitrary and capricious decisionmaking, then OCSLA does not provide an adequate remedy at law and Plaintiffs' alternative APA claim supplies the cause of action and remedy.

Plaintiffs' SAC also thoroughly demonstrates standing to challenge BOEM's failure to examine relevant information and require revision of the DPP. OCSLA mandates that BOEM review previously approved DPPs based on new information and require an updated plan when necessary to ensure adequate environmental safeguards are in place. These requirements are designed to protect Plaintiffs' members' interests in a healthy ocean and coastal environment, thriving wildlife populations, and clean air. BOEM's failure to evaluate relevant information and decision not to require revision is a procedural injury. Plaintiffs' members' interests have been, are being, and will continue to be injured by BOEM's decision. These injuries are directly traceable to BOEM's unsound decisionmaking process and would be redressable by an order compelling BOEM to comply with OCSLA's procedures, which could result in an updated plan that would better protect Plaintiffs' interests.

Finally, there was no need for Plaintiffs to file another notice of intent to sue prior to amending their complaint. The Court should deny Defendants' Motions.

<strong>LEGAL BACKGROUND</strong>

**I.     The Outer Continental Shelf Lands Act**

Congress enacted OCSLA to govern the development of offshore oil and gas resources "while recognizing the crucial need to balance resource development with the protection of the human, marine, and coastal environments." *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 864 (9th Cir. 2022) (citing 43 U.S.C. § 1332(3)). The statute makes "clear that offshore leasing must not proceed without due regard for the communities and environments it affects." *Healthy Gulf v. U.S. Dep't of Interior*, 152 F.4th 180, 193 (D.C. Cir. 2025).

OCSLA's citizen-suit provision allows suits "to compel compliance with [OCSLA] against any person, including the United States, and any other government instrumentality or agency . . . for any alleged violation of any provision of [OCSLA]" or its implementing regulations. 43 U.S.C. § 1349(a)(1).

2

Congress intended this provision to provide broad standing to sue to "those who may have a definable aesthetic or environmental interest," including "persons who meet the requirement for standing to sue set out by the Supreme Court in *Sierra Club v. Morton*, 405 U.S. 727 (1972)." H.R. Rep. No. 95-590, at 161.

OSCLA prescribes a framework under which the Secretary of the Interior, through BOEM, may lease areas of the outer continental shelf for purposes of exploring and developing the oil and gas deposits of those submerged lands. 43 U.S.C. §§ 1331–1365b, 1801–1866. Before oil and gas production can begin, OCSLA requires lessees to submit DPPs to BOEM. 43 U.S.C. § 1351(a). These plans must include, *inter alia*, specific descriptions of an oil project's operations, production rates, and "the environmental safeguards to be implemented." *Id.* § 1351(c); *see also* 30 C.F.R. §§ 550.241–.262. Before conducting activities under a DPP, an oil company must obtain additional approvals and permits that "must conform to the activities described in detail" in the approved plan. 30 C.F.R. § 550.281(a)–(b).

### A.    DPPs are designed to promote safety and minimize environmental harm from offshore production.

When deciding whether to approve, disapprove, or require modifications of a proposed DPP, BOEM reviews the DPP to determine whether the lessee is prepared to operate in a manner that, *inter alia*, is safe and "[d]oes not cause undue or serious harm or damage to the human, marine, or coastal environment." 30 C.F.R. §§ 550.267(c), 550.202. BOEM must require modification of a proposed DPP if it contains inadequate provisions "for protection of the human, marine, or coastal environment," 43 U.S.C. § 1351(h)(1), and must disapprove a DPP if "implementation of the plan would probably cause serious harm or damage to life (including fish and other aquatic life), to property, . . . or to the marine, coastal or human environments," 43 U.S.C. § 1351(h)(1)(D).

3

**B.    BOEM must periodically review DPPs based on changes in available information.**

BOEM must periodically review approved development and production plans. 43 U.S.C. § 1351(h)(3). The reviews "shall be based upon changes in available information and other onshore or offshore conditions affecting or impacted by development and production." *Id.* If such review "indicates that the plan should be revised to meet the requirements of" section 1351(h), BOEM "shall require such revision." *id.*; *see* 30 C.F.R. §§ 550.283–.284.

BOEM must review any "significant" revision of an approved DPP in accordance with the procedures for approving the plans in the first instance. 43 U.S.C. § 1351(i). Under BOEM's regulations, a plan may be "revised" or "supplemented." 30 C.F.R. § 550.283. Revised plans propose changes to an approved plan, while supplemental plans are necessary for "an activity that requires approval of an application or permit." *Id.* § 550.200(b). Revised and supplemental DPPs "need include only information related to or affected by the proposed changes, including information on changes in expected environmental impacts." *Id.* § 550.285(b). All procedures for approving a plan in the first instance, including the requirements that BOEM solicit and consider public comment, apply to supplemental DPPs and revised DPPs that are "likely to result in a significant change in the impacts previously identified and evaluated." *Id.* § 550.285(c) (referencing *id.* §§ 550.266–.273); *id.* § 550.267(b).

Each of these requirements helps to ensure Congress's goals in OCSLA to require "environmental safeguards," 43 U.S.C. § 1332(3), and "balance orderly energy resource development with protection of the human, marine, and coastal environments," *id.* § 1802(2)(B).

**II.    The Administrative Procedure Act**

"The APA, by its terms, . . . provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court.'" *Bennett v.*

4

*Spear*, 520 U.S. 154, 175 (1997) (quoting 5 U.S.C. § 704). Agency action is defined to include "the whole or a part of an agency rule, order, license, . . . or failure to act." 5 U.S.C. § 551(13). In reviewing the substance of an agency action, the APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or made "without observance of procedure required by law." *Id.* § 706(2)(A), (D).

"Under the APA, the normal remedy for an unlawful agency action is to set aside the action. In other words, a court should vacate the agency's action and remand to the agency to act in compliance with its statutory obligations." *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th Cir. 2007), *rev'd on other grounds sub nom., Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261 (2009) (citation modified).

The APA "applies . . . except to the extent that . . . statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The Supreme Court has long emphasized that the APA's judicial review provision is "generous" and its "purpose was to remove obstacles to judicial review of agency action under subsequently enacted statutes." *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955). As such, "judicial review of a final agency action . . . will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) (citations omitted). To the extent that OCSLA does not provide an adequate remedy at law, the APA provides the cause of action. *See Bennett*, 520 U.S. at 172–75.

The APA does not require litigants to provide pre-suit notice. *See*, *e.g.*, *Or. Nat. Res. Council v. U.S. Forest Serv.*, 834 F.2d 842, 850–51 (9th Cir. 1987).

5

## STANDARD AND SCOPE OF REVIEW

A motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1). *Semones v. Am. Behav. Rsch. Inst., LLC*, No. 2:25-cv-12291-MWC-ADS, 2026 WL 1849871, at *1 (C.D. Cal. May 18, 2026). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citation omitted).[1]

"[T]he elements of Article III standing must be substantiated 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Jones v. L.A. Cent. Plaza Ltd. Liab. Co.*, 74 F.4th 1053, 1058 (9th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "[A]t the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, demonstrate each element of Article III standing." *Id.* at 1057 (citation modified).[2]

---

[1] BOEM conflates this well-established standard (*see* BOEM Mot. to Dismiss 2, Dkt. No. 76-1 ("BOEM MTD")) with that used in *factual* attacks on jurisdiction, where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendants mount *facial* attacks because they argue that the SAC on its face is insufficient to establish standing. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024). Under the appropriate scope of review for facial challenges, the Court must assume all allegations in the SAC are true. *Safe Air*, 373 F.39 at 1039; *see* Sable Mot. to Dismiss 5, Dkt. No. 77-1 ("Sable MTD") (quoting this standard).

[2] BOEM wrongly asserts that Plaintiffs must furnish affidavits at this stage in the litigation. BOEM MTD 2. Only where "the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court" is the party opposing the motion required to "furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.39 at 1039 (citation omitted). Defendants have not mounted such a challenge.

6

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted). In deciding such motions, courts must accept all factual allegations in the complaint as true "and constru[e] those facts in the light most favorable to the non-moving party." *Id.* (citation omitted). A court cannot dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (citations omitted).

## ARGUMENT

**I.     Plaintiffs have properly pleaded alternative claims challenging BOEM's arbitrary decisionmaking.**

Because both OCSLA and the APA provide plausible avenues to challenge BOEM's decision, Plaintiffs are free to plead alternative claims and requests for relief in accordance with Federal Rule of Civil Procedure 8(a)(3) and (d). *Contra* Sable MTD 20–21. Under Rule 8(d)(2), where a party makes alternative claims for relief, "the pleading is sufficient if any one of them is sufficient." While OCSLA authorizes suits against any person who has violated its provisions to "compel compliance" with the law, 43 U.S.C. § 1349(a)(1), the APA allows judicial review of federal agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *Bennett*, 520 U.S. at 175. In other words, to the extent that the Court determines that OCSLA does *not* provide an adequate remedy at law for reviewing BOEM's action, the APA provides for judicial review. *See Bennett*, 520 U.S. at 172–75.

**A.     OCSLA does not limit the court's equitable discretion to order relief that will achieve compliance with the law.**

This Court previously held that OCSLA's judicial review provision controls because it provides an adequate remedy at law for challenging BOEM's decisionmaking. Order Denying Sable Mot. to Dismiss 8, Dkt. No. 39 ("Order on

First MTD"). The Court subsequently dismissed Plaintiffs' First Amended Complaint (FAC) expressly because OCSLA *did not* provide an adequate remedy. *Sua Sponte* Order 20–23, Dkt. No. 71. The Court reasoned that because the only form of relief available under OCSLA is to "compel compliance" the law, and BOEM had already complied with its duty to review the DPP, "[t]he Court is powerless to compel the Secretary to conduct another review, as Congress has afforded discretion about *when* to do so to the Secretary of Interior." *Id.* at 21 (citation omitted). But this determination hinged on the assumption that OCSLA's "compel compliance" language excludes vacatur and remand. *Id.* at 20.

"Compel compliance" is the language typically associated with mandamus actions. Pls.' Opp'n to Sable's First MTD 10, Dkt. No. 35. But this does not limit the Court's equitable authority "to order relief that will achieve compliance" with the statute. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 318–20 (1982) (emphasis omitted) (interpreting a Clean Water Act provision authorizing injunctions to immediately restrain pollution). Courts must construe a statute "in favor of that interpretation which affords a full opportunity for" courts to order relief "as conditioned by the necessities of the public interest which Congress has sought to protect." *Hecht Co. v. Bowles*, 321 U.S. 321, 330 (1944) (citations omitted). "Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute . . . restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Weinberger*, 456 U.S. at 313 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). No such restriction exists here.

OCSLA's citizen suit provision is intended to expand judicial review of agency action, not constrain it. The legislative history indicates that Congress intended that "*[l]egal remedies or relief* under any other act or the common law would not be affected" by OCSLA's citizen-suit provision, such that "any statutory

procedure or remedy provided in other Federal statutes . . . are not precluded." H.R. Rep. No. 95-590, at 161 (emphasis added); *see also* 43 U.S.C. § 1349(a)(6) ("Nothing in this section shall restrict any right which any person or class of persons may have under any other Act or common law to seek appropriate relief."). The language, structure, and legislative history of OCSLA thus allow the court "to order that relief it considers necessary to secure prompt compliance" with its mandates. *Weinberger*, 456 U.S. at 320. This necessarily includes the classic equitable remedies of vacatur and remand.

### B. If OCSLA does not provide a remedy to redress BOEM's arbitrary decisionmaking, the APA controls.

If the Court finds that OCSLA's "compel compliance" language constrains its equitable authority to order relief that remedies arbitrary and capricious decisionmaking, then OCSLA does not provide an adequate remedy at law. In this scenario, the APA supplies the cause of action and remedy. 5 U.S.C. § 704; *see, e.g.*, *Or. Nat. Res. Council*, 834 F.2d at 850–51 (because plaintiffs lacked a "comprehensive remedy" for their claim under the citizen suit provision of the Clean Water Act, judicial review under the APA was appropriate).[3] But a holding that *neither* OCSLA nor the APA is available to challenge the reasonableness of agency actions under OCSLA would give BOEM unbridled discretion to make arbitrary, unfounded, and unlawful decisions. This cannot be. *See Abbott Labs.*, 387 U.S. at 140 ("[J]udicial review of a final agency action . . . will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." (citations omitted)).

The APA provides the remedies that the Court has already suggested may redress Plaintiffs' injuries. *See Sua Sponte* Order 20. Under the APA, courts normally "set aside" (i.e., vacate) arbitrary agency action and remand the matter

---

[3] Plaintiffs incorporate by reference their arguments that their claim is reviewable under the APA as set out in their Opposition to Sable's Motion to Dismiss the FAC, Dkt. No. 35.

for further consideration. 5 U.S.C. § 706(2). *Se. Alaska Conservation Council*, 486 F.3d at 654. Here, the heart of Plaintiffs' claim is that BOEM arbitrarily determined that the DPP need not be revised because it failed to consider relevant factors and reached a conclusion contrary to the evidence before it. SAC ¶¶ 118–30. As BOEM admits, this is a "a paradigmatic arbitrary-and-capricious claim under § 706(2)(A)" that "fit[s] squarely within" the framework of the APA. BOEM MTD 7–8.

## C.    The law of the case doctrine does not apply to the SAC.

This Court is not bound by the law of the case doctrine in deciding whether Plaintiffs state a claim under OCSLA or the APA. *Contra* Sable MTD 20–21. To begin with, "[t]he law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). In addition, where—as here—a court dismisses a claim without prejudice and grants plaintiffs leave to amend, "the law of the case doctrine does not apply." *Id.* at 1043. This is because "[t]he amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; [courts] do not ask whether the plaintiff is 'precluded' or 'barred' by the prior ruling." *Id.* For this reason, none of the cases Sable cites are relevant. *See Skye Orthobiologics, Ltd. Liab. Co. v. CTM Biomedical, Ltd. Liab. Co.*, 351 F.R.D. 155, 159 (C.D. Cal. 2026) (involving a motion for reconsideration); *Biancur v. Hickey*, 221 F. App'x 546, 547–48 (9th Cir. 2007) (involving a motion for relief from default judgment); *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV 08-1885-GHK (AGRx), 2016 WL 8919455, at *4 (C.D. Cal. Nov. 16, 2016) (declining to revisit a prior holding on the first step of a two-part test where the Ninth Circuit remanded for reconsideration of only the second step of the test).

## II.    Plaintiffs have adequately pleaded standing.

Plaintiffs have standing to bring this action on behalf of their members under OCSLA or, alternatively, under the APA. A plaintiff has standing when (1) it "has suffered a concrete and particularized injury that is either actual or imminent," (2) "the injury is fairly traceable to the defendant," and (3) "it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citation omitted). "Where . . . claims rest on a procedural injury," as they do here, "the causation and redressability requirements are relaxed." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 817 (9th Cir. 2017) (citing *California ex rel. Imperial Cnty. Air Pollution Control Dist. v. U.S. Dep't of the Interior*, 767 F.3d 781, 790 (9th Cir. 2014)).

Plaintiffs' SAC "clearly allege[s] facts demonstrating each element" of standing to challenge Defendants' failure to require revision or supplementation of the DPP. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified). Their members have suffered concrete and particularized injuries fairly traceable to BOEM's action that will likely be redressed by a favorable decision. *See Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000) (citation omitted).[4]

### A.    Plaintiffs have sufficiently pleaded injury-in-fact.

"A plaintiff shows a procedural injury-in-fact when a procedural requirement has not been met, so long as the plaintiff also asserts a concrete interest that is threatened by the failure to comply with that requirement." *Mattis*, 868 F.3d at 816 (citation modified). "[T]he injury-in-fact requirement is met if the

---

[4] Plaintiffs also satisfy the other standards for associational standing. *See Cottonwood Env't Law Ctr. v. U. S. Forest Serv.*, 789 F.3d 1075, 1079 (9th Cir. 2015) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Their members' interests in conserving marine and coastal ecosystems are germane to their organizational purposes, SAC ¶¶ 21, 23, and neither the claims asserted nor the relief requested require individual member participation.

procedures in question are designed to protect some threatened concrete interest of [the plaintiff] that is the ultimate basis of his standing." *Nat'l Family Farm Coal. v. EPA*, 966 F.3d 893, 909 (9th Cir. 2020) (citation modified).

The SAC demonstrates injury-in-fact by describing Plaintiffs' members' use of the waters, coast, and islands adjacent to the Santa Ynez Unit for recreational, aesthetic, spiritual, cultural, and scientific purposes. This shows that they are "persons for whom the aesthetic and recreational values of the area will be lessened," *Laidlaw*, 528 U.S. at 183 (citation modified), by increased oil spills, wildlife deaths, and other harms from oil production at the Santa Ynez Unit. The SAC also demonstrates that BOEM's failure to consider relevant information and require revision of the DPP creates a credible risk of harm to those interests by prolonging production from aging infrastructure that has a heightened risk of oil spills and water and air pollution. Finally, the SAC demonstrates that OCSLA's DPP revision requirements are designed to protect these environmental interests.

### 1. Plaintiffs' members' concrete interests are threatened by BOEM's actions.

As recognized by this Court, Plaintiffs' members' have demonstrated injuries to their recreational, spiritual, scientific, cultural, health, and aesthetic interests. *Sua Sponte* Order 15 ("At the outset, the Court is satisfied that Plaintiffs have demonstrated a prospective, albeit, somewhat tenuous, environmental injury in the possibility that Platform Harmony may result in a future oil spill."). The same is true of the SAC. For example, the Wishtoyo Foundation's Chumash members rely on the lands, waters, and wildlife of the Santa Barbara Channel to maintain their traditional spiritual and cultural practices. SAC ¶ 24. They navigate between the mainland and the Channel Islands on plank canoes called tomols, where seeing marine species provides a connection to their ancestors. *Id.* ¶ 25. Oil production at the Santa Ynez Unit threatens these cultural practices and lifeways by degrading the coastal environment and harming wildlife. *Id.* ¶ 26–31. Likewise,

a Center for Biological Diversity member who lives in Santa Barbara regularly surfs along the coast and often hikes, sails, and scuba dives at the Channel Islands. *Id.* ¶ 32. He enjoys observing sea otters, humpback whales, black abalone, and other wildlife on these excursions, which are essential to his wellbeing. *Id.* The impacts of oil production at the Santa Ynez Unit—including air and water pollution, vessel strikes, and other impacts—diminish his ability to enjoy these activities by degrading water and air quality, polluting beaches, and disturbing the wildlife he is interested in observing. *Id.* These interests in a healthy ocean and coastal environment are precisely the kinds of interests that DPPs are designed to protect. *Id.* ¶¶ 34–35, 62; *see*, *e.g.*, 43 U.S.C. § 1351(h)(1) (a DPP must "make adequate provision . . . for safe operations on the lease area or for protection of the human, marine, or coastal environment.").

The Ninth Circuit has repeatedly held that interests in observing wildlife, recreation, health, and aesthetics are cognizable for the purposes of standing. *Cottonwood*, 789 F.3d at 1079 ("An organization can satisfy the concrete harm requirement by alleging an injury to the recreational or even the mere esthetic interests of its members." (citation modified)); *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859–60 (9th Cir. 2004) (finding an environmental group had standing because its members enjoyed photographing marine life, fishing, and watching marine life in an area potentially affected by the challenged action).

Defendants do not dispute Plaintiffs' members' interests. They only argue that the harm to these interests is too attenuated from the challenged action. BOEM MTD 3–4; Sable MTD 12–13. But Defendants misinterpret the relevant caselaw, which recognizes that threatened environmental harm is "by nature probabilistic." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000) (citation omitted). That is, where an agency's actions threaten the environment, "increased risk of harm can itself be injury in fact for standing." *Ocean Advocs.*, 402 F.3d at 860 (citation omitted); *accord Ecological Rights*, 230 F.3d at 1151

("[T]o require actual evidence of environmental harm, rather than an increased risk based on a violation of the statute, misunderstands the nature of environmental harm."). Here, BOEM's failure to evaluate new, relevant information means it could not make a reasonable determination as to whether the DPP must be revised. *See* SAC ¶ 34. As a result, BOEM has not met its obligation to require an updated DPP that better protects California's ocean and coastal environment from increased risk of harm. *See id*.

Plaintiffs "need not prove to a scientific certainty" that restarting and prolonging production from aging, post-failure oil infrastructure will result in environmental damage. *Ecological Rights*, 230 F.3d at 1151–52. As the Ninth Circuit explained, "[r]equiring the plaintiff to show actual environmental harm as a condition for standing confuses the jurisdictional inquiry (does the court have power under Article III to hear the case?) with the merits inquiry (did the defendant violate the law?)." *Id.* All Plaintiffs must do is allege that BOEM's actions increase the risk of environmental harm, which Plaintiffs have done. SAC ¶ 35.

None of the cases Defendants cite (BOEM MTD 3; Sable MTD 12–15) undermine the concreteness of Plaintiffs' injuries. In *Center for Biological Diversity v. Bernhardt*, the plaintiff challenged the validity of a statute that prohibited an agency from reissuing a rule that Congress had disapproved by joint resolution. 946 F.3d 553, 557–59 (9th Cir. 2019). The plaintiff alleged that its members were injured because the statute precluded the agency from adopting regulations to protect the wildlife its members enjoyed. *Id.* at 560. The Ninth Circuit held that these injuries were too speculative because they hinged on the assumption that the agency would reissue the rule if given the power to do so. *Id.* Here, in contrast, Plaintiffs' injury is not tied to some future agency action. Rather, Plaintiffs are concretely injured by an action that the agency has already taken without first considering highly relevant information. Proper consideration of this

14

information could lead to meaningful protections that would decrease their members' risk of harm. This is a classic environmental injury.

The situation here more closely resembles that in *National Family Farm*, where plaintiff organizations alleged that an agency had misapplied pesticide registration requirements and failed to support its decision with substantial evidence where it did not consider the impacts of the pesticide on monarch butterflies. 966 F.3d at 906, 909. Noting that "these are procedural injuries," the Ninth Circuit held that the plaintiffs' members had demonstrated a concrete interest in observing monarchs, and that the "credible threat of harm" to monarchs satisfied the injury-in-fact requirement. *Id.* at 909 (citation omitted). The court reached a similar conclusion with respect to a claim challenging the agency's finding that the action would have "no effect" on endangered species, holding that plaintiffs' members demonstrated a concrete interest in observing endangered bats that was injured by the agency's insufficient Endangered Species Act consultation procedures. *Id.* at 906, 911. The court rejected the defendant's argument that these concerns were "speculative and far from imminent," reasoning that the agency's reevaluation of the consultation standards "could lead to a different result," which could protect the members' "concrete interests" in wildlife. *Id.* at 912 (citation omitted). The same is true here. BOEM's inadequate review of the DPP constitutes a procedural injury that harms the concrete interests of Plaintiffs' members in avoiding degradation of the water, air, and wildlife in the Santa Barbara Channel—interests that the DPP's environmental safeguards are designed to protect.

The other cases Defendants cite are unavailing. In *Clapper v. Amnesty International USA*, U.S. citizens who engaged in communications with foreign contacts lacked standing to challenge the constitutionality of a statute authorizing surveillance of foreign individuals because they could not show that their specific communications were likely to be intercepted. 568 U.S. 398, 410–11 (2013). Here, the risk of environmental harm caused by oil production at the Santa Ynez Unit is

15

well established and concrete. *See* SAC ¶¶ 74–96. In *Sancho v. U.S. Department of Energy*, the Ninth Circuit acknowledged that injury in fact encompasses "credible threat of harm," but denied standing in the case because the alleged harm was the speculative fear of the "destruction of the Earth." 392 Fed. Appx. 610, 611 (9th Cir. 2010). Here, Plaintiffs challenge a discrete agency action impacting a single aging oil production unit that has already caused a major oil spill. And in *Flynn v. Burlington Northern Santa Fe Corporation*, the plaintiffs lacked standing because their injuries stemmed from a decision by a board of county commissioners that was not party to the suit and could only be redressed by a federal agency that was also not party to the suit. 98 F.Supp.2d 1186, 1190–92 (E.D. Wash 2000). Here, Plaintiffs have properly sued the agency whose action harms their members' interests.

The SAC establishes that BOEM's failure to consider relevant new information and require revision of the DPP increases the risk of harm to the species, water, and coastline that are essential to Plaintiffs' members' cultural, recreational, and aesthetic interests. That is all the law requires.

### 2. BOEM's failure to comply with OCSLA's procedural requirements injures Plaintiffs' concrete interests.

BOEM's failure to comply with OCSLA's requirements and decision that the DPP need not to be revised is a procedural injury that threatens Plaintiffs' concrete interests in healthy waters, wildlife, and air in the Santa Barbara Channel.

Sable is incorrect that "there is no 'procedure'" that BOEM violated. Sable MTD 8. The SAC establishes that Plaintiffs have a "right to a procedurally sound" DPP review process under section 1351(h)(3). *See Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008) (discussing the "right to a procedurally sound" Endangered Species Act consultation). BOEM has not met OCSLA's procedural requirements to base its review of DPPs "upon changes in available information and other onshore or offshore conditions affecting or

16

impacted by development and production pursuant to such plan" and require revision of DPPs when necessary. 43 U.S.C. § 1351(h)(3); *see* SAC ¶ 147.[5]

The Ninth Circuit has consistently recognized that an agency's failure to adequately evaluate information in the context of an impact review is a procedural injury, where compliance with the statute's mandates protect plaintiff's concrete interests. *See*, *e.g.*, *Nat. Res. Def. Council v. Jewell*, 749 F.3d 776, 783 (9th Cir. 2014) (en banc) (alleged violations of the consultation requirement of the Endangered Species Act constitutes a procedural injury (citations omitted)); *see also Gulf Restoration Network*, 683 F.3d at 167–68 (recognizing a procedural injury from BOEM's approval of exploration plans without properly accounting for their environmental impacts); *Mattis*, 868 F.3d at 816–20 (finding a procedural injury under the National Historic Preservation Act where plaintiffs alleged than the agency had not adequately followed the statute's mandate that it "take into account" the effect of an action before approving it).

For example, challenges to deficient environmental reviews under the National Environmental Policy Act are routinely treated as procedural injuries in this Circuit. *E.g.*, *Ritidian v. U.S. Dep't of the Airforce*, 128 F.4th 1089 (9th Cir. 2025); *WildEarth Guardians v. USDA*, 795 F.3d 1148, 1155 (9th Cir. 2015); *City*

---

[5] Plaintiffs' procedural injuries are not tethered to 43 U.S.C. § 1351(g), as Sable suggests. Sable MTD 10–11. And while the SAC alleges that BOEM's failure to require an update to the DPP deprives Plaintiffs' members of the right to participate in BOEM's decisionmaking, SAC ¶¶ 13, 36, 48–51, 60–61, this constitutes an additional procedural injury rather than the primary basis of Plaintiffs' standing. *Contra* Sable MTD 9–10. Moreover, the existence of these processes demonstrates that OCSLA's DPP revision procedures are "designed to protect" the kinds of interests that Plaintiffs' members allege. *Nat'l Family Farm*, 966 F.3d at 909 (citation omitted); *see also Gulf Restoration Network, Inc. v. Salazar*, 683 F.3d 158, 168 (5th Cir. 2012) (recognizing that OCSLA's procedural requirements are "designed to protect" environmental interests). They also speak to redressability, as discussed below, because an order that BOEM follow the correct procedures may lead to this additional process and additional environmental protections.

17

*of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004); *Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001). In *City of Sausalito*, a city challenged an environmental impact statement (EIS) as arbitrary and capricious based on the agency's failure to consider relevant information, similar to Plaintiffs' claims here under OCSLA. 386 F.3d at 1207. The court explained that "a cognizable procedural injury exists when a plaintiff alleges that a proper EIS has not been prepared under the National Environmental Policy Act when the plaintiff also alleges a 'concrete' interest—such as an aesthetic or recreational interest—that is threatened by the proposed action." *Id*. at 1197 (citations omitted).

And while BOEM's periodic review does describe *some* changes in available information, *see* Sable MTD 8, it fails to consider a number of highly relevant changes related to the resumption of operations at the Santa Ynez Unit, including the fact that the infrastructure has outlived its expected lifespan and the Unit has already produced more oil than contemplated in the existing DPP. SAC ¶ 146. This failure to evaluate pertinent information causes procedural harm to Plaintiffs' members because it makes it more likely that drilling will occur without adequate mitigation measures to protect the environment.

Sable's argument as to *which* information BOEM was required to consider is an improper attack on the merits of Plaintiffs' claim disguised as a standing challenge and should not be allowed. *Contra* Sable MTD 7–9; *see Catholic League for Religious & C.R. v. Cnty. of San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) ("Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true."). And Sable's reliance on *Sierra Forest Legacy v. U.S. Forest Service* is misplaced because in that case all parties agreed that plaintiffs had alleged a procedural injury—namely, that the agencies failed to follow a statutory requirement to consider the best available science when engaging in Endangered

18

Species Act consultation. 598 F. Supp. 2d 1058, 1065 (N.D. Cal. 2009). That the court ultimately rejected the plaintiff's injury because these consultation obligations had not been triggered is immaterial. *Id.* Here, BOEM's obligation to consider "changes in available information" was triggered when it decided to review the DPP. 43 U.S.C. § 1351(h)(3).

Sable is also incorrect that Plaintiffs must demonstrate that they are entitled to participate in BOEM's DPP review process to show a procedural injury. *Contra* Sable MTD 10; *see Gescheidt v. Haaland*, No. 21-cv-04734-HSG, 2023 WL 2250268, at *6 (N.D. Cal. Feb. 27, 2023) ("[T]he Ninth Circuit seems to routinely find procedural injury without any consideration of the public's right to participate in the agency's decision-making process."); *see id.* at *6–*7 (discussing cases). For example, in *National Family Farm*, the Ninth Circuit found procedural injuries without discussing any right to public participation, focusing instead on the fact that pesticide registration requirements are "designed to protect the environment." 966 F.3d at 909 (citation omitted). The cases Sable cites are readily distinguishable from the procedural injury here. *See Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1097, 1103 (E.D. Cal. 2002) (finding no imminent threat of harm to gambling companies alleging the potential deprivation of the opportunity to consult on gaming compacts that did not yet exist); *Wishtoyo Found. v. U.S. Fish & Wildlife Serv.*, No. 19-cv-03322-CJC(ASx), 2019 WL 6998665, at *7 (C.D. Cal. Oct. 16, 2019) (nonprofit organizations were not injured because they had no right to participate in a government-to-government consultation process); *Env't Integrity Proj. v. McCarthy*, 319 F.R.D. 8, 15 (D.D.C. 2016) (denying intervention to companies alleging injury to their ability to participate in agency pre-rulemaking deliberations because nothing entitled them to such participation); *Ashley Creek Props., LLC v. Timchak*, 649 F. Supp. 2d 1171, 1179 (D. Idaho 2009) (finding plaintiff's financial interest was not injured where it could not show that the leases at issue would generate income or that the agency would curtail mining).

19

Finally, BOEM characterizes Plaintiffs' claims as "challeng[ing] the adequacy of BOEM's substantive evaluation of the information before it," BOEM MTD 7, but cites no authority to support its position that such claims cannot form the basis for procedural injuries. And as detailed above, the Ninth Circuit routinely categorizes challenges to the adequacy of an agency's decisionmaking as procedural injuries.

Ultimately, Plaintiffs need only show "that the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing." *Salmon Spawning*, 545 F.3d at 1225. Because OCLSA's statutory requirements for DPPs were intended to ensure that such plans are sufficiently protective of the concrete interests of Plaintiffs' members (namely, the environment), Plaintiffs satisfy this threshold inquiry. *See* 43 U.S.C. § 1351(h)(1) (requiring DPPs "make adequate provision . . . for safe operations on the lease area or for protection of the human, marine, or coastal environment").

**B.     Plaintiffs' injuries are traceable to BOEM's action and are redressable by a favorable decision.**

When a plaintiff asserts a violation of a procedural right, the standards for causation and redressability are "softened." *Friends of the Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 918 (9th Cir. 2018) (citations omitted); *see also Masschusetts v. EPA*, 549 U.S. at 517–18 ("[A] litigant to whom Congress has accorded a procedural right to protect his concrete interests . . . can assert that right without meeting all the normal standards for redressability and immediacy.") (citation modified). Accordingly, a plaintiff alleging procedural injury "must show only that they have a procedural right that, if exercised, *could* protect their concrete interests." *Defs. of Wildlife v. EPA*, 420 F.3d 946, 957 (9th Cir. 2005), *overruled on other grounds sub nom. by Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007).

20

### 1. Causation is satisfied because BOEM's actions threaten Plaintiffs' interests.

Defendants attempt to undermine causation by rehashing their arguments that the risks of oil spills and other environmental harms are too speculative. BOEM MTD 5; Sable MTD 14–15. As the Ninth Circuit has explained, "it is common to confuse . . . the issue of the likelihood of harm with its cause," but "these arguments are better addressed to the first prong of the standing test." *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1517 (9th Cir. 1992) (emphasis omitted). Rather, the "causation question concerns only whether plaintiffs' injury is dependent upon the agency's policy, or is instead the result of independent incentives governing the third parties' decisionmaking process." *Id.* at 1517–18 (citation modified); *see also Citizens for Better Forestry v. USDA*, 341 F.3d 961, 975 (9th Cir. 2003) (once a plaintiff has established a procedural injury-in-fact, the causation requirement "is only implicated where the concern is that an injury caused by a third party is too tenuously connected to the acts of the defendant"). Thus, a plaintiff asserting a procedural injury need only establish "a reasonable probability of the *challenged action's* threat to [his] concrete interest." *Nat. Res. Def. Council v. EPA*, 38 F.4th 34, 54 (9th Cir. 2022) (emphasis added) (citation omitted).

Here, the asserted injuries—increased risk of oil spills and other harms that degrade the waters and wildlife that Plaintiffs' members enjoy—arise directly from the challenged actions at issue—BOEM's review of the DPP without evaluating highly relevant information and subsequent decision not to require revisions. BOEM's unlawful review means that BOEM did not make a reasonable determination whether the DPP must be revised, and that BOEM is not requiring an updated DPP that may better protect California's coast and wildlife—harming Plaintiff's health, recreational, and other interests. *See* SAC ¶ 34.

True, "Sable's future operational decisions," BOEM MTD 5, or future

permits issued by the Bureau of Safety and Environmental Enforcement, Sable MTD 15, may contribute to the environmental degradation. But "causation does not require that the defendant's unlawful conduct be the only cause of the alleged injury." *Nat. Res. Def. Council v. EPA*, 38 F.4th at 55. More importantly, these operational decisions and permits *must conform* to the environmental guardrails established in the DPP. SAC ¶ 14 (quoting 30 C.F.R. § 550.281(b)).

The theory of causation here is entirely unlike that in *Salmon Spawning*, *contra* Sable MTD 14, where plaintiffs challenged an agency decision to abide by an international treaty that allowed excessive Canadian salmon harvesting rather than withdrawing from it or requesting additional conservation measures, 545 F.3d at 1223–24. Causation was lacking because Canada's excessive harvest was not fairly traceable to the United States' failure to withdraw from the treaty and Canada was under no obligation to accommodate a request for harvest limits. *Id.* at 1228. Here, in contrast, Plaintiffs' injuries are traceable to BOEM's failure to follow procedures that could result in stronger environmental protections because Sable's operations must conform to the DPP. *Salmon Spawning*'s additional holding—that plaintiffs satisfied all elements of standing to challenge the agency's failure to reinitiate Endangered Species Act consultation—is more instructive here. *See id.* at 1229–30.[6]

Finally, both BOEM and Sable assert that the DPP does not itself authorize new offshore development, BOEM MTD 5, Sable MTD 14–15, but this misconstrues the nature of Plaintiffs' complaint. Plaintiffs' injuries are caused by BOEM's failure to consider relevant changes in available information and to

---

[6] The speculative causal chain described in *G.B. v. EPA* is also distinguishable. 172 F.4th 1042, 1058–61 (9th Cir. 2026). Unlike here, where Plaintiffs challenge a discrete agency action, the plaintiffs there challenged policies that could influence future rulemaking, even though no rulemaking was underway. *Id.* Because these policies were "too far removed" from potential action, the causal chain was too attenuated. *Id.* at 1061 (citation modified).

require Sable to revise its decades-old DPP based on these changes. These procedures are designed to ensure Sable's continued offshore production is conducted in a manner that is sufficiently "protect[ive] of the human, marine, and coastal environment." SAC ¶ 142 (quoting 43 U.S.C. § 1351(h)(1)). BOEM's failure to evaluate new information allows Sable to prolong and extend production well beyond the Santa Ynez Unit's envisioned lifespan and heightens the risk of injury to Plaintiffs' members. Plaintiffs have sufficiently demonstrated causation.

> **2. Plaintiffs' injuries are redressable by an order compelling compliance with OCSLA procedures or, alternatively, by vacatur and remand.**

"Plaintiffs alleging procedural injury can often establish redressability with little difficulty, because they need to show only that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action." *Salmon Spawning*, 545 F.3d at 1226–27 (citation omitted). "This is not a high bar to meet." *Id.* at 1227. Plaintiffs "need not show that [redoing the DPP review] would result in a different conclusion"; instead, they must only show that the agency's decision "*could be influenced*" by the requested change. *Pub. Citizen v. U.S. Dep't of Transp.*, 316 F.3d 1002, 1018–19 (9th Cir. 2003), *rev'd on other grounds*, 541 U.S. 752 (2004) (citation omitted).

Plaintiffs' complaint establishes redressability by seeking declaratory and injunctive relief to remediate the alleged harm under OCSLA or the APA. SAC 39 (Requests for Relief); *see Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826, 832 (9th Cir. 2021) ("The operative complaint seeks an injunction to remediate the alleged harm, which the [Clean Water Act] authorizes a federal court to issue, . . . thereby satisfying the redressability requirement." (citation omitted)). As discussed in Section I, *supra*, OCSLA authorizes a court to "compel compliance" with the law, 43 U.S.C. § 1349(a)(1), which does not limit the Court's equitable authority to fashion relief that will achieve compliance, such as vacatur

and remand, *Weinberger*, 456 U.S. at 318. To the extent that OCSLA does not authorize this kind of relief, then the APA authorizes the court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

An order compelling BOEM to comply with OCSLA by reviewing changes in available information or requiring an update of the DPP would redress Plaintiffs' injuries. So too would an order (1) vacating BOEM's determination that the DPP need not be revised and (2) remanding the determination for further analysis of the relevant factors. Plaintiffs' asserted injuries are redressable because a full evaluation of impacts as required by OCSLA could lead to a revision of the DPP that includes additional environmental safeguards. In other words, the requested relief—a full evaluation of relevant information—could result in an updated plan that provides for additional mitigation and oversight of offshore drilling activities at the Santa Ynez Unit that would better protect the ocean and alleviate the injuries of Plaintiffs' members. SAC ¶ 35.

BOEM's argument that Plaintiffs must show that BOEM *will* require a revision of the DPP, BOEM MTD 6, is contrary to the caselaw, *see, e.g., Pub. Citizen*, 316 F.3d at 1018. So is Sable's similar argument that BOEM's discretion in reviewing requiring revision of a DPP undermines Plaintiffs' requested relief. Sable MTD 18–19. None of the cases Sable cites are persuasive here because none consider redressability in the context of the relaxed standard for procedural injury. *See, e.g., Juliana v. United States*, 947 F.3d 1159, 1169 (9th Cir. 2020) ("[Plaintiffs] do not assert the denial of a procedural right."); Sable MTD 18–19.

### III. Sable's notice arguments lack merit.

The sufficiency of Plaintiffs' September 2024 notice letter is settled. *Contra* Sable MTD 23–25. Just as this Court found that both the subject and the violations alleged in Plaintiffs First Amended Complaint were "the same" as those identified

24

in Plaintiffs' notice, Order on First MTD 10, the SAC challenges the same agency action and identifies the same violations that were at issue in the First Amended Complaint. The additional facts alleged in the SAC raise no new violations and do not change this analysis. *Contra* Sable MTD 24 (mischaracterizing factual detail as "claims"). Notice letters need only "provide sufficient information so that the notified parties could identify and attempt to abate the violation. To be sufficient, the notice does not have to list every specific aspect or detail of every alleged violation." *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1154 (9th Cir. 2024) (citation modified). Plaintiffs' notice continues to meet this standard because it invokes BOEM's obligations to review and require revisions of the DPP under OCSLA and "describes the risks of oil and gas drilling and the reasons that BOEM should have required Sable to revise the DPPs." Order on First MTD 10. BOEM has never argued that it did not understand the violations alleged in the notice.

Even if Plaintiffs' detailed notice was somehow now defective, this Court would retain jurisdiction because Plaintiffs have substantively complied with the procedural requirements of OCSLA. *See Cascadia Wildlands* 105 F.4th at 1153 (holding citizen suit notice requirements are mere "claims-processing rule[s]"); *contra* Sable MTD 5 n.1. This is all the more true because Plaintiffs could not have complied with the Court's order to amend the complaint within 21 days, *Sua Sponte* Order 25, and also provide a new 60-day notice letter.

Finally, should the Court decide that Plaintiffs' case will proceed under the APA rather than OCSLA, no notice was required. *See*, *e.g.*, *Or. Nat. Res. Council*, 834 F.2d at 850.

## CONCLUSION

The Court should deny the motions to dismiss.

25

DATED: July 31, 2026

 s/ *Emily Jeffers*
Emily Jeffers (CA Bar No. 274222)
Email: ejeffers@biologicaldiversity.org
Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation, certifies that this brief does not exceed 25 pages, in compliance with the page limit set by this Court's Standing Order, Section 6.c, dated April 15, 2025 (Dkt. No. 11).


DATED: July 31, 2026                    s/ *Emily Jeffers*
                                        Emily Jeffers

27